# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI
### CENTRAL DIVISION

| | |
|---|---|
| **RICHARD L. MEHLBERG, and ANGELA R. DEIBEL, individually, on behalf of all others similarly situated, and on behalf of the Plan,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**COMPASS GROUP USA, INC.,**<br><br>**Defendant.** | **Case No. 2:24-cv-04179-SRB** |

## SUGGESTIONS IN SUPPORT OF COMPASS GROUP USA, INC.'S MOTION TO DISMISS

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ........................................ 2

    I.    COMPASS, THE PLAN, AND THE WELLNESS PROGRAM. ........................... 2

    II.    PLAINTIFFS' COMPLAINT. ...................................................................... 3

STATUTORY AND REGULATORY BACKGROUND ..................................................... 4

    I.    THE 1996 ADDITION OF WELLNESS PROGRAMS TO ERISA. ..................... 4

    II.    THE DOL'S 2001 PROPOSED REGULATIONS AND 2006 FINAL
        REGULATIONS. ........................................................................................ 4

    III.    THE 2010 ACA AMENDMENTS. ............................................................. 5

    IV.    THE 2013 REVISED, FINAL REGULATIONS. ............................................ 6

    V.    THE DOL'S 2014 FREQUENTLY ASKED QUESTIONS. ............................... 7

ARGUMENT ...................................................................................................................... 8

    I.    PLAINTIFFS LACK STANDING TO ASSERT THEIR CLAIMS. ...................... 9

        A.    Legal Standards Related to Constitutional and Statutory Standing. ........... 9

        B.    Plaintiffs Do Not Allege an Injury Tethered to the Alleged Statutory
            Violation and Thus Lack Article III Standing. ............................................ 9

        C.    Count II Alleges "Informational" Injuries That Are Not Sufficient to
            Confer Article III Standing. .....................................................................11

        D.    Plaintiffs Lack Article III and Statutory Standing After Exiting the Plan  12

    II.    THE COMPLAINT FAILS ON THE MERITS. ............................................. 12

        A.    Legal Standards Under Federal Rule of Civil Procedure 12(b)(6). .......... 12

        B.    ERISA and the PHSA Do Not Require Retroactive Rebates of
            Tobacco Surcharges. .............................................................................. 13

            1.    *Loper Bright* changed the law. ....................................................... 14

            2.    Under *Loper Bright*, requiring refunds of the tobacco
                surcharge for a period prior to adherence to a wellness
                program is not the best read of the statutes. ................................. 15

                a.    Plaintiffs' reliance on one, unrelated example from the
                    preamble is unavailing. .................................................... 16

                b.    Interpreting the phrase "full reward" to mean a
                    retroactive refund of surcharges is not the best
                    reading of the wellness statutes. ...................................... 17

        C.    Plaintiffs' Alleged Notice "Deficiencies" Do Not Support a Claim. ........ 20

D.    Plaintiffs' Fiduciary Breach and Prohibited Transaction Claims Must Be Dismissed Because Plaintiffs' Allegations Fall Outside the Scope of ERISA Section 502(a)(2). .................................................................. 21

        1.    Plaintiffs do not allege fiduciary acts or prohibited transactions. ...................................................................................... 22

        2.    Plaintiffs do not allege a loss to the Plan. .................................... 23

CONCLUSION ....................................................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)...........................................................................................................12

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)...........................................................................................................12

*Blanco v. Samuel,*
    91 F.4th 1061 (11th Cir. 2024) .........................................................................................15

*Buetow v. A.L.S. Enters., Inc.,*
    564 F. Supp. 2d 1038 (D. Minn. 2008) ............................................................................10

*Curtiss-Wright Corp. v. Schoonejongen,*
    514 U.S. 73 (1995).............................................................................................................22

*Dorman v. Charles Schwab Corp.,*
    No. 17-cv-00285-CW, 2018 U.S. Dist. LEXIS 218049 (N.D. Cal. Sep. 20, 2018) ...............10

*Dunn v. Bank of Am. N.A.,*
    844 F.3d 1002 (8th Cir. 2017) ............................................................................................2

*Federation of Am. for Consumer Choice, Inc. v. United States DOL,*
    2024 U.S. Dist. LEXIS 131589 (E.D. Tex. July 25, 2024)....................................................14

*Fifth Third Bancorp v. Dudenhoeffer,*
    573 U.S. 409 (2014).......................................................................................................8, 12

*Frost v. Sioux City,*
    920 F.3d 1158 (8th Cir. 2019) .........................................................................................10

*Hastings v. Wilson,*
    516 F.3d 1055 (8th Cir. 2008) .......................................................................................9, 12

*Hekel v. Hunter Warfield, Inc.,*
    118 F.4th 938 (8th Cir. 2024) ........................................................................................9, 11

*Lipari-Williams v. Missouri Gaming Company.*
    339 F.R.D. 515 (W.D. Mo. 2021) ................................................................................ *passim*

*Lockheed Corp. v. Spink,*
    517 U.S. 882 (1996)......................................................................................................22, 23

*Loper Bright Enterprises v. Raimondo*,
    144 S. Ct. 2244 (2024) ................................................................................ *passim*

*Mass Mut. Life Ins. Co. v. Russell*,
    473 U.S. 134 (1985) ..................................................................................... 23

*Moses.com Sec., Inc. v. Comprehensive Software Sys.*,
    406 F.3d 1052 (8th Cir. 2005) ...................................................................... 2

*Osborn v. United States*,
    918 F.2d 724 (8th Cir. 1990) ........................................................................ 9

*Pegram v. Herdrich*,
    530 U.S. 211 (2000) ..................................................................................... 22

*Perez v. Mortg. Bankers Ass'n*,
    575 U.S. 92 (2015) ....................................................................................... 15

*Restaurant Law Center v. United States Department of Labor*,
    No. 23-50562, 2024 U.S. App. LEXIS 21449 (5th Cir. August 23, 2024) ............................ 15

*Roth v. Sawyer-Cleator Lumber Co.*,
    16 F.3d 915 (8th Cir. 1994) .......................................................................... 23

*Sabri v. Whittier Alliance*,
    122 F. Supp. 3d 829 (D. Minn. 2015) ........................................................... 10

*Schultz v. Windstream Communs., Inc.*,
    600 F.3d 948 (8th Cir. 2010) ........................................................................ 22

*Sec'y of Lab. v. Macy's, Inc.*,
    No. 1:17-cv-541, 2022 U.S. Dist. LEXIS 23849 (S.D. Ohio Feb. 10, 2022) ....................... 22

*Smith v. UnitedHealth Grp. Inc.*,
    106 F.4th 809 (8th Cir. 2024) ....................................................................... 9

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) .................................................................................. 9, 11

*Thole v. U.S. Bank N.A.*,
    590 U.S. 538 (2020) ..................................................................................... 9

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021) ................................................................................ 1, 9, 11

*In re Unitedhealth Group PBM Litig.*,
    2017 U.S. Dist. LEXIS ................................................................................. 23

*In re Unitedhealth Group PBM Litig.*,
No. 16-cv-3352, 2017 U.S. Dist. LEXIS 208328 (D. Minn. Dec. 19, 2017) ........................22

*Wyeth v. Levine*,
555 U.S. 555 (2009)..................................................................................................................15

**Statutes**

5 U.S.C. § 551...........................................................................................................................15

5 U.S.C. § 553...........................................................................................................................15

29 U.S.C. § 1132 .................................................................................................................. *passim*

29 U.S.C. § 1182(b)(1) ...........................................................................................................4, 5

42 U.S.C. § 300gg-4 ............................................................................................................. *passim*

**Federal Rules**

Rule 12(b)(6)...........................................................................................................................2, 12

**Other Authorities**

29 C.F.R. § 2590.702 .........................................................................................................7, 18, 19

66 Fed. Reg. 1421 ........................................................................................................................4

66 Fed. Reg. 1434 ........................................................................................................................4

71 Fed. Reg. 75045 ......................................................................................................................5

78 Fed. Reg. 33160 .............................................................................................................18, 19

78 Fed. Reg. 33162 ......................................................................................................................6

78 Fed. Reg. 33163 ....................................................................................................................16

78 Fed. Reg. 33164 ......................................................................................................................7

Wolters Kluwer Bouvier Law ....................................................................................................16

About Health Effects of Cigarette Smoking |CDC at
https://www.cdc.gov/tobacco/about/index.html (last visited September 4,
2024) ........................................................................................................................................20

*Adherence*, Black's Law Dictionary (12th Ed. 2024)..............................................................16

*Adherence*, Cambridge Dictionary,
    https://dictionary.cambridge.org/us/dictionary/english/adherence (last visited
    August 29, 2024)....................................................................................................................16

CDC, https://www.cdc.gov/tobacco/about/benefits-of-quitting.html (last visited
    August 30, 2022)....................................................................................................................20

https://www.merriam-webster.com/dictionary/adhere (last visited August 29,
    2024) ......................................................................................................................................16

Jan. 9, 2014, https://www.dol.gov/sites/dolgov/files/EBSA/about-ebsa/our-
    activities/resource-center/faqs/affordable-care-act-implementation-faqs-part-
    xviii-mental-health-parity.pdf ................................................................................................7

## INTRODUCTION

The Complaint here is one of many class action lawsuits in a recent wave of litigation attacking the validity of wellness programs that have been offered under employer-sponsored group health plans for decades. Specifically, Plaintiffs Richard Mehlberg and Angela Deibel ("Plaintiffs") challenge the design of a wellness program designed to incentivize participants to stop using tobacco that is offered under the Employee Benefit Plan of the Compass Group USA, Inc. (the "Plan"). Plaintiffs claim that the program violates Section 702(b) of the Employee Retirement Income Security Act of 1974 ("ERISA").

As a threshold issue, Plaintiffs lack constitutional standing because they do not allege they ever participated in the program they challenge, nor that they wanted to participate. They also lack both constitutional and statutory standing to seek relief after they stopped participating in the Plan. Moreover, even if Plaintiffs have standing, the Complaint lacks substantive merit because the Plan's tobacco wellness program complies with ERISA. And, finally, Count III, which asserts a fiduciary breach claim, is not plausible because design of the challenged program is not a fiduciary act and because Plaintiffs do not allege a loss to the Plan.

This Court considered some of these issues several years ago in *Lipari-Williams v. Missouri Gaming Company*. 339 F.R.D. 515 (W.D. Mo. 2021). Despite the overlap, *Lipari-Williams* is not controlling here. *Lipari-Williams* was decided in the context of a "tentative, preliminary, and limited" discussion of the legal merits (*id.* at 521); without the benefit of key decisions from the U.S. Supreme Court cited herein, including *TransUnion, LLC v. Ramirez* (clarifying when Article III standing exists for statutory violations, like this one) and *Raimondo v. Loper Bright* (abrogating the *Chevron* deference to interpretative agency regulations that this Court relied on); and without the benefit of a full development of the statutory requirements (such

as the incorporation of the Public Health Service Act's requirements into ERISA). In short, this matter requires a renewed, fulsome review of ERISA's requirements and the terms of the Plan; and that analysis will make clear that this case must be dismissed.

**RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

## I. COMPASS, THE PLAN, AND THE WELLNESS PROGRAM.

The relevant facts are drawn from Plaintiffs' Complaint and assumed true for the purposes of this Motion only.

Compass Group USA, Inc. ("Compass") is the nation's largest foodservice and facilities company. ECF No. 1 ("Compl."), ¶ 1. Compass sponsors the Plan to provide health benefits for eligible employees and their eligible dependents. *Id.* at ¶ 2. It is a self-funded Plan. *Id.* at ¶ 69.

The Plan includes a wellness program to promote healthy lifestyles and prevent diseases by living tobacco free. The program is simple and straightforward. Plan participants certify annually during open enrollment whether they and/or their spouse are tobacco users. *Id.* at ¶ 38. Those that certify as tobacco users pay a tobacco surcharge. *Id.*

Tobacco users can avoid the tobacco surcharge by completing a tobacco cessation program at Compass's cost. *Id.* at ¶¶ 33-34. When participants complete the cessation program, and Compass is notified as such, Compass removes the tobacco surcharge prospectively for the rest of the Plan year. *Id.*; *see also* Declaration of Phillip Thompson ("Thompson Decl."), Ex. 1, 2022 Enrollment Guide, p. 15.[1] The 2022 Enrollment Guide also explains that, if a participant does not

---

[1] Though a motion to dismiss under Rule 12(b)(6) is normally limited to the complaint, courts can also consider documents incorporated by reference in a complaint, such as the cited Enrollment Guide cited in Paragraph 33 and 38 of the Complaint, or document that are essential to the complaint. *Moses.com Sec., Inc. v. Comprehensive Software Sys.*, 406 F.3d 1052, 1063 n.3 (8th Cir. 2005); *Dunn v. Bank of Am. N.A.*, 844 F.3d 1002, 1005-06 (8th Cir. 2017) (affirming district court decision to take judicial notice of a document that was not attached or referenced in the complaint but nonetheless essential to the allegations).

feel they "can fully participate in this program because of a disability or medical condition," they "may be eligible for alternative ways to participate." Thompson Decl., Ex. 1 at p. 15.

## II.    PLAINTIFFS' COMPLAINT.

Plaintiffs Deibel and Mehlberg allege they worked for Compass and paid a tobacco surcharge in 2023 and 2022, respectively. Compl, ¶¶ 9-10. Notably, however, Plaintiffs do not allege that they ever enrolled in a tobacco cessation program offered by Compass, wanted to enroll in a tobacco cessation program, nor that they requested a waiver or additional information from the Plan administrator concerning the tobacco surcharge or tobacco cessation program. Mehlberg terminated employment effective April 6, 2024, and Deibel waived medical coverage starting in 2024. Thompson Decl., Exs. 2 & 3.[2]

The Complaint asserts three claims predicated on an alleged violation of 29 U.S.C. § 1182(b), ERISA § 702(b). In Count I, Plaintiffs allege Compass violated ERISA by administering an unlawful tobacco wellness program that impermissibly discriminated against tobacco users by providing a prospective waiver of tobacco surcharges upon completion of a tobacco cessation program, as opposed to a retroactive rebate of all surcharges paid that Plan year. Compl., ¶¶ 27-34, 52-58. In Count II, Plaintiffs allege Defendant did not provide adequate notice of a legally compliant, reasonable alternative standard. *Id.* at ¶ 35-42; 59-65. Finally, in Count III, Plaintiffs re-cast the alleged statutory violations in Count I and II as breaches of ERISA's fiduciary duties and prohibited transactions causing a loss to the Plan in violation of 29 U.S.C. § 1132(a)(2), ERISA § 502(a)(2). *Id.* at ¶¶ 66-74. Plaintiffs seek to represent a class of "all Plan participants within the United States who paid Compass's tobacco surcharge at any time from six years prior to the filing of the Complaint to the present." *Id.* at ¶ 43.

---

[2] These documents are properly considered on a motion to dismiss because they are essential to the Complaint. *Infra*, note 1.

<u>**STATUTORY AND REGULATORY BACKGROUND**</u>

**I.     THE 1996 ADDITION OF WELLNESS PROGRAMS TO ERISA.**

In 1996, HIPAA added Section 702(b) to ERISA, which provides that a group health plan cannot require any individual to pay a health plan premium greater than that of a similarly situated individual enrolled in the plan based on any health status-related factor.[3]  Section 702(b)(2) goes on to provide that a plan can establish "premium discounts or rebates . . . in return for *adherence* to programs of health promotion and disease prevention,"[4] also known as "wellness programs."

**II.     THE DOL'S 2001 PROPOSED REGULATIONS AND 2006 FINAL REGULATIONS.**

The Department of Labor ("DOL") regulates ERISA, and, as such, promulgated regulations on ERISA's wellness programs.  On January 8, 2001, the DOL first issued proposed rules to identify what it considered a "bona fide wellness program."   Regarding tobacco surcharges, the DOL maintained that it can be unreasonably difficult for an individual to stop smoking immediately due to an addiction to nicotine.  That difficulty would trigger a duty by a plan to provide a "reasonable alternative standard" such as a smoking cessation program.[5]  The DOL provided an example of a compliant wellness program:

> It is unreasonably difficult for Individual *E* to stop smoking cigarettes due to an addiction to nicotine (a medical condition).  The plan accommodates *E* by requiring *E* to *participate* in a smoking cessation program to avoid the surcharge.  *E* can avoid the surcharge for as long as *E participates* in the program . . . .[6]

Significantly, the DOL did not suggest that employers must reward smokers on a retroactive basis *prior* to their participation in a cessation program, as Plaintiffs assert here. Indeed, the participation requirement to lift a tobacco surcharge was directly in line with

---

[3] 29 U.S.C. § 1182(b)(1) (emphasis added).
[4] 29 U.S.C. § 1182(b)(2) (emphasis added).
[5] 66 Fed. Reg. 1421 at 1423 & n. 1 (citing to DSM IV and Surgeon General report that nicotine can be addicting).
[6] 66 Fed. Reg. at 1434 (emphasis added) (ex. 6).

Congress's command in Section 702(b) that wellness programs can only reward "*adherence*" to wellness programs. On December 13, 2006, the DOL issued final regulations on wellness programs wherein it repeated the example from its 2001 proposed regulations.[7]

## III.  THE 2010 ACA AMENDMENTS.

On March 23, 2010, the Affordable Care Act ("ACA") amended ERISA to incorporate Section 2705 of the Public Health Service Act ("PHSA") regarding, among other things, wellness programs.[8] In addition to reiterating the "adherence" requirement in ERISA Section 702(b), PHSA Section 2705 confirmed that such wellness programs must "be reasonably designed to promote health or prevent disease."[9] In relevant part, Section 2705 defines a program "reasonably designed to promote health or prevent disease" as one that has a reasonable chance of "improving the health of, or preventing disease in, *participating* individuals . . . ." *Id.* (emphasis added).

Importantly, while ERISA Section 702(b)(2)(B) refers only to premium rebates or discounts,[10] Section 2705 of the PHSA introduced a third category – rewards:

> If any of the conditions for obtaining a premium discount or rebate *or other reward* for participation in a wellness program is based on an individual satisfying a standard that is related to a health status factor, such wellness program shall not violate this section if the requirements of paragraph (3) are complied with.[11]

Paragraph 3 referenced in the above quote then specifically defines "reward" as including the absence of a surcharge: "A reward may be in the form of a discount or rebate of a premium or contribution, a waiver of all or part of a cost-sharing mechanism (such as deductibles,

---

[7] 71 Fed. Reg. at 75045 (ex. 5).
[8] The ACA did not amend ERISA § 702(b) directly. Rather, through ERISA § 715, ERISA incorporated PHSA Section 2705 into ERISA. *See* ERISA § 715, 29 U.S.C. § 1185d, and PHSA § 2705, 42 U.S.C. § 300gg-4.
[9] 42 U.S.C. § 300gg-4(j)(3)(B).
[10] *See* 29 U.S.C. § 1182 (b)(2)(B) ("Construction. Nothing in paragraph (1) shall be construed…to prevent a group health plan…from establishing premium *discounts or rebates* or modifying otherwise applicable copayments or deductibles in return for adherence to programs of health promotion and disease prevention." (emphasis added)).
[11] 42 U.S.C. § 300gg-4 (j)(1)(C) (emphasis added).

copaymentss, or coinsurance), *the absence of a surcharge . . . .*".[12]

PHSA Section 2705 then provides that "the full reward under the wellness program shall be made available to all similarly situated individuals."[13] Section 2705 then drops the word "full" and states "[t]he reward is not available to all similarly situated individuals for a period unless the wellness program allows … for a reasonable alternative standard,"[14] which in this case is the cessation program. Further, if plan materials describe the terms of the wellness program, the PHSA provides that those materials must also disclose the availability of this reasonable alternative standard. *Id.* at § 300gg-4(j)(3)(E). Plan materials that merely mention the wellness program, however, are not required to make that disclosure. *Id.*

Critically, nowhere does Section 2705 mention a retroactive refund for a period when a participant is not participating in a reasonable alternative standard nor does it suggest that "full reward" means a retroactive refund under those circumstances.

## IV. THE 2013 REVISED, FINAL REGULATIONS.

On June 2, 2013, the DOL issued revised, final regulations. In the preamble to the 2013 regulations (upon which Plaintiffs rely),[15] the DOL conceded that a wellness program must have "a reasonable chance of improving the health of, or preventing disease in, *participating* individuals."[16]

When discussing tobacco cessation programs specifically, the DOL posited in the preamble that for plans like Compass's that have an outcome-based standard that an individual not use tobacco, a reasonable alternative standard would be an educational seminar, and that "as

---

[12] 42 U.S.C. § 300gg-4 (j)(3)(A) (emphasis added).
[13] 42 U.S.C. § 300gg-4(j)(3)(D).
[14] 42 U.S.C. § 300gg-4(j)(3)(D)(i), (I).
[15] *See* Compl. ¶ 32 (quoting language from the preamble to the 2013 regulations).
[16] 78 Fed. Reg. at 33162 (preamble) (emphasis added).

clarified in an example in the final regulations, an individual who attends the seminar is *then entitled* to the reward . . . ."[17]  Again, it does not suggest a retroactive refund.

Example Six of the regulations, referenced in the quote above, is found in the regulations at 29 C.F.R. § 2590.702(f)(4)(vi) and specifically discusses tobacco surcharges and cessation programs.  The example says nothing of a retroactive refund of a surcharge.  Instead, it suggests – as it must to fit within the statutory definition of "reward" – that a surcharge can be *avoided* if a participant participates in a cessation program, not that a surcharge must be *refunded* for a time when a participant had not completed or even begun a cessation program.

Notwithstanding this tobacco-specific example in the text of the regulation, Plaintiffs rely on a section of the preamble that generally discusses premium discounts *and does not* discuss tobacco cessation programs.  It provides that if a "plan offers a health-contingent wellness program with a *premium discount* and an individual who qualifies for a reasonable alternative standard satisfies that alternative on April 1, the plan or issuer must provide the premium discounts for January, February, and March to that individual."[18]

## V.    THE DOL'S 2014 FREQUENTLY ASKED QUESTIONS.

Following the DOL's release of the 2013 Regulations, it released a set of Frequently Asked Questions ("FAQs") to provide further guidance.[19]  In those FAQs, the DOL explicitly addressed tobacco surcharges, but did not in any way suggest that plan sponsors must provide retroactive rebates to participants who complete a cessation program mid-year.[20]

---

[17] 78 Fed. Reg. at 33164 (preamble) (emphasis added).
[18] *See* Compl. ¶ 32 (quoting 78 Fed. Reg. at 33163 (preamble))(emphases added).
[19] *See* FAQs About Affordable Care Act Implementation (Part XVIII) and Mental Health Parity Implementation ("DOL FAQs"), Jan. 9, 2014, https://www.dol.gov/sites/dolgov/files/EBSA/about-ebsa/our-activities/resource-center/faqs/affordable-care-act-implementation-faqs-part-xviii-mental-health-parity.pdf.
[20] DOL FAQs at Q8 (emphasis added).

7

## <u>ARGUMENT</u>

The Complaint alleges that Compass's tobacco wellness program does not comply with ERISA Section 702(b). The Complaint boils down to an argument that: (1) the Plan was required to retroactively rebate tobacco surcharges to any participant who completed the tobacco cessation program, no matter when they complete the program, rather than only providing prospective waivers of the surcharge upon completion of a cessation program; and (2) "all Plan materials" did not disclose the availability of a legally compliant reasonable alternative standard. These allegations are not sufficient to withstand dismissal.

*First*, Plaintiffs lack Article III standing to assert their claims. Plaintiffs lack standing because the Complaint does not allege that either Plaintiff ever participated in, or tried to participate in, the cessation program that they challenge. In other words, Plaintiffs' alleged harm – paying the tobacco surcharge – was caused by their own actions of not taking any steps to avoid the surcharge through a reasonable alternative standard, not because of Compass's design of the wellness program and related notices.

*Second,* because neither Plaintiff participated in the Plan after April 6, 2024, they lack both Article III and statutory standing to assert claims thereafter.

*Third*, the Complaint fails on the merits. The entire Complaint is premised on the inaccurate assertion that Compass is required to offer a retroactive refund of the tobacco surcharge. Moreover, Count III is an improper re-packaging of the statutory claims asserted in Counts I and II. The design of the Plan's wellness program is not a fiduciary act redressable under ERISA § 502(a)(2), and Plaintiffs' claims do not identify loss to the Plan that is a perquisite to proceeding under ERISA § 502(a)(2).

# I.     PLAINTIFFS LACK STANDING TO ASSERT THEIR CLAIMS.

## A.     Legal Standards Related to Constitutional and Statutory Standing.

"There is no ERISA exception to Article III." *Thole v. U.S. Bank N.A.*, 590 U.S. 538, 547 (2020). Rather, all plaintiffs must adequately allege (i) they suffered an injury that is concrete, particularized, and actual or imminent, (ii) that is traceable to defendant's conduct, and (iii) that the injury is redressable by judicial relief. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). Defendants may challenge these elements on the face of a complaint (a facial attack) or by alleging underlying facts do not support a finding that the standing elements are satisfied (a factual attack). *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990). Here, Defendant asserts a facial attack on Plaintiffs' standing.

In additional to constitutional standing under Article III, Plaintiffs must have statutory standing under ERISA. *Hastings v. Wilson*, 516 F.3d 1055, 1060 (8th Cir. 2008). Failing to allege either form of standing requires dismissal of the claims.

## B.     Plaintiffs Do Not Allege an Injury Tethered to the Alleged Statutory Violation and Thus Lack Article III Standing.

Bare allegations that a defendant violated a statute, without pleading how that specific violation caused Plaintiffs to suffer a concrete injury that is traceable to the defendant's challenged conduct, do not satisfy Article III's standing requirements. *TransUnion LLC*, 594 U.S. at 440;[21] *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (the alleged violations "must affect the plaintiff in a personal and individual way"); *Hekel v. Hunter Warfield, Inc.*, 118 F.4th 938, 942 (8th Cir. 2024); *Smith v. UnitedHealth Grp. Inc.,*106 F.4th 809, 813 (8th Cir. 2024).

---

[21] *Transunion* had only recently been decided when this Court ruled in *Lipari-Williams* and thus was not analyzed therein. 339 F.R.D. at 523-24.

The alleged statutory violation underlying all three Counts in the Complaint is not the imposition of the tobacco surcharge in general, but rather that Compass did not offer a retroactive refund of the tobacco surcharge for participants who completed a tobacco cessation program.[22] But Plaintiffs do not allege that they participated in the program and only received a prospective waiver, or that they wanted to participate in the cessation program *at all*. Plaintiffs cannot suffer an injury from an allegedly non-compliant program in which they did not participate. *See Sabri v. Whittier Alliance*, 122 F. Supp. 3d 829, 837 (D. Minn. 2015) (plaintiffs lack standing to challenge election bylaws when they did not apply to be candidates in the election at issue); *see also Dorman v. Charles Schwab Corp.*, No. 17-cv-00285-CW, 2018 U.S. Dist. LEXIS 218049, at *14 (N.D. Cal. Sep. 20, 2018) (plaintiff could not "allege that he was injured by Defendants' allegedly overly-complicated program if he never actually experienced that program.")

*Sabri* is instructive. There, the plaintiffs challenged bylaws that they claimed were drafted solely to exclude them from a board election. 122 F. Supp. 3d at 834-835. The court found the plaintiffs did not allege an injury because the plaintiffs never "submitted applications or otherwise attempted to be a candidate in the election." *Id.* at 834. The Court went on to hold that plaintiffs needed to show that they were actually injured (*i.e.*, rejected from the election) because of the bylaw provision at issue. *Id.*; *see also Frost v. Sioux City*, 920 F.3d 1158, 1161 (8th Cir. 2019) (plaintiff that did not own a dog, but planned to adopt one in the near feature, lacked standing to challenge a local ordinance banning pit bulls); *Buetow v. A.L.S. Enters., Inc.*, 564 F. Supp. 2d 1038, 1044 (D. Minn. 2008) (holding plaintiff lacked standing to challenge retailer's representations for products plaintiff never purchased).

---

[22] Indeed, Plaintiffs recognize that tobacco wellness programs are generally permissible, and that completion of a tobacco cessation program is a lawful, common reasonable alternative standard for such a program. Compl., ¶¶ 27-29.

The same is true here. Plaintiffs cannot claim that they could have been injured by the program had they participated in it; they must have actually participated and suffered an injury.

To be sure, Plaintiffs claim that their injury is the financial harm of paying the tobacco surcharge, but that purported "injury" is not traceable to the conduct at issue. Again, Plaintiffs do not allege that they would have enrolled in the program had Compass retroactively rebated the surcharges. Thus, Plaintiffs' payment of the tobacco surcharge is traceable to their own inaction of not certifying that they were tobacco free, and not engaging in the free cessation program – not Compass's design of the cessation program. To put it differently, even if Compass had operated the tobacco wellness program in the exact way that Plaintiffs claim it should have been run, they would have *still* paid the tobacco surcharge for the entire Plan year because they never took any steps to complete the cessation program that they challenge.

**C.    Count II Alleges "Informational" Injuries That Are Not Sufficient to Confer Article III Standing.**

The Supreme Court plainly explained in *TransUnion* that it is not enough to allege that information required to be disclosed by a statute was not received. Plaintiffs must allege some kind of "downstream consequence" suffered *as a result* of not receiving that information. *TransUnion,* 594 U.S. at 442 (internal citation omitted); *see also Spokeo*, 578 U.S. at 341; *Hekel*, 118 F.4th at 942 (applying *TransUnion*'s holding that informational injuries or statutory violations alone are insufficient absent a concrete injury to confer Article III standing).

Here, Plaintiffs nitpick the content of the Plan disclosures in Count II. But they do not allege any consequences personally suffered *from these alleged flaws*. Plaintiffs do not allege that they did not participate in the cessation program because of the alleged defects, nor do they allege that a different or additional notice would have changed their behavior. Plaintiffs' bare,

conclusory assertions are not sufficient to plausibly plead Article III standing. *TransUnion,* 594 U.S. at 442; *Spokeo*, 578 U.S. at 341.

### D. Plaintiffs Lack Article III and Statutory Standing After Exiting the Plan.

Plaintiffs lack constitutional and statutory standing to assert their claims after April 6, 2024. Mehlberg terminated employment as of that date (and thus ceased participation in the Plan), and Deibel waived medical coverage as of January 1, 2024. Thompson Decl., Ex. 2 & 3. Thus, they could not have suffered an injury sufficient to confer Article III standing from that point to the present. *Supra,* Section I.B.

Plaintiffs lack statutory standing for the same reason. As relevant here, only a participant or beneficiary of a Plan may file suit under ERISA Sections 502(a)(2) and 502(a)(3). *Hastings v. Wilson*, 516 F.3d 1055, 1060 (8th Cir. 2008). Neither Plaintiff fits that definition because both ceased participating in the Plan. As such, they lack statutory standing to assert their claims after April 6, 2024. *Id.* (plaintiffs lacked statutory standing to file a fiduciary breach claim related to a plan in which they did not participate).

## II. THE COMPLAINT FAILS ON THE MERITS.

### A. Legal Standards Under Federal Rule of Civil Procedure 12(b)(6).

A complaint must plead non-conclusory allegations sufficient for a court to recognize a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007); Fed. R. Civ. P. 12(b)(6). While well-plead allegations must be accepted as true, the court owes no deference to "legal conclusion[s] couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). And important here, claims asserted under ERISA require "careful, context-sensitive scrutiny" to "divide the plausible sheep from the meritless goats." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014). Plaintiffs' allegations do not meet this standard.

## B. ERISA and the PHSA Do Not Require Retroactive Rebates of Tobacco Surcharges.

To frame the issue again, together ERISA Section 702(b) and PHSA Section 2705 allow a group health plan to offer a wellness program "reward" in the form of "the absence of a surcharge" in return for a plan participant's *adherence* to programs of health promotion and disease prevention."[23]  Section 2705 also states that "the full reward under the wellness program shall be made available to all similarly situated individuals" and then clarifies that "[t]he reward is not available to all similarly situated individuals" unless the wellness program provides "a reasonable alternative standard," which in this case is the cessation program.  42 U.S.C. § 300gg-4(j)(3)(D)(i)(II).

Here, Compass's tobacco wellness program does just that:  tobacco users have an ongoing opportunity to obtain the reward (*i.e.*, the absence of the surcharge) for adherence to the tobacco wellness program.  If a tobacco user cannot attain the wellness program's initial standard of being tobacco free, he or she can complete the reasonable alternative standard (the cessation program).  Upon doing so, the participant obtains the same reward (*i.e.*, the absence of a surcharge) and pays the same amount in premiums as a non-tobacco user on a going forward basis.

Under Plaintiffs' contrary view, plans are required to allow participants to game the system by using tobacco all year long, and then enroll in a cessation program at the end of the year and obtain a refund of surcharges retroactively for the entire year they were smoking.  Plaintiffs' only support for their interpretation of the statute is language from the preamble of the 2013 Final Regulations.[24]  But as set forth below, a preamble to an agency regulation is not the law and, even

---

[23] PHSA Section 2705, 42 U.S.C. § 300gg-4 (j)(3)(A); ERISA §702(b)(2)(B), 29 U.S.C. § 1182(b)(2)(B) (emphasis added).  In *Lipari-Williams*, the Court held that the safe harbor ERISA § 702(b) did not apply where the reward at issue was the absence of a surcharge, as opposed to a premium discount or rebate, because the Court did not have the benefit of analyzing PHSA Section 2705.  339 F.R.D. at 524.

[24] *See* Compl. ¶ 32 (quoting 78 Fed. Reg. at 33163 (preamble))(emphases added).

13

if it were, Plaintiffs' interpretation does not comport with the best reading of the statute and thus is owed no deference by this Court. Indeed, unlike in *Lipari-Williams*, *Chevron* deference cannot save Plaintiffs' claim because the U.S. Supreme Court abrogated *Chevron* in *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244, 2249-51 (2024).

### 1. *Loper Bright* changed the law.

As this court recognized in *Lipari-Williams*, "*Chevron* deference" once applied to analyze the DOL's wellness regulation that Plaintiffs seek to enforce against Compass. *Lipari-Williams*, 339 F.R.D. at 524. Under the now-overruled *Chevron* regime, a properly promulgated agency regulation was treated as the controlling legal rule if Congress had not spoken to the precise matter at issue and the agency's regulation was a permissible construction of the statute. *Id.*; *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244, 2249-51 (June 28, 2024).

In *Loper Bright*, the Supreme Court overruled *Chevron* and its requirement that courts defer to an agency's regulation interpreting a statute. In its place, the Supreme Court instructed that lower courts are to return to the Administrative Procedure Act's basic textual command: independently interpret the statute and effectuate the will of Congress. *Id.* at 2263. Now, instead of declaring an agency's interpretation "permissible," courts should use every tool at their disposal to determine the best reading of the statute. *Id.* at 2266. Thus, after *Loper Bright*, the DOL's regulations under ERISA Section 702(b) and PHSA Section 2705 are no longer the controlling legal rule; rather, the Court's interpretation of the statute controls. *Id.*; *see also Federation of Am. for Consumer Choice, Inc. v. United States DOL*, 2024 U.S. Dist. LEXIS 131589 at *27 (E.D. Tex. July 25, 2024) (applying same to stay the DOL's expanded fiduciary rule).

Finally, also significant here, the preamble to the 2013 regulations – not the regulations themselves – provides the sole basis for Plaintiff's core assertion that "if a calendar year plan offers a health-contingent wellness program with a premium discount and an individual who

qualifies for a reasonable alternative standard satisfies that alternative on April 1, the plan or issuer must provide the premium discounts for January, February, and March to that individual." Compl. ¶ 32. But the preamble is not the law and cannot bind private parties.

The Administrative Procedure Act ("APA"), 5 U.S.C. § 551, shows why. That act requires agencies to jump through various procedural hoops before issuing "legislative" or "substantive" rules, including giving notice of the rule, allowing parties to comment on the rule's merits, and responding to the comments. *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 96 (2015); 5 U.S.C. § 553(b)-(c).

On the other hand, "interpretive" rules like preambles are carved out from the notice-and-comment requirements under the APA. *Perez*, 575 U.S. at 96; *see* 5 U.S.C. § 553(b)(A). That distinction makes a difference. Language that appears in the preamble and the Federal Register but not in the Code of Federal Regulations does not enjoy the force of law. *Blanco v. Samuel*, 91 F.4th 1061, 1076 (11th Cir. 2024), citing *AT&T Corp. v. FCC*, 970 F.3d 344, 350, 448 U.S. App. D.C. 447 (D.C. Cir. 2020) (there the court held, "[T]he real dividing point between the portions of a final rule with and without legal force is designation for publication in the Code of Federal Regulations."); *Wyeth v. Levine*, 555 U.S. 555, 580 (2009) (declining to defer to agency's preamble in part because it did not go through notice-and-comment).

        **2.**     **Under *Loper Bright*, requiring refunds of the tobacco surcharge for a period prior to adherence to a wellness program is not the best read of the statutes.**

*Loper Bright* requires the Court to parse the texts of ERISA Section 702(b) and PHSA Section 2705 using the traditional tools of statutory interpretation. Terms that the statute leaves undefined should be given their "ordinary, contemporary, common meaning." *Restaurant Law Center v. United States Department of Labor*, No. 23-50562, 2024 U.S. App. LEXIS 21449, *13 (5th Cir. August 23, 2024).

The dispute here turns primarily on the statutory meaning of "adherence." Although neither the DOL nor the statutes define adherence, several contemporary dictionaries define "adherence" or "adhere" to mean "the fact of someone behaving exactly according to rules, beliefs, etc." or "obedience to a rule or policy," or "to bind oneself to observance."[25] But in their Complaint, Plaintiffs do not discuss what adherence means in the context of the terms reward, absence of a surcharge, or similarly situated under the statutes.

Instead, Plaintiffs ignore those key terms, repeat the phrase "full reward," and cite to an example from the preamble to the 2013 regulations. Again, that example discusses neither tobacco cessation programs nor surcharges and instead relates to premium discounts:

> [I]f a calendar year plan offers a health-contingent wellness program with a *premium discount* and an individual who qualifies for a reasonable alternative standard satisfies that alternative on April 1, the plan or issuer must provide the premium discounts for January, February, and March to that individual."[26]

Although the example refers only to the rebate of a premium discount and not the avoidance of a penalty such as a tobacco surcharge, Plaintiffs conflate this generic, non-binding preamble language and the phrase "full reward" to argue that plan participants who complete a cessation program must receive a retroactive refund of the surcharge for the full year (*i.e.*, during a time they had not completed the cessation program). *See* Compl. ¶¶ 32, 54.

### a. Plaintiffs' reliance on one, unrelated example from the preamble is unavailing.

As noted above, even before *Loper Bright*, a preamble does not have the force and effect of law because it is not subject to comment and rulemaking requirements. As such, Plaintiffs'

---

[25] *Adherence*, Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/adherence (last visited August 29, 2024). *See also, e.g.*, *Adherence*, WOLTERS KLUWER BOUVIER LAW DICTIONARY (Desk Ed. 2012) ("Adherence usually implies obedience to a rule or policy."); *Adherence*, BLACK'S LAW DICTIONARY (12th Ed. 2024) ("adherence . . . [b]ehaviour that accords with a particular rule, belief, principle, etc."); https://www.merriam-webster.com/dictionary/adhere (last visited August 29, 2024).
[26] 78 Fed. Reg. at 33163 (preamble) (emphases added).

interpretation of the statutory requirements by relying on one example in the preamble does not help their cause.

In addition, Plaintiffs' reliance on an example from a section of the preamble not addressing tobacco surcharges, when there are several other sections that *do* address tobacco surcharges and cessation programs (discussed above), demonstrates the weakness of Plaintiffs' interpretation of the phrase "full reward" to mean a retroactive refund of surcharges during a period when a participant had not completed a cessation program.

> ### b. Interpreting the phrase "full reward" to mean a retroactive refund of surcharges is not the best reading of the wellness statutes.

Receiving a "reward" – here, "the absence of a surcharge" – as defined under the statutes, requires "adherence" to a wellness program, like a cessation program.[27]  Thus, until Plan participants participate in a cessation program, they are not adhering to a program, and as such, they are not entitled to the reward, which in this case, is the absence of (*i.e.*, removal of) a surcharge.  Given the adherence requirement, it simply cannot be said that the best reading of the statutes would equate reward (again, in this context, the absence or removal of a surcharge) with a retroactive refund dating back to a time when the participant was not adhering to a wellness program.

Plaintiffs' take on "full reward" would mean that a participant who does nothing until December and *then* completes a cessation program also should have the full year's surcharge refunded.  In that scenario, however, the participant was not adhering to a program of health until the very end of the year.  In short, Plaintiffs' spin on "full reward" would render the statutory adherence requirement meaningless.

---

[27] PHSA Section 2705, 42 U.S.C. § 300gg-4 (j)(3)(A); ERISA §702(b)(2)(B), 29 U.S.C. § 1182(b)(2)(B).

Even the DOL acknowledged in the 2013 regulations that the definition of "reward" includes "*avoiding a penalty* (such as the absence of a premium surcharge or other financial or nonfinancial disincentives)."[28]    In common understanding, a thing cannot be avoided retroactively.  In other words, under the statute, a plan is entitled to impose a surcharge until a participant completes a cessation program.  That surcharge cannot be "avoided" retroactively because it has already been imposed.  As such, "avoiding a penalty" in this context clearly refers to something in the future, that is, the participant is entitled to have the surcharge removed prospectively once they complete a cessation program.

Similarly, under Plaintiffs' reading of "full reward," the design of the wellness program would incentivize participants to continue to smoke and wait until near the end of the year to enroll in and complete a cessation program, knowing they could have the surcharge refunded for the whole year.  But a design that incentivizes continued smoking violates the statutory requirement that a wellness program "shall be reasonably designed to promote health or prevent disease."[29]

Plaintiffs' suggestion that retroactive refunds are required is also belied by the DOL's own FAQ.  As noted above, in those FAQs, the DOL explicitly addressed tobacco surcharges and nowhere stated that plan sponsors are required to provide retroactive rebates to participants who complete a cessation program mid-year.[30]

Plaintiffs' take on "full reward" also would read out of the definition of "reward" that a wellness program is permitted to structure a reward as "the absence of a surcharge."[31]  As mentioned above, even the DOL regulation speaks to the avoidance of a surcharge, not the rebate

---

[28] 78 Fed. Reg. at 33160 (preamble); 29 C.F.R. § 2590.702(f)(1)(i) (emphasis added).
[29] 42 U.S.C. § 300gg-4(j)(3)(B).
[30] DOL FAQs at Q8 (emphasis added).
[31] 42 U.S.C. § 300gg-4 (j)(3)(A).

of a surcharge, when it defines "reward" as including "avoiding a penalty (such as the absence of a premium surcharge or other financial or nonfinancial disincentives)."[32]

Finally, Plaintiffs' proposed interpretation of "full reward" cannot be reconciled with the rest of the sentence in which the phrase is included in the statute. To recap, Section 2705 of the PHSA provides that "the full reward under the wellness program shall be made available to all similarly situated individuals."[33] Section 2705 then drops the word "full" and states "[t]he reward is not available to all similarly situated individuals for a period unless the wellness program allows … for a reasonable alternative standard,"[34] which in this case is the cessation program.

Critically, nowhere does Section 2705 mention a retroactive refund for the period prior to completion of a reasonable alternative standard. And nowhere in this very detailed statute does it suggest that "full reward" means a retroactive refund under those circumstances. In fact, the plain language of the statute shows that the focus of "full reward" was on "reasonable alternative standard" for "similarly situated employees," not any sort of retroactive reimbursement of a surcharge.

But to say that someone who enrolls in a cessation program in January is similarly situated to someone who continues to smoke for the remainder of the year and only enrolls in a cessation program at the last minute defies common sense. The participant who smokes until December exposes themselves to a greater health burden and the plan to a greater economic burden for the entire year due to increased risk of health issues, but under Plaintiffs' theory, the participant who smoked all year, and therefore did not adhere to the wellness program, should be rewarded for smoking all year. This "thank you for smoking" approach plainly is not the best read of a statute

---

[32] 78 Fed. Reg. at 33160 (preamble); 29 C.F.R. § 2590.702(f)(1)(i)
[33] 42 U.S.C. § 300gg-4(j)(3)(D).
[34] 42 U.S.C. § 300gg-4(j)(3)(D)(i), (I).

which requires that wellness programs "be reasonably designed to promote health or prevent disease."[35]

In light of the undisputed health benefits from quitting tobacco use (documented by the federal agencies with expertise on these issues)[36] and Congress's command that only to those who "adhere[] to a program of health promotion and disease prevention," are entitled to a reward, Plaintiffs' contrary take on the statutes is not a "best" reading of the statute under *Loper Bright*. Because Plaintiffs' claim rests entirely on an incorrect reading of the statutes and relies exclusively on the preamble, which does not enjoy the force and effect of law, and in any event is inconsistent with the statutes, their claims must be dismissed.

### C.     Plaintiffs' Alleged Notice "Deficiencies" Do Not Support a Claim.

Plaintiffs further allege in connection with Counts I and II that Compass's tobacco wellness program is deficient because Compass "must disclose in all plan materials describing the terms of an outcome-based wellness program [*here, the tobacco wellness program*] . . . the availability of a reasonable alternative standard to qualify for the reward." Compl, ¶ 35 (italicized alterations added) (*citing* 29 C.F.R. § 2590.702; 42 U.S.C. § 300gg-5(j)(3)(E)).

Plaintiffs' notice claim is circular, alleging that the Plan materials did not appropriately inform Plan participants of the existence of a reasonable alternative standard to avoid the tobacco surcharge because the Plan's cessation program was not a reasonable alternative standard in light

---

[35] 42 U.S.C. § 300gg-4(j)(3)(B).

[36] The U.S. Centers for Disease Control and Prevention ("CDC") details that cigarette smoking is the *leading cause* of preventable disease and death in the U.S., killing more than 480,000 Americans each year. *See* Smoking & Tobacco Use | About Health Effects of Cigarette Smoking |CDC at https://www.cdc.gov/tobacco/about/index.html (last visited September 4, 2024). The CDC pulls no punches in listing all the negative health effects and health care costs from continued cigarette smoking, and notes "*[q]uitting smoking is one of the most important actions people can take to improve their health*. This is true regardless of their age or how long they have been smoking." Benefits of Quitting Smoking, CDC, https://www.cdc.gov/tobacco/about/benefits-of-quitting.html (last visited August 30, 2022).

of its failure to retroactively rebate surcharges.  Compl., ¶ 36.  As noted above, that argument fails as a matter of law, as does any portion of the Complaint that relies on these allegations.

Moreover, to the extent that Plaintiffs claim that ERISA requires specific disclosures in plan materials to qualify for the safe harbor in Sections 702(b) and Section 2705, Plaintiffs' claim lacks merit.  Compl., ¶ 35.  On the face of the Complaint, the cited statutes and regulations only require disclosure of the *availability of* a reasonable alternative standard, not the specific details of the standard.  Compl., ¶ 35.  That is exactly what Compass did here.  Plaintiffs miscite the 2022 Enrollment Guide, claiming that it only mentions the surcharge.  Not so.  The cited language explaining the existence of the surcharge is found on page five of the guide, and later on page fifteen, the guide discloses the availability of the cessation program and that the completion of the program removes the surcharge, as well as how to get more information on the program or alternative ways to achieve the same reward.[37]  Thompson Decl., Ex. 1, 2022 Enrollment Guide, p. 15. And Plaintiffs do not identify a single other "Plan material" that is allegedly deficient.

> **D.** **Plaintiffs' Fiduciary Breach and Prohibited Transaction Claims Must Be Dismissed Because Plaintiffs' Allegations Fall Outside the Scope of ERISA Section 502(a)(2).**

Count III of Plaintiffs' Complaint recasts Count I's statutory violations as a breach of ERISA's fiduciary duties and a prohibited transaction and seeks a remedy under ERISA Section 502(a)(2).  Compl., ¶¶ 66-74.  Count III suffers the same fate as Counts I and II because the Plan's tobacco wellness program does not violate ERISA.  Count III also fails because Compass's design of the tobacco wellness program were not fiduciary acts or transactions and because ERISA Section 502(a)(2) does not provide a remedy where the Plan itself did not suffer a loss, as is the case here.

---

[37] *Lipari-Williams* is again distinguishable because the notices in that case allegedly did not disclose the existence of the reasonable alternative standard.  339 F.R.D. 515 at 522.

### 1. Plaintiffs do not allege fiduciary acts or prohibited transactions.

"In every case charging breach of ERISA fiduciary duty…the threshold question is…whether [defendant] was acting as a fiduciary." *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000). Drafting a plan, or an underlying wellness program, or determining what benefits are offered under a plan are not fiduciary decisions under ERISA. *Lockheed Corp. v. Spink*, 517 U.S. 882, 890 (1996) (holding when an employer alters a plans' terms it acts in a settlor rather than a fiduciary capacity); *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995) (holding ERISA does not require employers to offer certain plan benefits nor does it prevent employers from changing plan benefits in a way that may be detrimental to participants); *Schultz v. Windstream Communs., Inc.*, 600 F.3d 948, 951 (8th Cir. 2010) (employers do not act in a fiduciary capacity when they "adopt, modify, or terminate plans").

Because Plaintiffs' Complaint takes aim at the terms of the Plan's tobacco wellness program, *i.e.*, its plan design, it falls outside the scope of ERISA's fiduciary duties and cannot give rise to a claim under ERISA Section 502(a)(2). *Sec'y of Lab. v. Macy's, Inc.*, No. 1:17-cv-541, 2022 U.S. Dist. LEXIS 23849 (S.D. Ohio Feb. 10, 2022) (dismissing a similar challenge to a tobacco wellness program because the design of these programs are settlor, not fiduciary, acts).

Count III also fails because there is no allegation that Compass did not administer the tobacco wellness program in accordance with the Plan's terms. And following the Plan's terms cannot support a plausible claim a fiduciary breach claim under Section 502(a)(2). *See Macy's,* 2022 U.S. Dist. LEXIS 23849, at *13-14; *In re Unitedhealth Group PBM Litig.*, No. 16-cv-3352 (JNE/BRT), 2017 U.S. Dist. LEXIS 208328, at *37 (D. Minn. Dec. 19, 2017) (quoting *Alves v. Harvard Pilgrim Health Care, Inc.*, 204 F. Supp. 2d 198, 210 (D. Mass. 2002)) ("'there can be no

breach of fiduciary duty where an ERISA plan is implemented according to its written, nondiscretionary terms.'").[38]

### 2. Plaintiffs do not allege a loss to the Plan.

The relief for fiduciary breach claims under Section 502(a)(2) is limited to recovering losses to the plan which inure to the plan as a whole. *Mass Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 (1985); *Roth v. Sawyer-Cleator Lumber Co.*, 16 F.3d 915, 919-20 (8th Cir. 1994).

Here, the Complaint alleges Plaintiffs suffered losses because they paid a tobacco surcharge, but the Complaint does not identify any losses *to the Plan*. Indeed, Plaintiffs do not allege that the Plan was out any money at all – only that it was somehow unfair that, because of the collected surcharges, Compass was required to contribute less from its general assets to fund the Plan's liabilities. Because such allegations do not show any loss to the Plan, they cannot support a valid claim under Section 502(a)(2) and must be dismissed.[39]

## CONCLUSION

In sum, Plaintiffs' position that DOL regulations require retrospective refunds of tobacco surcharges is far removed from Congress's statutory requirements for wellness programs because it discounts their core tenets – to promote health through tobacco cessation. Without the deference afforded under *Chevron* that saved the claims in *Lipari-Williams*, this tortured reading does not carry the day, as it fails to reflect the "best reading" of ERISA Section 702(b), under *Loper Bright*. For that fundamental reason, as well as the numerous other defects outlined herein – including Plaintiffs' lack of constitutional and statutory standing and improperly pled fiduciary breach

---

[38] Count III's prohibited transaction claim suffers the same fate. *Lockheed Corp.*, 517 U.S. at 892 (administering ERISA plans in accordance with the plan's terms falls outside the scope of prohibited transactions); *In re Unitedhealth Group PBM Litig.*, 2017 U.S. Dist. LEXIS, at *47.
[39] Compass does not argue that there is no mechanism to challenge the Plan's statutory compliance, just that a fiduciary breach claim under ERISA Section 502(a)(2) is not the appropriate mechanism to raise this claim. Indeed, Count III seeks the same relief as the alleged statutory violations in Count I.

claims, Plaintiffs' challenge to Compass's tobacco cessation program fails, and the entire

Complaint should be dismissed

Dated: March 6, 2025

**JACKSON LEWIS P.C.**

 */s/ Phillip C. Thompson*
Phillip C. Thompson (MO Bar #69915)
7101 College Blvd., Suite 1200
Overland Park, KS 66210
Telephone:    (913) 981-1018
Facsimile:     (913) 981-1019
Phillip.Thompson@jacksonlewis.com

René E. Thorne*
René.Thorne@jacksonlewis.com
Lindsey H. Chopin*
Lindsey.Chopin@jacksonlewis.com
601 Poydras Street, Suite 1400
New Orleans, Louisiana 70130
Telephone:    (504) 208-1755
Facsimile:     (504) 208-1759
*Admitted via *Pro Hac Vice*

ATTORNEYS FOR DEFENDANT

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on March 6, 2025, I filed the foregoing with the Court using the

CM/ECF system. This system sends notifications of such filing and service to all counsel of

record.

*/s/ Phillip C. Thompson*
Phillip C. Thompson

#022-8487-1209, v. 2