# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI
### CENTRAL DIVISION

RICHARD L. MEHLBERG, and ANGELA R.
DEIBEL, individually and on behalf of all
others similarly situated, and on behalf of the
Plan,

Plaintiffs,

   v.

COMPASS GROUP USA, INC.,

Defendant.

Case No. 2:24-cv-04179 SRB

## PLAINTIFFS' SUGGESTIONS IN OPPOSITION TO DEFENDANT
## COMPASS GROUP USA, INC.'S MOTION TO DISMISS

## TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................................i

INTRODUCTION ......................................................................................................1

   I.   Statutory and Regulatory Background ................................................................2

   II.  Plaintiffs' Allegations and the Procedural History of the Litigation....................5

ARGUMENT ............................................................................................................6

   III. Plaintiffs Have Article III Standing to Pursue their Claims...............................6

      A.  The Collection of an Unlawful Surcharge is a Monetary Harm Giving Rise to Standing.......................................................................................................6

         1.  Plaintiffs' Claim that They Paid an Illegal Surcharge Alleges a Concrete Injury-in-Fact. .........................................................................7

         2.  The Illegal Fee is Directly Traceable to Compass's Conduct. ...................9

      B.  Plaintiffs Have Standing for Their Notice Claim Premised on Inadequate Disclosures. ...................................................................................................11

      C.  Plaintiffs Did Not Lose Standing by Ceasing Payment of the Surcharge in 2024. ..............................................................................................................13

   IV. Plaintiffs' Claims Are Well-Pled ....................................................................14

      A.  Legal Standard...............................................................................................14

      B.  A Qualifying Wellness Program Requires Retroactive Reimbursement. .......15

         1.  The Statue's Plain Language Prohibits a Premium Surcharge..................16

         2.  Even if Compass's Tobacco Surcharge Program does not Violate ERISA's Plain Terms, the "Full Reward" Applies Retroactively.............................18

      C.  Plaintiffs' Claim Based on Notice Deficiencies is Adequately Alleged.........22

      D.  Plaintiffs' Claim for Breach of Fiduciary Duties is Adequately Alleged. ......23

   CONCLUSION ......................................................................................................25

# TABLE OF <u>AUTHORITIES</u>

<u>**Cases**</u>

*Am. Farm Bureau Fed'n v. U.S. Env't Prot. Agency*,
836 F.3d 963 (8th Cir. 2016) ................................................................................. 7

*Amalgamated Clothing & Textile Workers Union, AFL-CIO v. Murdock*,
861 F.2d 1406 (9th Cir. 1988) ............................................................................. 14

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................................. 23

*Auer v. Robbins*,
519 U.S. 452 (1997) ............................................................................................. 20

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ............................................................................................. 14

*Braden v. Wal-Mart Stores, Inc*.,
588 F.3d 585 (8th Cir. 2009) ............................................................................... 13

*Buetow v. A.L.S. Enters., Inc.*,
564 F. Supp. 2d 1038 (D. Minn. 2008) .................................................................. 9

*Calobrace v. Am. Nat. Can Co*.,
1995 WL 557443 (N.D. Ill. Sept. 19, 1995) ....................................................... 14

*Carlsen v. GameStop, Inc*.,
833 F.3d 903 (8th Cir. 2016) ............................................................................... 13

*Chevron, U.S.A. Inc., v. Natural Resources Defense Counsel*,
467 U.S. 837 (1984) ............................................................................................. 16

*Czyzewski v. Jevic Holding Corp*.,
580 U.S. 451 (2017) ............................................................................................... 7

*Danvers Motor Co. v. Ford Motor Co.*,
432 F.3d 286 (3d Cir. 2005) .................................................................................. 9

*DaVita, Inc. v. Marietta Mem'l Hosp. Employee Health Benefit Plan*,
978 F.3d 326 (6th Cir. 2020) ................................................................................. 9

*Debernardis v. IQ Formulations, LLC*,
942 F.3d 1076 (11th Cir. 2019) ........................................................................... 10

*Dorman v. Charles Schwab Corp*.,
2018 WL 6803738 (N.D. Cal. Sept. 20, 2018) ...................................................... 9

*Dubuisson v. Stonebridge Life Ins. Co.*,
887 F.3d 567 (2d Cir. 2018) ................................................................. 10

*Eckert v. Titan Tire Corp.*,
514 F.3d 801 (8th Cir. 2008) ................................................................. 14

*Elmer v. Kohli*,
2025 WL 99595 (D.N.J. Jan. 14, 2025) ................................................. 12

*Everson v. Blue Cross & Blue Shield of Ohio*,
898 F. Supp. 532 (N.D. Ohio 1994) ....................................................... 14

*Fed. Election Comm'n v. Akins*,
524 U.S. 11 (1998) ................................................................................. 12

*Franz v. Beiersdorf, Inc.*,
745 F. App'x 47 (9th Cir. 2018) ............................................................. 10

*Frost v. Sioux City*,
920 F.3d 1158 (8th Cir. 2019) ................................................................. 9

*GDM Enterprises, LLC v. Astral Health & Beauty, Inc.*,
2018 WL 3453475 (W.D. Mo. July 17, 2018) ....................................... 23

*Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc.*,
530 U.S. 238 (2000) ............................................................................... 24

*Havens Realty Corp. v. Coleman*,
455 U.S. 363 (1982) ............................................................................... 12

*Heffner v. Blue Cross & Blue Shield of Alabama, Inc.*,
443 F.3d 1330 (11th Cir. 2006) ............................................................. 14

*Hillsborough Cnty., Fla. v. Automated Med. Lab'ys, Inc.*,
471 U.S. 707 (1985) ............................................................................... 20

*Huizenga v. Indep. Sch. Dist. No. 11*,
44 F.4th 806 (8th Cir. 2022) .................................................................. 13

*Initiative & Referendum Inst. v. Walker*,
450 F.3d 1082 (10th Cir. 2006) ............................................................... 7

*Johnson v. Pluralsight, LLC*,
728 F. App'x 674 (9th Cir. 2018) ........................................................... 12

*Kisor v. Wilkie*,
588 U.S. 558 (2019) ............................................................................... 20

*Kuehl v. Sellner*,
    887 F.3d 845 (8th Cir. 2018) ........................................................................... 10

*Lipari-Williams v. Missouri Gaming Company*,
    339 F.R.D. 515 (W.D. Mo. 2021) ..............................................................*passim*

*Lockheed Corp. v. Spink*,
    517 U.S. 882 (1996) ....................................................................................... 24

*Loper Bright Enterprises v. Raimondo*,
    603 U.S. 369 (2024) ............................................................................. 1, 16, 21

*Maya v. Centex Corp.*,
    658 F.3d 1060 (9th Cir. 2011) ........................................................................... 7

*McKeage v. Bass Pro Outdoor World, LLC*,
    943 F.3d 1148 (8th Cir. 2019) ........................................................................... 8

*Perez v. Mortg. Bankers Ass'n*,
    575 U.S. 92 (2015) ......................................................................................... 20

*Pub. Citizen v. U.S. Dep't of Just.*,
    491 U.S. 440 (1989) ....................................................................................... 12

*Reynolds v. Turning Point Holding Co., LLC*,
    2020 WL 7336932 (E.D. Pa. Dec. 14, 2020) ................................................... 12

*Sabri v. Whittier Alliance*,
    122 F. Supp. 3d 829 (D. Minn. 2015) ................................................................ 9

*Sanderson v. Whoop, Inc.*,
    2025 WL 744036 (N.D. Cal. Mar. 7, 2025) .................................................... 12

*Schultz v. Windstream Commc'ns, Inc.*,
    600 F.3d 948 (8th Cir. 2010) ......................................................................... 24

*Secretary of Labor v. Macy's, Inc.*,
    2021 WL 5359769 (S.D. Ohio Nov. 17, 2021) ................................................ 19

*Sec'y of Lab. v. Macys, Inc.*,
    2022 WL 407238 (S.D. Ohio Feb. 10, 2022) ................................................... 24

*T & M Meat Fair, Inc. v. United Food & Commercial Workers, Local 174, AFL-CIO*,
    210 F. Supp. 2d 443 (S.D.N.Y. 2002) ............................................................ 13

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021) ................................................................................. 7, 11

**Statutes**

29 U.S.C. 203(m) ....................................................................................................... 12

29 U.S.C. § 1002(7) ................................................................................................... 14

29 U.S.C. § 1109 ........................................................................................................ 24

29 U.S.C. § 1109(a) ................................................................................................... 23

29 U.S.C. § 1132(a)(3) ................................................................................................. 5

29 U.S.C. § 1135 ........................................................................................................ 21

29 U.S.C. § 1182 ................................................................................................. *passim*

29 U.S.C. § 1185(d)(a)(1) ............................................................................................. 2

29 U.S.C. § 1191c .................................................................................................. 3, 21

42 U.S.C. 300gg ................................................................................................. *passim*

**Regulations**

29 C.F.R. § 2590.702 ........................................................................................... *passim*

*Incentives for Nondiscriminatory Wellness Programs in Group Health Plans*, 78
    Fed. Reg. 33158 (June 3, 2013) .............................................................. 3, 4, 15, 19

## INTRODUCTION

To participate in its group healthcare Plan, Defendant Compass Group USA, Inc. charged Plaintiffs Richard Mehlberg and Angela Deibel premium surcharges of $1,248 per year due to their tobacco use. ERISA, however, prohibits a group health plan from charging a premium differential based on any health-status related factor, like high cholesterol, high blood pressure, or, as relevant here, tobacco use. For its premium surcharge to be legal, Compass then must rely on a narrow regulatory safe harbor: it must offer to remove the surcharge "in return for adherence to programs of health promotion and disease prevention," otherwise known as a "wellness" program. But to ensure that such programs are not mere "subterfuge" for prohibited discrimination, the requirements to qualify for such a "wellness" program—set out by statute and reinforced in the Department of Labor's regulations—require strict compliance. Plaintiffs allege that because Compass's tobacco cessation program did not comply with these requirements, its tobacco surcharge constituted prohibited discrimination based on a health status factor. Plaintiffs also allege that Compass breached its fiduciary duties to them by misappropriating the improperly collected surcharge for its own benefit, rather than that of the Plan, and seek disgorgement of these ill-gotten profits.

Compass now moves to dismiss every count of the Plaintiffs' Complaint, arguing that Plaintiffs lack Article III standing and that none of their claims are adequately pled. But this Court considered and rejected many of the same arguments in an earlier case alleging a prohibited tobacco surcharge, *Lipari-Williams v. Missouri Gaming Company*, 339 F.R.D. 515, 523-25 (W.D. Mo. 2021). In that case, this Court rejected similar standing arguments to the ones Compass now raises, as well as the claim that the regulations require only prospective, not retroactive, reimbursement of the full annual tobacco surcharge. Although Compass acknowledges this Court's order in *Lipari-Williams*, it argues that the Supreme Court's subsequent decision in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), which overruled *Chevron* deference to agency interpretation of ambiguous statutes,

1

should alter this Court's prior findings on the same issues. But, this Court previously found the statute unambiguous. *Lipari-Williams,* 339 F.R.D. at 524. And, in any event, if Compass cannot rely on the regulatory safe harbor of a lawful outcome-based wellness plan because of *Loper-Bright*, the company's tobacco surcharge is prohibited in its entirety. Compass's motion should be denied.

## BACKGROUND

### I.     Statutory and Regulatory Background

In 1996 and then 2010, the Health Insurance Portability and Accountability Act ("HIPAA") and then the Patient Care and Affordable Care Act ("ACA"), respectively, amended the Employee Retirement Income Security Act of 1974 ("ERISA"). 29 U.S.C. § 1182(b)(1).[1] As a result, ERISA prohibits a group health plan from discriminating against any participating employee in providing coverage or charging premiums or contributions based on a "health-status related factor," including tobacco use. As relevant here, it provides that a group healthcare plan "may not require any individual (as a condition of enrollment or continued enrollment under the plan) to pay a premium or contribution which is greater than such premium or contribution for a similarly situated individual enrolled in the plan on the basis of any health status-related factor." 29 U.S.C. § 1182(b)(1); 42 U.S.C. § 300gg04(b)(1).

The statute then creates a narrow exception to this health-status anti-discrimination rule, providing that it should not be construed to "prevent a group health plan . . . from establishing premium discounts or rebates or modifying otherwise applicable copayments or deductibles in return for adherence to programs of health promotion and disease prevention." 29 U.S.C. § 1182(b)(2)(B);

---

[1] The ACA amendment incorporated certain provisions of the Public Health Service Act ("PHSA"), 42 U.S.C. 300gg *et. seq.*, into ERISA. 29 U.S.C. § 1185(d)(a)(1) ("[T]he provisions of part A of title XXVII of the Public Health Service Act [42 U.S.C. 300gg et seq.] (as amended by the Patient Protection and Affordable Care Act) shall apply to group health plans . . . as if included in this subpart.").

2

42 U.S.C. § 300gg-4(b)(2). The requirements to qualify as a "program of health promotion and disease prevention," also referred to as a "wellness program," are set out in the provisions of the PHSA that ERISA incorporates. 42 U.S.C. § 300gg-4(j)(1); *id*. § 300gg-4(j)(3).

One such requirement is that "[t]he wellness program be reasonably designed to promote health or prevent disease." 42 U.S.C. § 300gg-4(j)(1)(A). To ensure that the program "is not a subterfuge for discriminating based on a health status factor," the plan must give eligible individuals "the opportunity to qualify for the reward under the program at least once each year." *Id*. § 300gg-4(j)(3)(B), (C). The "reward may be in the form of a discount or rebate of a premium or contribution, a waiver of all or part of a cost-sharing mechanism (such as deductibles, copayments, or coinsurance, the absence of a surcharge, or the value of the benefit that would otherwise not be provided under the plan." *Id*. § 300gg-4(j)(3)(A). The "full reward" under the wellness program "shall be made available to all similarly situated individuals" who comply with its requirements. *Id*. § 300gg-4(j)(3)(B)(C).

The Department of Labor ("DOL") promulgated regulations pursuant to these provisions of ERISA. *See* 29 U.S.C. § 1191c (authorizing the agency to "promulgate such regulations as may be necessary or appropriate to carry out the provisions of this part."). In doing so, the DOL explained the requirements to qualify as a compliant "wellness program." 29 C.F.R. § 2590.702(f); *see also Incentives for Nondiscriminatory Wellness Programs in Group Health Plans*, 78 Fed. Reg. 33160 (June 3, 2013) ("[T]hese final regulations set forth criteria for a program of health promotion or disease prevention offered or provided by a group health plan . . . that must be satisfied in order for the plan or issuer to qualify for an exception to the prohibition on discrimination based on health status."). First, the regulations identify several types of "wellness" programs; there is no dispute here that Compass's tobacco surcharge program is an "outcome-based" wellness program, as it requires an individual to attain a specific health outcome. *See* Doc. No. 34, at 13 (describing Compass's Plan

as having "an outcome-based standard"); *see also* 29 C.F.R. § 2590.702(f)(1)(v). To qualify as an outcome-based wellness program, a program must meet "all" of several requirements. 29 C.F.R. § 2590.702(f)(4).

First, to ensure that the program "is reasonably designed to improve health and does not act as a subterfuge for underwriting or reducing benefits based on a health factor, a reasonable alternative standard to qualify for the reward must be provided to any individual who does not meet the initial standard. *Id*. § 2590.702(f)(4)(iii). A "reasonable alternative standard" is one that offers "the full reward" to those who meet its requirements. *Id*. § 2590.702(f)(4)(iv). In turn, the regulations define a "reward" as "both obtaining a reward (such as a discount or rebate of a premium or contribution, a waiver of all or part of a cost-sharing mechanism, an additional benefit, or any financial or other incentive) and avoiding a penalty (such as the absence of a premium surcharge or other financial or nonfinancial disincentive)." *Id*. § 2590.702 (f)(1)(i).

The regulations, and the statute, also impose a strict notice requirement of the availability of the "reasonable alternative standard"—here, the tobacco cessation program—requiring that:

> "[t]he plan or issuer must disclose in all plan materials describing the terms of an outcome-based wellness program, and in any disclosure that an individual did not satisfy an initial outcome-based standard, the availability of a reasonable alternative standard to qualify for the reward . . . including contact information for obtaining a reasonable alternative standard and a statement that recommendations of an individual's personal physician will be accommodated."

*Id*. § (f)(4)(v); 42 U.S.C. § 300gg-4(j)(3)(E). Only if these specific requirements are met may a group healthcare plan impose any cost differential based on a health-status factor. Compliance with these requirements can provide an affirmative defense to a claim that a group health insurance plan discriminated based on a health-status related factor. *See Incentives for Nondiscriminatory Wellness Programs in Group Health Plans*, 78 Fed. Reg. 33158 at 33160 (June 3, 2013) (emphasis added)

(explaining that the regulations "set forth criteria for an affirmative defense that can be used by plans and issuers in response to a claim that the plan or issuer discriminated under the HIPAA nondiscrimination provisions.").

## II. Plaintiffs' Allegations and the Procedural History of the Litigation

Plaintiffs Richard Mehlberg and Angela Deibel were both full-time employees of subsidiaries of Compass Group USA, Inc., a foodservice company, who participated in its group healthcare plan, the Employee Benefit Plan (the "Plan"). Doc. No. 1 ("Compl."), ¶¶ 1-2, 8-10. The Plan requires participants to declare whether they are a tobacco user; if they do so, they are required to pay an additional premium fee of at least $48 per bi-weekly pay period—or $1,248 annually—to maintain healthcare coverage. *Id.* ¶ 3. Plaintiffs each declared themselves tobacco users and paid the tobacco surcharge. *Id.* ¶¶ 8-10.

In their Complaint, Plaintiffs allege that Compass's tobacco surcharge was prohibited by ERISA and its governing regulations. Specifically, they allege that a premium surcharge based on tobacco use is a facial violation of ERISA, *id.* ¶¶ 17-18, and that Compass's surcharge did not meet the statutory and regulatory requirements for safe harbor in a "wellness program." *Id.* ¶¶ 23-42. Plaintiffs thus asserted three claims against Compass, on their own behalf and that of a class of similarly situated plan participants who had paid the tobacco surcharge. *Id.* ¶¶ 43-51.

Counts I and II allege that Compass's tobacco surcharge was not lawful because it did not qualify as a valid wellness program and therefore gave rise to claims under ERISA's private right of action for violations of the statute, 29 U.S.C. § 1132(a)(3). Specifically, the first count alleges that Compass failed to provide a "reasonable alternative standard" to the initial requirement of being a non-smoker, because it (1) required a tobacco user to be tobacco free for 12 months after completing the cessation program; and (2) did not offer the "full reward" to those who completed a tobacco cessation program, as it removed the surcharge only prospectively, and not retroactively. *Id.* ¶¶ 52-

5

58. The second count alleges that the tobacco surcharge was unlawful because the company did not make the requisite disclosures in its Plan documents, including by failing to disclose the availability of a reasonable alternative standard (such as a smoking cessation program), failing to disclose that participants could avoid the full surcharge for the plan year by participating in such a program, and by failing to include a statement that physician recommendations would be accommodated. *Id*. ¶¶ 59-65. Finally, the third count alleges a breach of fiduciary duty primarily based on Compass's misappropriation of the improperly collected tobacco surcharge for its own benefit, to reduce its own contributions, rather than for the benefit of the Plan. *Id*. ¶¶ 66-74.

As its first response to Plaintiffs' Complaint, Compass moved for a permissive venue transfer to the location of its headquarters in North Carolina. Doc. No. 12. This Court denied the motion on January 27, 2025, Doc. No. 22, and Compass filed the present Motion to Dismiss the Plaintiffs' claims on March 6, 2025. Doc. No. 34 ("Br.").

## ARGUMENT

Compass moves to dismiss all three counts of Plaintiffs' Complaint, arguing that Plaintiffs do not have standing to pursue these claims and that they are not well-pled. To the contrary, all of Plaintiffs' claims should proceed.

### III. Plaintiffs Have Article III Standing to Pursue their Claims.

Standing in this case is straightforward: Compass charged a fee it was not permitted to charge under ERISA. Plaintiffs paid that fee. ERISA provides Plaintiffs remedies. The Court should thus uphold their standing to sue and deny Compass' motion.

#### A. The Collection of an Unlawful Surcharge is a Monetary Harm Giving Rise to Standing

Compass leads off its standing argument by asserting that Plaintiffs do not have standing to raise their claims because they did not attempt to participate in Compass's tobacco cessation program.

Br. at 17. As an initial matter, it misconstrues Plaintiffs' claims. They do not "recognize" that tobacco surcharges "are generally permissible," Br. at 10; to the contrary, they specifically allege that tobacco surcharges are *prima facie* unlawful under 29 U.S.C. § 1182, and that because Compass did not offer retroactive reimbursements, it had no safe harbor under § 1182(b).[2] Thus, whether the Plaintiffs participated in a smoking cessation program is irrelevant; what matters is whether Plaintiffs allege that they paid a tobacco surcharge that ERISA did not permit. They did, with the surcharge fees deducted from their pay. Compl. ¶¶ 9-10. Nonetheless, Compass argues that Plaintiffs did not suffer any injury; that any harm they allege was not "traceable" to its Plan design; and that they thus do not have standing to bring their claims. Br. at 18. Neither of these claims is correct.

### 1. Plaintiffs' Claim that They Paid an Illegal Surcharge Alleges a Concrete Injury-in-Fact.

Compass acknowledges that the injury that Plaintiffs allege is that they paid an impermissible tobacco surcharge. Br. at 18. This type of pocketbook injury is "a quintessential injury-in-fact." *Maya v. Centex Corp.*, 658 F.3d 1060, 1069 (9th Cir. 2011). As the Supreme Court recently confirmed, monetary harms are among "most obvious [] traditional tangible harms", and thus "[i]f a defendant has caused physical or monetary injury to the plaintiff, the plaintiff has suffered a concrete injury in fact under Article III." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021); *see also Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 464 (2017) ("[f]or standing purposes, a loss of even a small amount of money is ordinarily an 'injury.'"). Here, Plaintiffs have alleged that Compass unlawfully

---

[2] Compass may urge a contrary construction of the statute. But, for the purposes of assessing standing, that does not matter. Plaintiffs' interpretation controls for purposes of assessing standing. *See Am. Farm Bureau Fed'n v. U.S. Env't Prot. Agency*, 836 F.3d 963, 968 (8th Cir. 2016) ("[i]n assessing a plaintiff's Article III standing, we must assume that on the merits the plaintiffs would be successful in their claims."); *Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1093 (10th Cir. 2006) ("a plaintiff's non-frivolous contention regarding the meaning of a statute must be taken as correct for purposes of standing,").

took more than $1,200 per year from them and other workers—no small imposition by any means. This loss plainly secures standing to sue in federal court.

In fact, this ground has already been trod in recent years, both by this Court and by the Eighth Circuit. In *Lipari-Williams*, the defendant argued, like here, that there was no standing because "no Plaintiff or putative class member has completed a tobacco cessation program or alternative standard and had their tobacco premium eliminated prospectively, but not retroactively." 339 F.R.D. 515, 524. The Court rejected that argument, finding that the plaintiffs had standing to sue because they "alleged that Defendant caused them monetary loss by imposing a fee that was unlawful." *Id.* In so doing, the Court relied on the Eighth Circuit's holding in *McKeage v. Bass Pro Outdoor World, LLC*, wherein that court found that, because "[t]he class members have a statutory right not to be charged" a certain document preparation fee, they had Article III standing, as *"[p]aying a fee they should not have been charged was [] a concrete injury, not an abstract one that does not actually exist."* 943 F.3d 1148, 1150 (8th Cir. 2019). Whether or not the underlying facts that rendered the fee illegal were material to the plaintiff's purchasing decision, or whether they prejudiced the plaintiff in any tangible way, was beside the point. *Id.*

Those holdings are conclusive of the standing question here. Nonetheless, Compass argues that the Court should revisit its reasoning in *Lipari-Williams* because it did not "have the benefit" of the Supreme Court's *TransUnion* holding, and thus that opinion "was not analyzed therein." Br. at 8, 16 n.21. But not only did *Lipari-Williams* postdate *TransUnion* by several months, the defendant there cited the opinion extensively in its briefing papers, to which the plaintiffs responded in kind. *Lipari-Williams v. Missouri Gaming Company, LLC*, No. 5:20-CV-06067, Doc. No. 101 at 23-24; Doc. No. 107 at 17-20. As the plaintiffs there noted in their briefing, *TransUnion* involved plaintiffs

attempting to recover a *statutory penalty* for violations of the Fair Credit Reporting Act, not a return of their money wrongfully taken, leaving it far afield from the facts at hand.

None of the company's arguments contravene this well-established precedent. First, the company anchors its argument to a handful of cases that collectively stand for the proposition that parties could not have been injured by policies that do not directly affect them. Br. at 17 (*citing Sabri v. Whittier Alliance*, 122 F. Supp. 3d 829, 837 (D. Minn. 2015) (no standing to challenge election bylaws without attempting to enter the race); *Frost v. Sioux City*, 920 F.3d 1158, 1161 (8th Cir. 2019) (no standing to challenge pit bull ban without owning one); *Buetow v. A.L.S. Enters., Inc.*, 564 F. Supp. 2d 1038, 1044 (D. Minn. 2008) (no standing to challenge retailer representations regarding products never purchased); and *Dorman v. Charles Schwab Corp.*, 2018 WL 6803738, at *5 (N.D. Cal. Sept. 20, 2018) (no standing to challenge investment program in which plaintiff was not enrolled)). All this is unremarkable, so far as it goes. But here, Plaintiffs *were* personally affected by the tobacco surcharge whose lawfulness they challenge. They paid the surcharge from their own funds, *see* Compl. ¶¶ 9-10, and were thus "forced to pay money [they] otherwise would have kept for [themselves]." *Danvers Motor Co. v. Ford Motor Co.*, 432 F.3d 286, 293 (3d Cir. 2005). That gives rise to standing, *see id.*, leaving Compass' cases inapposite.[3]

### 2. The Illegal Fee is Directly Traceable to Compass's Conduct.

Compass further contends that it did not cause Plaintiffs' injury, because "Plaintiffs do not allege that they would have enrolled in the [smoking cessation] program had Compass retroactively rebated the surcharges." Br. at 18. Thus, it asserts that "Plaintiffs' payment of the tobacco surcharge is traceable to their own inaction," rather than to its own action in collecting it. *Id.* Compass frames

---

[3] Indeed, the Sixth Circuit found Article III standing for claims under 29 U.S.C. § 1182 based on nothing more than allegations of economic harm from "higher copayments, coinsurance amounts, and/or deductibles." *DaVita, Inc. v. Marietta Mem'l Hosp. Employee Health Benefit Plan*, 978 F.3d 326, 341 n.8 (6th Cir. 2020); *rev'd on other grounds*, 596 U.S. 880 (2022).

9

the issue incorrectly. Plaintiffs' injuries are *directly* traceable to Compass's taking their money under a program that did not comply with ERISA's requirements. Again, this Court already determined this issue in *Lipari-Williams*, finding that the plaintiffs in that case had standing to sue because they "alleged that Defendant *caused* them monetary loss by imposing a fee that was unlawful." 339 F.R.D. at 524 (emphasis added). In other words, the allegation is that the tobacco surcharge is illegal because the cessation program does not comply with the requirements to satisfy Compass's affirmative defense. That is true regardless of whether Plaintiffs participated in the cessation program. *See Kuehl v. Sellner*, 887 F.3d 845, 850-851 (8th Cir. 2018) (rejecting defendant's argument that plaintiffs' "manufacture[d] standing by inflicting harm upon themselves" as "mischaracterize[ing] plaintiffs' injury, which instead stems from [defendant's violation]").

What Compass seems to be angling for is a requirement that the specific fact or conduct making a defendant's policy illegal—rather than the policy as a whole—directly impacts the plaintiff. Courts have rejected that contention. For instance, the Second Circuit recently held that plaintiffs had standing to recover premiums paid on an insurance policy that they claimed was illegal under state law and "therefore void *ab initio* or, in the alternative, voidable", despite the fact that they had not alleged that their coverage was affected by this illegality, or that the illegality itself had any material effect on them in some other way, as "they have articulated a concrete, economic injury: payment of premiums on a void or voidable insurance policy." *Dubuisson v. Stonebridge Life Ins. Co.*, 887 F.3d 567, 574 (2d Cir. 2018). Similarly, the Eleventh Circuit held that plaintiffs have standing to recover for the purchase of dietary supplements, despite making "no allegation that the supplements failed to perform as advertised, that the supplements caused any adverse health effects, or that the plaintiffs paid a premium for the supplements", simply because they were banned under the Food, Drug, and Cosmetic Act. *Debernardis v. IQ Formulations, LLC*, 942 F.3d 1076, 1083-85 (11th Cir. 2019); *see*

*also Franz v. Beiersdorf, Inc.*, 745 F. App'x 47, 49 (9th Cir. 2018) (same, as to lotion that the defendant legally "should not have sold.").

### B. Plaintiffs Have Standing for Their Notice Claim Premised on Inadequate Disclosures.

The same analysis applies to Plaintiffs' deficient notice allegations. Plan sponsors "must disclose in all plan materials describing the terms of an outcome-based wellness program . . . the availability of a reasonable alternative standard to qualify for the reward", as well as a "statement that recommendations of an individual's personal physician will be accommodated." 29 C.F.R. § 2590.702(f)(4)(v). Without those disclosures—including that the "full reward" will be available to those who satisfy the program—there is no "reasonable alternative standard", and hence no affirmative defense to a discriminatory premium charge. *Id.*

Compass, again relying on *TransUnion*, argues that there were no "downstream consequences" suffered from the deficient disclosures, because Plaintiffs have not alleged "that they did not participate in the cessation program because of the alleged defects", or that a compliant notice "would have changed their behavior." Br., at 18. But again, *TransUnion* does not answer the question, as it was not a case in which the plaintiffs suffered any pocketbook harm in conjunction with the alleged violations of law. 594 U.S. at 426-29. Indeed, the *TransUnion* Plaintiffs did not even claim "that they failed to receive any required information", but "only that they received it in the *wrong format*," and sought statutory damages as a result. *Id*. at 441 (emphasis in original).

The facts alleged here are markedly different. The "downstream consequence" of the deficient notices is not a "bare procedural violation" necessary to obtain a statutory penalty as in *TransUnion*, *id.* at 440-42, but the voiding of an affirmative defense to prohibited healthcare discrimination. Without that defense, the surcharge is unlawful.

11

Other courts have agreed with this view, finding that a legally deficient notice confers standing when coupled with an actual monetary loss. For instance, in *Johnson v. Pluralsight, LLC*, the Ninth Circuit considered whether a subscription service company's failure to provide certain disclosures required under California's Automatic Renewal Law gave rise to standing. 728 F. App'x 674, 676 (9th Cir. 2018). It held that it did, irrespective of whether the plaintiff would have relied on the disclosure, because failure to follow the state law meant that the company "was not entitled to charge customers [] for the service." *Id.*; *see also Sanderson v. Whoop, Inc.*, 2025 WL 744036, at *11 (N.D. Cal. Mar. 7, 2025) (similarly finding that a plaintiff had standing when "charged for auto-renewal of a membership without being provided ARL-required disclosures" in post-*TransUnion* case).

The same analysis applies to the concept of a tip credit under the Fair Labor Standards Act, which allows employers to pay less than $7.25 per hour to tipped employees when certain requirements are met, including providing notice of the tip credit. *See* 29 U.S.C. 203(m). The failure to provide the notice renders the employer's decision to pay the tip credit rate unlawful and the monetary harm is the difference between the tip credit rate paid and the minimum wage rate owed. *See Reynolds v. Turning Point Holding Co., LLC*, 2020 WL 7336932, at *4-5 (E.D. Pa. Dec. 14, 2020) ("[i]f [the employer] did not provide [plaintiff] with the notice that the FLSA required, then [it] had to pay her more than it did. That financial injury creates standing."); *Elmer v. Kohli*, 2025 WL 99595, at *5 (D.N.J. Jan. 14, 2025) (same).[4]

---

[4] And as a general matter, courts have long held that when a law obligates a party to provide certain disclosures, a person denied the required information has standing to sue. *See Fed. Election Comm'n v. Akins*, 524 U.S. 11, 21 (1998) (citing *Pub. Citizen v. U.S. Dep't of Just.*, 491 U.S. 440, 449 (1989) ("a plaintiff suffers an 'injury in fact' when the plaintiff fails to obtain information which must be publicly disclosed pursuant to a statute"); *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 374 (1982) (finding standing to enforce "statutorily created right to truthful housing information"); *see also* An Act to Regulate the Collection of the Duties Imposed by Law on the Tonnage of Ships or Vessels, and on Goods, Wares and Merchandises Imported into the United States, ch. 5, 1 Stat. 29 (1789) (law authorizing "informer[s]" to sue for forfeiture of one hundred dollars against any customs officer who

## C. Plaintiffs Did Not Lose Standing by Ceasing Payment of the Surcharge in 2024.

Finally, Compass closes out its discussion on standing with a thinly reasoned section arguing that Plaintiffs lack standing to "assert their claims after April 6, 2024", because "neither Plaintiff participated in the Plan" after that point. Br. at 15, 19. As an initial matter, this argument is improper because it relies on matters outside the pleadings—a declaration and accompanying employment records—to establish that Plaintiffs are no longer paying the surcharge. *Id.* at 19. Compass has launched a "facial attack" on Plaintiffs' standing, *see id.* at 16, and is thus "restrict[ed]to the face of the pleadings." *Huizenga v. Indep. Sch. Dist. No. 11*, 44 F.4th 806, 811 (8th Cir. 2022); *see also Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016) ("[i]n a facial attack, . . . the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)."). Compass's argument on this point should thus be disregarded.

In any event, the timing of Plan participation seems aimed at the question of whether Plaintiffs may represent other employees who participated at different times—which is a class certification issue, at best—and not at standing.[5] Indeed, even if Plaintiffs are no longer enrolled in the plan and paying the surcharge, they undoubtedly were doing so within the limitations period. Why they would not have standing to recoup those funds, simply because they are no longer incurring further injury,

---

failed to "constantly [keep] in some public and conspicuous place of his office, a fair table of the rates of fees, and duties demandable by law."). The Supreme Court's decision in *TransUnion* simply created a narrow exception against this general backdrop.

[5] *See Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 593 (8th Cir. 2009) ("[the standing-related provisions of ERISA were not intended to limit a claimant's right to proceed under Rule 23 on behalf of all individuals affected by the [fiduciary's] challenged conduct, regardless of the representative's lack of participation in all the ERISA-governed plans involved."); *see also T & M Meat Fair, Inc. v. United Food & Commercial Workers, Local 174, AFL-CIO*, 210 F. Supp. 2d 443, 449 (S.D.N.Y. 2002) (finding statutory standing even though "the named plaintiffs are no longer participants or beneficiaries", because the "unnamed plaintiffs who are represented by the named plaintiffs continue to receive coverage under the Plans").

goes unexplained. Compass does suggest that Plaintiffs lack "statutory standing" because they are no longer "participants" within the meaning of ERISA once they "ceased participating in the Plan." Br. at 19. But even on its own terms, this argument fails. ERISA defines a "participant" to include "any employee *or former employee* of an employer . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan . . ." 29 U.S.C. § 1002(7) (emphasis added). Plaintiffs are thus authorized to sue, regardless of their current enrollment status.[6]

Moreover, courts have long held that former participants may have standing to represent the plan in a derivative action under ERISA § 502(a)(2). *See Amalgamated Clothing & Textile Workers Union, AFL-CIO v. Murdock*, 861 F.2d 1406, 1418 (9th Cir. 1988); *Calobrace v. Am. Nat. Can Co.*, 1995 WL 557443, at *3 (N.D. Ill. Sept. 19, 1995) (finding that former participants could claim "equitably vested benefits sufficient under ERISA for purposes of standing."). Compass' arguments on this point are thus without merit.

## IV. Plaintiffs' Claims Are Well-Pled

Compass next argues for dismissal of each of Plaintiffs' three claims under the Complaint. None of its arguments is availing.

### A. Legal Standard.

Rule 8(a) requires a pleading to set out "a short and plain statement of the claim showing that the pleader is entitled to relief." To withstand a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient allegations of fact, that when taken as true, "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). All factual allegations must

---

[6] Further, they are seeking a "benefit" within the meaning of ERISA, that being the recoupment of premium overcharges. *See Everson v. Blue Cross & Blue Shield of Ohio*, 898 F. Supp. 532, 541 (N.D. Ohio 1994) ("benefits may be in the form of reduced premiums"); *see also Heffner v. Blue Cross & Blue Shield of Alabama, Inc.*, 443 F.3d 1330, 1338 (11th Cir. 2006).

be liberally construed in the light most favorable to the plaintiff. *Eckert v. Titan Tire Corp.*, 514 F.3d 801, 806 (8th Cir. 2008).

## B.     A Qualifying Wellness Program Requires Retroactive Reimbursement.

Compass argues that Count I of Plaintiffs' Complaint should be dismissed because ERISA requires only prospective, and not retroactive, reimbursement of surcharges. Br. at 20-27. This argument fails for multiple reasons. The first is that this Court has already opined on this question. In *Lipari-Williams*, this Court considered an ERISA tobacco surcharge program that explicitly stated that there would be "no retroactive adjustments to the tobacco user surcharge." 339 F.R.D. at 523. The plaintiff in that case alleged that the plan's refusal to retroactively refund the tobacco surcharge after completion of a tobacco cessation program did not comply with the DOL regulations governing wellness plans. Considering the nature of that claim in connection with the plaintiffs' motion for class certification, this Court noted that "for an 'alternative standard' to be deemed reasonable, '[t]he *full reward* under the outcome-based wellness program *must be available* to all similarly situated individuals.'" *Id*. at 522 (citing 29 C.F.R. § 2590.702(f)(4)(iv) (emphasis in original). The Court then explained that:

> "[t]he 'full reward' requires retroactively reimbursing a participant that completes the alternative standard. In particular, 'if a calendar year plan offers a health-contingent wellness program with a premium discount and an individual who qualifies for a reasonable alternative standard satisfies that alternative on April 1, the plan or issuer must provide the premium discounts for January, February, and March to that individual." *Id*. (citing 78 Fed. Reg. 33158, at 33163).

The same finding is warranted here. Under this Court's precedent, Plaintiffs' claim that Compass's tobacco surcharge violated ERISA because it did not offer retroactive reimbursement of the surcharge is well-pled.[7]

### 1. The Statue's Plain Language Prohibits a Premium Surcharge.

Nonetheless, Compass argues that subsequent legal developments should alter this Court's reading of ERISA. Specifically, in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), the Supreme Court found that courts should not defer to an agency's interpretation of an ambiguous statute, overruling *Chevron, U.S.A. Inc., v. Natural Resources Defense Counsel*, 467 U.S. 837 (1984). Compass argues that after *Loper Bright*, interpreting "full reward" to require retroactive reimbursement of the surcharge is not the "best reading" of the statute. Br. at 21. But far from supporting its constrained interpretation of the phrase "full reward," the plain language of the statute prohibits Compass's tobacco surcharge in its entirety, as a matter of law.

Indeed, this Court reached that conclusion even prior to *Loper Bright*, finding that the statute's language was plain. In *Lipari-Williams*, the defendant argued that the plaintiff's claims relied on regulations that were inconsistent with the plain language of § 1182(b) of ERISA, which permits "premium discounts or rebates ... in return for adherence to programs of health promotion and disease prevention." 29 U.S.C. § 1182(b)(2)(B). Interpreting the language of the statute, this Court found:

> The plain language of § 1182(b)(2) allows "premium *discounts or rebates*[.]" 29 U.S.C. § 1182(b)(2) (emphasis supplied). However, the tobacco surcharge at issue does not appear to be a discount or a rebate. The Court agrees with Plaintiffs that "[i]n their ordinary usage, both 'discount' and 'rebate' refer to a *reduction* in cost, whereas [Defendant's] tobacco surcharge imposes an *increase* in cost on tobacco users above the baseline price." (Doc. #107, p. 11) (citing Merriam-Webster Dictionary) (emphasis in original). For purposes of the class certification analysis, the Court finds that the tobacco surcharge is not

---

[7] While the Court's decision in *Lipari-Williams* was in the context of a class certification decision and thus was not required to reflect a full consideration of the merits, as explained below, Compass offers no compelling grounds for its well-reasoned findings to be disturbed.

a "discount" or "rebate," and thus does not fall under § 1182(b)(2)'s exception.

*Id*. at 524. And as Compass admits, under *Loper Bright*, "the Court's interpretation of the statute controls." Br. at 21.[8] Because it does not qualify for § 1182(b)(2)'s safe harbor, Compass's tobacco surcharge constitutes prohibited discrimination based on a "health-status related factor," 29 U.S.C. § 1182(b)(2), and is prohibited in its entirety. Plaintiffs are entitled to restitution of the entire amount of the surcharge.

Compass also points to ERISA's incorporation of § 2705 of the Public Health Services Act, which took place in 2010—well before this Court's decision in *Lipari-Williams*—as a factor that should alter this Court's prior finding. *See* Br. at 20, n.23; Br. at 24, n.27. But the PHSA's provisions are consistent with those of § 1182(b)(2) of ERISA. The PHSA provides that a "reward" for a wellness program "may be in the form of a discount or rebate of a premium or contribution, a waiver of all or part of a cost-sharing mechanism (such as deductibles, copayments, or coinsurance), the absence of a surcharge, or the value of a benefit that would otherwise not be provided under the plan." 42 U.S.C. § 300(gg)-4(j)(3)(A). While Compass attempts to make hay out of the explicit reference to "surcharge" in section (j)(3), *see* Br. at 12-13, the word "surcharge" does not apply to premiums or contributions; just as in § 1182 of ERISA, the only words that modify "premium or contributions" are "discount or rebate."

---

[8] Indeed, even when it was good law, *Chevron* deference was only applicable if the statutory language was ambiguous; in *Lipari-Williams*, this Court found that the language of the statue is "plain." 339 F.R.D. at 523. Thus, the court did not rely on *Chevron* in interpreting the statute, instead referencing it only as a hypothetical alternative to its primary conclusion. *See id*. (finding that "*[e]ven if* 'discount' or 'rebate' could be construed as ambiguous," the regulation and the statute were not inconsistent.). *Id*. (emphasis added). As this Court did not reach its conclusion in *Lipari-Williams* under *Chevron* deference, it follows that the overruling of that doctrine in *Loper-Bright* has no relevance to this Court's finding as to the statute's meaning.

Thus, while a surcharge could be permissible to other types of charges under a group health plan—of which there are many, such as deductibles, copayments, coinsurance, and out-of-pocket maximums—an increase to premium charges is not. This is consistent with § 1182(b)(2) of ERISA, which allows a group health plan to "*modify*[] otherwise applicable copayments or deductibles in return for adherence to programs of health promotion and disease prevention." (emphasis added). And the only source that does permit a premium surcharge is the implementing DOL regulations. *See* 29 C.F.R. § 2590.702(f)(1)(i) (defining "reward" as, among other things, "avoiding a penalty (such as the absence of a premium surcharge or other financial or nonfinancial disincentive).").

In sum, if the plain statutory language of ERISA reigns—and the DOL's interpretation of the statute as set forth in its regulations is afforded no deference—then Compass's imposition of a premium surcharge due to tobacco use is prohibited as a matter of law, and the regulations provide no safe harbor. *See* Compl. ¶¶ 17-18. Far from constraining the scope of Compass Group's liability, *Loper Bright* expands it.

### 2. Even if Compass's Tobacco Surcharge Program does not Violate ERISA's Plain Terms, the "Full Reward" Applies Retroactively.

But even putting to the side that ERISA does not permit a premium surcharge, Compass's argument that it may only be removed prospectively, and not retroactively, is without basis.[9] As explained above, this Court has already opined on the meaning of the phrase "full reward," noting in *Lipari-Williams* that it requires "retroactively reimbursing a participant that completes the alternative standard." 339 F.R.D. at 522–23. Nonetheless, Compass insists that *Loper Bright* alters this analysis,

---

[9] The phrase "full reward" appears in two places. First, it appears in the DOL regulations providing that for an "alternative standard" to be deemed reasonable, "the full reward under the outcome-based wellness program must be available to all similarly situated individuals." 29 C.F.R. § 2590.702(f)(4)(iv). It also appears in the PHSA, incorporated into ERISA, providing that "the full reward under the wellness program shall be made available to all similarly situated individuals." 42 U.S.C. §§ 300gg-4(j)(3)(D).

arguing that interpreting "full reward" to require retroactive reimbursement would contradict the statute's use of the term "adherence." Br. at 22-23. This argument fails for several reasons.

First, as a threshold matter, Compass argues that the "sole" basis for Plaintiffs' claim that the phrase "full reward" requires retroactive reimbursement is "the preamble to the 2013 regulations." Br. at 21. But that is not the sole basis: it is also that the word "reward" is qualified by the word "full," in both the DOL regulation and the statutory text of § 2705 of the PHSA. Indeed, the 2006 version of the DOL regulation required only a "reward" for completion of a wellness program; in the 2013 version of the regulation, the word "reward" was replaced with the phrase "full reward." *Compare* 29 C.F.R. § 2590.702(f)(2)(iv) (Dec. 13, 2006) *with* 29 C.F.R. § 2590.702(f)(3)(iv), (f)(4)(iv). Considering this change to the regulatory language, another court found that even before the word "full" qualified it, "[t]he 'reward' that non-smoking Plan participants receive is the right not to pay the Tobacco Surcharge for the entire year." *Secretary of Labor v. Macy's, Inc.*, 2021 WL 5359769, at *15 (S.D. Ohio Nov. 17, 2021).[10] And once the word "full" had been added to qualify "reward," the court noted that there was no dispute between the parties that the regulation "would require[] a refund of the entire annual amount for anyone who completes the reasonable alternative standard at any point during the year." *Id.* at *15.[11]

In other words, the addition of the word "full" removed any doubt that the "reward" was intended to apply retroactively. The preamble to the 2013 version of the regulation makes this clear,

---

[10] The defendant in *Macy's* moved for reconsideration of this decision after *Loper Bright*. A ruling on that motion is still pending.

[11] Indeed, the defendant employer in that case argued that prior to the addition of the word "full" to the regulations, it was not obligated to refund surcharges retroactively. *Id.* at *15. But the defendant did not contest that once the regulation was amended to add the word "full," retroactive refunds were required. *Id.*

explaining that "[i]f a calendar year plan offers a health-contingent wellness program with a premium discount and an individual who qualifies for a reasonable alternative standard satisfies that alternative on April 1, the plan or issuer must provide the premium discounts for January, February, and March to that individual." 78 Fed. Reg. at 33163.[12]

Compass urges the Court to pay no mind to this guidance, on the ground that regulatory preambles are not "legislative rules" with the independent force of law. Br. at 22 (citing *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 97 (2015)). But the preamble reflects the agency's interpretation of its own regulations. Per well-settled law, a court must accept an agency's interpretation of its own regulations as "controlling unless plainly erroneous or inconsistent with the regulation." *Auer v. Robbins*, 519 U.S. 452, 461 (1997) (cleaned up). Agency guidance afforded this sort of deference may come from "a variety of means, including . . . *preambles*, interpretive statements, and responses to comments," *see Hillsborough Cnty., Fla. v. Automated Med. Lab'ys, Inc.*, 471 U.S. 707, 718 (1985) (emphasis added)—not only notice-and-comment rulemaking. And while *Loper Bright* overturned the *Chevron* doctrine—deference to agencies' interpretations of ambiguous *statutes*—deference to agencies' view of their own ambiguous *regulations* still retains its vitality. *See Kisor v. Wilkie*, 588 U.S. 558, 588-89 (2019) (sustaining *Auer* deference from attack).

Compass nonetheless seeks a hook to argue that the recently decided *Loper Bright* requires this Court to revisit its reading of the phrase "full reward," insisting that interpreting it to require retroactive reimbursement would conflict with the statute's requirement of "adherence" to a wellness

---

[12] Compass argues that this example is inapplicable because it only refers to a "premium discount" and not "the avoidance of a penalty such as a tobacco surcharge." Br. at 23. But that is precisely Plaintiffs' point: the statute only permits a premium discount, and not a penalty. Following that reasoning to its conclusion, the statute does not permit the tobacco surcharge that Compass Group has imposed. *See supra* Section II(B)(1).

program. Br. at 22-26. The thrust of the argument is that per the statute, plan participants are not eligible for removal of the surcharge until they "adhere" to a cessation program, and, "[i]n common understanding, a thing cannot be avoided retroactively." *Id*. at 24-25; *see also id*. at 25 ("That surcharge cannot be 'avoided' retroactively because it has already been imposed."). To the contrary, however, there is a word that precisely captures this concept: a refund. It has both a common usage, and a legal one, and receipt of a refund—or a retroactive reimbursement—is a common experience. *See* Merriam-Webster Dictionary ("Refund: To give or put back"); *see also id*. at Tax Refund ("[A] return of money paid that is more than what is actually owed for taxes.").[13] There is no conflict between a statutory requirement that plan participants "adhere" to a wellness program to become eligible for the "full reward," and a statutory and regulatory requirement—expressed by the phrase "full reward"—that they be refunded the full amount of the annual surcharge if they do so.[14]

Finally, Compass complains that Plaintiffs' reading of "full reward" would permit a plan participant to "game" the system by waiting until the end of the year to enroll in a cessation program, resulting in a "thank you for smoking" system." Br. at 20, 26. But ERISA does not require an

---

[13] Available at: https://www.merriam-webster.com/dictionary/refund; https://www.merriam-webster.com/dictionary/tax%20refund (last visited March 27, 2025).

[14] In fact, far from shredding the regulations, *Loper Bright* actually lends support to 29 C.F.R. § 2590.702 and its "full reward" requirement. As the Supreme Court held, sometimes the "best reading of a statute is that it delegates discretionary authority to an agency." *Loper Bright*, 603 U.S. at 395. After all, Congress frequently enacts statutes that "expressly delegate to an agency the authority to give meaning to a particular statutory term" and those that "empower an agency to prescribe rules to fill up the details of a statutory scheme." *Id.* at 394-95. This is one such instance. Indeed, Congress empowered the DOL to craft the pertinent group health plan nondiscrimination regulation in broad and plenary terms. *See* 29 U.S.C. § 1191c (authorizing the agency to "promulgate such regulations as may be necessary or appropriate to carry out the provisions of this part."); 29 U.S.C. § 1135 ("the Secretary may prescribe such regulations as he finds necessary or appropriate to carry out the provisions of this subchapter."). Compass's sweeping attack on the DOL's framework, then, is plainly not consistent with the "best reading" of the statutes.

employer to offer continuous opportunities to enroll; it only requires it to provide one opportunity to do so. 29 U.S.C. § 2590.702(f)(4)(i) ("The program must give individuals eligible for the program the opportunity to qualify for the reward under the program at least once per year."). A compliant wellness program thus does not have to be designed to allow an employee to enroll at the end of the year and thus "game" the system, as Compass claims. For instance, the company could allow participants to avoid the surcharge entirely by enrolling in the smoking cessation program at the beginning of the plan year. But it did not do so. Its policy arguments are thus unavailing and Count I of Plaintiffs' complaint is well-pled.

### C. PLAINTIFFS' CLAIM BASED ON NOTICE DEFICIENCIES IS ADEQUATELY ALLEGED.

A "wellness program" is only compliant if it discloses the availability of a "reasonable alternative standard to qualify for the reward" in "*all* plan materials." 29 C.F.R. §2590.702(f)(4)(v) (emphasis added); 42 U.S.C. §300gg-4(j)(3)(E). The disclosure must include "contact information for obtaining a reasonable alternative standard and a statement that recommendations of an individual's personal physician will be accommodated." 29 C.F.R. §2590.702(f)(4)(v). Count II of Plaintiffs' Complaint alleges that all of Compass Group's Plan materials did not include the requisite disclosures—including the availability of a reasonable alternative standard that offers a retroactive reimbursement of the surcharge—and that the tobacco surcharge was thus impermissible. Compl. ¶¶ 35-42; 52-58. Plaintiffs cited Compass Group's 2021 and 2022 Enrollment Guides as examples. *Id*. ¶¶ 38-39.

In response, Compass attaches a sole document, its 2022 Group Enrollment Guide, which it claims demonstrates its compliance with the notice requirements. Ex. 1. But Compass does not contend that *all* its plan documents included the requisite disclosures,[15] or even that the one it attached

---

[15] Compass does not contend that the Group Enrollment Plan it attached is the sole document that references the tobacco surcharge and that would thus be subject to the notice requirement.

fully satisfied them. For example, Compass does not claim that the 2022 Plan document that it submitted discloses that a physician's recommendations would be accommodated, as required, let alone that "all" plan materials that referenced the surcharge did so. And it is unclear that even the "disclosure" of the tobacco cessation program to which Compass points would satisfy the statutory and regulatory requirements.[16] For example, it does not disclose that a full, retroactive reimbursement of the surcharge is available—which is what is required for the cessation program to qualify as a "reasonable alternative standard." In any event, on a motion to dismiss, the court must "accept all well-pled facts as true" and "must draw all reasonable inferences in favor of the non-moving party." *GDM Enterprises, LLC v. Astral Health & Beauty, Inc.*, 2018 WL 3453475, at *2 (W.D. Mo. July 17, 2018) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

### D. PLAINTIFFS' CLAIM FOR BREACH OF FIDUCIARY DUTIES IS ADEQUATELY ALLEGED.

Compass also moves to dismiss Count III of Plaintiffs' Complaint, for breach of fiduciary duty. Br. at 21-23. At heart, this count alleges that Compass misappropriated funds that belonged to the Plan. *See* Compl. ¶¶ 69-70. It did so by using the illegal tobacco surcharge to offset its own contribution amounts, rather than depositing them into the Plan. And ERISA makes a fiduciary liable to "restore to [the] plan any profits of such fiduciary which have been made through use of assets of

---

[16] Compass points to page 5 of the Enrollment Guide as disclosing the imposition of the tobacco surcharge, and then points out that ten pages later, under a section entitled "How can I reach my wellness goals," the Plan indicated that participants could use a program called "Virgin Pulse" to access a "Tobacco Cessation" program. Ex. 1, at 15. In italicized language at the bottom of the page, the Guide states that "[c]ompliance with the Virgin Pulse Tobacco Cessation Program will remove the tobacco surcharge, regardless of whether you have stopped using tobacco products." *Id.* It is not clear that disclosing how to "remove" the surcharge ten pages after indicating that it is required, in an entirely different section, would suffice as a "disclosure." *See* Merriam-Webster Definition of Disclosure ("To make known or public"; "to expose to view"). Far from "disclosing" that there is a way to avoid the surcharge, this seems to bury it.

the plan by the fiduciary." 29 U.S.C. § 1109(a). *See* Compl. ¶¶ 69-71. Thus, contrary to Compass's characterization of Plaintiffs' 502(a)(2) claim as primarily "tak[ing] aim" at the "Plan's design," Br. at 28, the main basis for the claim duty is the management of funds Compass controlled.

This distinction is key. That is because "ERISA imposes fiduciary duties when employers manage and deal in fund assets"; "[c]onversely, when employers adopt, modify, or terminate plans that provide pension benefits, 'they do not act as fiduciaries, but are analogous to the settlors of a trust." *Schultz v. Windstream Commc'ns, Inc.*, 600 F.3d 948, 951 (8th Cir. 2010) (quoting *Lockheed Corp. v. Spink*, 517 U.S. 882, 887, 890 (1996). "As a given party can wear different hats (i.e., either settlor o[r] fiduciary) at different times, the key question is the capacity in which the party was acting with respect to the challenged conduct." *Sec'y of Lab. v. Macys, Inc.*, 2022 WL 407238, at *3 (S.D. Ohio Feb. 10, 2022). Here, the alleged conduct is that Compass improperly used assets that should have been deposited into the Plan—the improper tobacco surcharge it collected—for its own benefit. Compl. ¶¶ 69-71. That conduct is an "exercise[] [of] authority or control respecting management or disposition of [plan] assets," which is an action taken in a fiduciary capacity. *Id.*[17]

Finally, contrary to Compass's argument, Plaintiffs are not required to allege a "loss to the plan" to state a claim under ERISA § 502(a)(2). Br. at 30. The relevant statute authorizes plans to not only recover their losses, but also "to restore to such plan any *profits* of such fiduciary which have been made through use of assets of the plan by the fiduciary." 29 U.S.C. § 1109 (emphasis added); *Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 250 (2000) (holding that ERISA

---

[17] It is also true that Plaintiffs allege "that Compass Group breached its fiduciary duty by assessing and collecting the tobacco surcharge in violation of the law and in violation of the terms of the Plan." Compl. ¶ 68. For instance, it violated terms requiring the plan fiduciary to "comply with all applicable nondiscrimination rules under the Code and any other applicable law." Compass Plan Document § 11.19. If the Court finds that the term of the Plan that was violated is not sufficiently identified in the Complaint, Plaintiffs request leave to amend their complaint to address that deficiency.

authorizes trust-law equitable remedies of restitution and disgorgement of profits, regardless of whether a loss has occurred). That is precisely what Plaintiffs have alleged here. Specifically, they have averred that Compass kept the illegal tobacco surcharge to offset its own contributions, when those funds should have been deposited into the Plan. Compl. ¶¶ 69-71. Plaintiffs thus request, as the statute explicitly allows, disgorgement of "all unjust enrichment and ill-gotten profits." *Id*. ¶ 73. Compass's argument that this form of relief is not available absent a "loss to the plan" conflicts with the plain text of the statute and is without merit.

## **CONCLUSION**

All three of Plaintiffs' claims are sufficiently alleged and should proceed. To the extent, however, that this Court finds any claim deficient, Plaintiffs request leave to amend their Complaint.

Dated: March 27, 2025                    Respectfully submitted,

/s/ Alexander T. Ricke
George A. Hanson, MO. Bar No. 43450
Alexander T. Ricke, MO. Bar No. 65132
Caleb J. Wagner, MO Bar No. 68458
Yasmin Zainulbhai, MO Bar No. 73337
(admission to W.D.Mo. pending)
STUEVE SIEGEL HANSON LLP
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone:     (816) 714-7100
Facsimile:     (816) 714-7101
hanson@stuevesiegel.com
ricke@stuevesiegel.com
wagner@stuevesiegel.com
zainulbhai@stuevesiegel.com

Ryan L. McClelland, MO Bar No. 59343
McCLELLAND LAW FIRM, P.C.
The Flagship Building
200 Westwoods Drive
Liberty, Missouri 64068-1170
Telephone:     (816) 781-0002
Facsimile:     (816) 781-1984
ryan@mcclellandlawfirm.com

*Attorneys for Plaintiff and Proposed Class*

## CERTIFICATE OF SERVICE

I hereby certify that on March 27, 2025, a true and correct copy of the foregoing document was filed electronically through the Court's CM/ECF system, and therefore, will be transmitted to all counsel of record by operation of the Court's CM/ECF system.

By: /s/ Alexander T. Ricke
ATTORNEY FOR PLAINTIFFS