| | |
|---|---|
| RICHARD L. MEHLBERG, and ANGELA R. DEIBEL, individually, on behalf of all others similarly situated, and on behalf of the Plan,<br><br>Plaintiffs,<br><br>v.<br><br>COMPASS GROUP USA, INC.,<br><br>Defendant. | Case No. 2:24-cv-04179-SRB |

## REPLY SUGGESTIONS IN SUPPORT OF COMPASS GROUP USA, INC.'S MOTION TO DISMISS

# TABLE OF CONTENTS

I. INTRODUCTION .................................................................................................1

II. PLAINTIFFS LACK STANDING TO ASSERT THEIR CLAIMS ...................................2

    A. Plaintiffs Lack Article III Standing to Assert Count I ............................................3
        1. Plaintiffs' Purported Injury Is Not Traceable to Their Claims That Compass Was Required to Retroactively Refund Tobacco Surcharges ..........................3
        2. Mischaracterizing the Statutory Requirements for Wellness Programs as a "Narrow Safe Harbor" and Affirmative Defense Does Not Cure Plaintiffs' Standing Defects ...................................................................................5
        3. Plaintiffs' Cited Case Law Does Not Save Their Claims ...............................7
    B. Plaintiffs Lack Article III Standing to Assert Count II's Notice Claim………… 8

III. PLAINTIFFS' CLAIMS FAIL ON THE MERITS............................................................9

    A. *Lipari-Williams*'s Finding That Premium Discounts Must Be Retroactively Refunded Does Not Control...................................................................................9
    B. ERISA Clearly Permits a Premium Surcharge ......................................................9
    C. The Term "Full Reward" Does Not Mean "Retroactive Refund" Under the Best Read of Sections 2705 and 702(b) ......................................................................11
        1. The Statutory Text Does Not Require a Retroactive Refund of Premium Surcharges........................................................................................11
        2. Plaintiffs' Provide No Compelling Reason to Defer to Non-Binding DOL Statements That Conflict With the Statutory Text .........................................13

IV. PLAINTIFFS' FIDUCIARY BREACH CLAIM DOES NOT CHALLENGE THE USE OF PLAN ASSETS OR FIDUCIARY ACTS AS REQUIRED UNDER ERISA §§409(a) AND 502(a)(2) ........................................................................................14

V. CONCLUSION....................................................................................................15

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Bryant v. Wal-Mart Stores E.*,
  2022 U.S. Dist. LEXIS 30423 (W.D. Mo. Feb. 22, 2022)......................................................14

*Chorosevic v. Choices*,
  2008 U.S. Dist. LEXIS 143469 (E.D. Mo. Apr. 28, 2008)......................................................15

*Cleveland v. Policy Management Systems Corp.*,
  526 U.S. 795 (1999)..................................................................................................................6

*Coal. For Competitive Elec. v. Zibelman*,
  906 F.3d 41 (2d Cir. 2018)........................................................................................................4

*Deutsche Bank Nat'l Trust Co. v. Collins*,
  2012 U.S. Dist. LEXIS 30135 (W.D. Ark. Mar. 7, 2012) ......................................................12

*Hunt v. Cromartie*,
  526 U.S. 541 (1999)..................................................................................................................6

*Johnson v. U.S. Office of Pers. Mgmt.*,
  783 F.3d 655 (7th Cir. 2015) ....................................................................................................6

*Kisor v. Wilke*,
  588 U.S. 558 (2019)................................................................................................................14

*Kuehl v. Sellner*,
  887 F.3d 845 (8th Cir. 2019) ....................................................................................................7

*Lipari-Williams v. Mo. Gaming Co.*,
  339 F.R.D. 515 (W.D. Mo. 2021)...........................................................................8, 9, 10, 13

*Mid-America Care Found. v. NLRB*,
  148 F.3d 638 (6th Cir. 1998) ..................................................................................................14

*Navarro v. Wells Fargo & Co.*,
  2025 U.S. Dist. LEXIS 53444 (D. Minn. Mar. 24, 2025)........................................................4

*Pub. Water Supply Dist. No. 1 of Greene Cty. v. City of Springfield*,
  567 F. Supp 3d 1091 (W.D. Mo. Oct. 14, 2021) ...................................................................12

*Schaffer v. Weast*,
  546 U.S. 49 (2005)....................................................................................................................6

*St. Mary's Honor Center v. Hicks*,
  509 U.S. 502 (1993)..................................................................................................................6

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021)....................................................................................................2, 3, 6, 8

**Statutes**

29 U.S.C. § 1182(b), ERISA § 702(b) ................................................................................ *passim*

29 U.S.C. § 1109(a)(2), ERISA §§ 409(a)................................................................................14

29 U.S.C. § 1132(a)(2), ERISA § 502(a)(2) .......................................................................14, 15

42 U.S.C. § 300gg-4, PHSA § 2705 .................................................................................... *passim*

42 U.S.C. § 280l...........................................................................................................................6

**Other Authorities**

Opposition to Motion to Dismiss, *Sec'y of Labor v. Macy's Inc.*,
  17-cv-541, ECF No. 67 (June 3, 2022)........................................................................6, 12, 14

## I. INTRODUCTION.

Compass's Motion to Dismiss (ECF No. 33) presents straightforward legal issues focused constitutional standing requirements and the statutory interpretation of wellness program rules in Section 702(b) of the Employee Retirement Income Security Act ("ERISA"), as amended through the incorporation of Section 2705 of the Public Health Service Act ("PHSA").[1] These legal issues are ripe for resolution as the pertinent facts are not in dispute. Plaintiffs allege that they were participants in Compass's group health plan and paid a premium surcharge due to their tobacco use. Plaintiffs agree that, if they had completed a free tobacco cessation program offered by Compass, the surcharge would have been prospectively lifted for the remainder of the Plan year. They admit, however, they did not complete a cessation program, or even try to.

Nevertheless, Plaintiffs' Complaint attacks Compass's tobacco wellness program, claiming it violates ERISA § 702(b) because it did not provide for a retroactive refund of premium surcharges upon completion of a tobacco cessation program (Count I), and because the Plan's notices referencing the tobacco wellness program did not explain that a retroactive refund was available, or include a statement that recommendations of an individual's physician would be accommodated (Count II). Plaintiffs also tack on a fiduciary breach claim that is duplicative of Counts I and II's statutory violations (Count III).

As set forth in Compass's opening brief and as discussed further below, all Counts must be dismissed. As a threshold matter, Plaintiffs plainly lack Article III standing to remedy a purported injury that is not traceable to the alleged statutory violations. It is undisputed that they paid the tobacco surcharge because of their tobacco use, *not* because of the challenged conduct related to retroactive refunds and the Plan's notices, creating textbook standing deficiencies that cannot be

---

[1] The full legislative and factual background is set forth in Defendant's Motion. Defendant's Suggestions in Support of Motion to Dismiss ("MTD"), ECF No. 34.

ignored. Plaintiffs' only response to their clear lack of standing is to argue that one alleged issue with the tobacco wellness program renders the entire program illegal. But this argument has no basis under ERISA and is an improper attempt to circumvent Article III's traceability requirement.

On the merits, under *Loper Bright*, the best read of the statute rules the interpretation of ERISA's wellness program requirements. And the best reading of ERISA § 702(b) as amended by the incorporation of PHSA § 2705 does not contemplate retroactive refunds of surcharges. Plaintiffs brush off, and at some points try to re-write, PHSA § 2705, instead focusing on non-binding statements by the Department of Labor ("DOL") from regulatory preamble language having nothing to do with tobacco surcharges and from briefing in another lawsuit. But the DOL language Plaintiffs rely on is not binding or owed deference, nor does is it suggest retroactive refunds of surcharges as Plaintiffs claim it does.

For these reasons, as further explained in Defendant's Motion, the Complaint must be dismissed.

## II. PLAINTIFFS LACK STANDING TO ASSERT THEIR CLAIMS.

To establish Article III standing, Plaintiffs must allege (i) they suffered an injury that is concrete, particularized, and actual or imminent, (ii) that is traceable to defendant's conduct, and (iii) that the injury is redressable by judicial relief. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). Plaintiffs satisfy none of these elements. MTD, pp. 9-12. Their Opposition merely talks past their pleading deficiencies and seeks to re-frame the Complaint and well-settled standing principles to avoid dismissal.

### A. Plaintiffs Lack Article III Standing to Assert Count I.

#### 1. Plaintiffs' Purported Injury Is Not Traceable to Their Claims That Compass Was Required to Retroactively Refund Tobacco Surcharges.

Count I asserts that Compass violated ERISA because Compass did not retroactively refund the tobacco surcharges to Plan participants who completed a tobacco cessation program. Complaint ("Cmplt"), ECF No. 1, ¶¶ 34, 54. Instead, Compass prospectively waived tobacco surcharges for the remainder of the year upon completion of the cessation program. *Id.* at ¶ 34. Plaintiffs paid the tobacco surcharge for the entire Plan year because they used tobacco and never enrolled in or completed a tobacco cessation program – not because they completed a tobacco cessation program and did not receive a retroactive refund. Accordingly, even accepting Plaintiffs' (incorrect) legal conclusion that ERISA requires retroactive refunds of a tobacco surcharge upon completion of a cessation program as true, Plaintiffs lack Article III standing because their purported "harm" of paying the tobacco surcharge is not traceable to the alleged statutory violations of failing to retroactively refund participants who did complete a cessation program.

Plaintiffs' allegations are a clear-cut failure to meet Article III's traceability requirement. As the Supreme Court explained, Article III is "not a freewheeling power to hold defendants accountable for legal infractions." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021). Thus, a plaintiff who "merely seek[s] to ensure a defendant's compliance with regulatory law" fails to establish standing under Article III. *Id.* at 428 (internal quotations omitted). Rather, to meet the traceability requirement, Plaintiffs must show they suffered a personal, concrete harm *from the conduct of defendant they challenge as unlawful*. *Id.* at 429. Because Plaintiffs did not enroll in the cessation program, they would never have been entitled to a retroactive refund of the surcharge, the basis for their Complaint. As such, they cannot meet the traceability requirement, and their Complaint must be dismissed. MTD, pp. 9-12.

3

Plaintiffs insist they have standing because they paid the tobacco surcharge, and payment of a fee is a classic injury-in-fact. Plaintiffs' Suggestions in Opposition to Motion to Dismiss ("Opp."), ECF No. 37, p. 7. But payment of a fee, even if a theoretical injury-in-fact, does not confer standing where Plaintiffs do not also allege traceability and redressability. *Navarro v. Wells Fargo & Co.*, 2025 U.S. Dist. LEXIS 53444, at *13 (D. Minn. Mar. 24, 2025) (quoting *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 591 (8th Cir. 2009)) (the analysis "often turns on the nature and source of the claim asserted.'"). In *Navarro*, for example, the court accepted the plaintiffs' theoretical proposition that paying an excessive health insurance premium *could be* an injury-in-fact, but ultimately dismissed the claim for lack of standing because Article III's traceability and redressability requirements were not met. *Id.* at *22-28.

Here, Plaintiffs' Article III standing argument falters for the same reasons as *Navarro*. Notwithstanding their payment of the surcharge, Plaintiffs wholly fail to show how their purported financial harm of paying a tobacco surcharge is traceable to the challenged conduct or is redressable by the Court. *Supra* pp. 2-3; MTD, pp. 9-12. Again, Plaintiffs' payment of the surcharge is traceable to their own personal decision not to engage in the cessation program, not the purported statutory violation. Said another way, even if the Court ordered Compass to retroactively refund tobacco surcharges for individuals who completed a reasonable alternative standard like the cessation programs, Plaintiffs would recover nothing because they did not complete a cessation program based on the facial allegations in the Complaint. *See Coal. For Competitive Elec. v. Zibelman*, 906 F.3d 41, 58 (2d Cir. 2018) (the fact that the plaintiffs' alleged injury was the result of their own decisions and would not be abated if the complained-of conduct was changed shows a lack of traceability). Plaintiffs therefore lack standing.

4

### 2. Mischaracterizing the Statutory Requirements for Wellness Programs as a "Narrow Safe Harbor" and Affirmative Defense Does Not Cure Plaintiffs' Standing Defects.

Plaintiffs attempt to save their claim by characterizing their discrete issues with Compass's tobacco wellness program as an all-or-nothing "death knell" to the entire program. They assert that the statutory criteria for a tobacco wellness program constitute a *narrowly construed* safe harbor and affirmative defense, suggesting that failure to meet any of those criteria renders the entire program and all tobacco surcharges collected unlawful. Opp., pp. 1, 2, 4, 5, 7, 17. Plaintiffs only support for their position is non-binding[2] language from the preamble to the 2013 DOL Regulations, which is fatal to their standing analysis. The preamble also contradicts ERISA and the regulations themselves, and construing it as Plaintiffs propose runs afoul of Article III.

The preamble to the DOL's 2013 regulation on which Plaintiffs rely baldly opines that wellness programs rules should be treated as an affirmative defense. Opp., p. 4 (citing 78 FR 33158, 33160). The DOL's non-binding preamble does not square with Congress's clear intent to promote wellness programs, though. Wellness programs are a critical part of what ERISA § 702(b) and PHSA § 2705 seek to achieve, not a disfavored exception to it. When enacting ERISA § 702(b)'s prohibition against more expensive health plan premiums based on a health status-related factor, Congress provided in this same section that "[n]othing in [this prohibition] shall be construed . . . to prevent a group health plan . . . from establishing premium discounts or rebates . . . in return for adherence to programs of health promotion and disease prevention," otherwise known as wellness programs. Congress continued its support of wellness programs in the Affordable Care Act, including by instructing the federal government to provide technical assistance to support *expanded* use of employer-based wellness programs. 111 P. L. 148, 124

---

[2] No weight can be afforded to the preamble that is the sole basis for the Complaint. MTD, pp. 14-15; *infra,* pp. 13-14 and note 16.

Stat.119, 583 (ACA March 23, 2010), *codified at* 42 U.S.C. § 280l. Construing the statute to invalidate the entire wellness program based on discrete violations of line-item requirements violates Congress's intent.[3] Accordingly, the default rule that plaintiff must prove their claim to relief applies.[4]

In addition, nothing in the preamble to the DOL's 2013 regulation can circumvent constitutional limitations on standing, which is exactly what accepting Plaintiffs' "death knell" argument would do here. Again, Article III does not grant the federal courts "freewheeling power to hold defendants accountable for legal infractions." *TransUnion*, 594 U.S. at 427. As the Supreme court made clear, "Congress's creation of a statutory prohibition or obligation and a cause of action does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III . . . ." *Id.* at 426; *see also Johnson v. U.S. Office of Pers. Mgmt.*, 783 F.3d 655, 661 (7th Cir. 2015) ("the fact that a plaintiff has suffered an injury that is traceable to one kind of conduct does not grant … standing to challenge other, even related, conduct."). Finding standing here, where Plaintiffs raise specific statutory violations that undisputedly did not affect them, would violate this core constitutional principle.

---

[3] Not even the DOL adopts this interpretation. Opposition to Motion to Dismiss, *Sec'y of Labor v. Macy's Inc.,* 17-cv-541, ECF No. 67 (June 3, 2022) (in responding to Macy's motion to dismiss arguing, in relevant part, that ERISA wellness program criteria are not an affirmative defense, the DOL abandoned that position).

[4] Absent some reason to believe Congress intended otherwise, the burden of persuasion lies with the party seeking relief. *Schaffer v. Weast*, 546 U.S. 49, 57–58 (2005) (applying burden of persuasion on the plaintiff in an Individuals with Disabilities Education Act claim); *see also St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 511 (1993) (same for Title VII of the Civil Rights Act of 1964); *Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795, 806 (1999) (Americans with Disabilities Act); *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999) (equal protection); *The Wharf (Holdings) Ltd. v. United Int'l Holdings*, Inc., 532 U.S. 588, 593 (2001) (securities fraud).

In sum, no rational reason exists to construe the statutory wellness requirements as a narrow safe harbor and affirmative defense. And, without this type of all-or-nothing analysis, Plaintiffs cannot meet their burden of pleading Article III standing.[5]

### 3. Plaintiffs' Cited Case Law Does Not Save Their Claims.

Plaintiffs point to a handful of cases (*Dubuisson, Debernadis,* and *Franz*) in support of their position that Plaintiffs need not have participated in the cessation program to challenge the Plan's alleged failure to retroactively refund tobacco surcharges to participants who did complete the program. Each case involved a claim where the plaintiffs purchased products, they claimed were worthless (non-FDA approved products in *Debernadis* and *Franz*, or void insurance policies in *Dubaisson*), meaning they paid money for a product they did not receive or could not use. Opp., pp. 10-11.[6] None of those cases considered whether violation of a single element of a larger program can confer an injury-in-fact traceable to paying a fee that is otherwise completely legal.

*Kuehl* is likewise inapposite. *Id.* There, plaintiffs challenged defendants' mistreatment of zoo animals, and defendants argued they lacked standing because they only visited the zoo to fabricate the injury needed to challenge defendants' behavior. The court held plaintiffs had standing, even if they visited the zoo looking for violations, because they actually suffered the injury stemming from the challenged animal treatment. *Kuehl v. Sellner*, 887 F.3d 845, 850-851 (8th Cir. 2019). Here, Compass does not claim that Plaintiffs sought out the alleged harm for the purposes of attaining standing. Rather, Compass argues that the alleged injury does not "stem from," and thus in not traceable too, the challenged conduct.

---

[5] Plaintiffs' entire standing analysis, and opposition to Defendant's analysis, hinges on the payment of an illegal fee. Indeed, Plaintiffs do not contest that, *if* the entire wellness program is *not* declared illegal based on discrete issues with the refunds and notices, they were not harmed *because of* the purported statutory violation.
[6] By citing these cases favorably, Plaintiffs incorrectly assume that challenging discrete issues with Compass's tobacco wellness program renders the entire program unlawful. *See supra* pp. 5-6.

7

Finally, contrary to Plaintiffs' position, *Lipari-Williams* is not dispositive.[7] Because it was a class certification motion where different issues were raised by the parties, the Court assumed in *Lipari-Williams* that the entire wellness program was invalidated based on the retroactive refund, thus standing existed because the plaintiff paid "a fee that should not have been charged." Opp., p. 8. (citing *McKeage v. Bass Pro Shop*). As discussed above though, the tobacco surcharge charged to the Plaintiffs is not illegal simply because of discrete features of the wellness program that had no impact at all on Plaintiffs. *McKeage* and *Lipari-Williams* have no application here.[8]

**B.  Plaintiffs Lack Article III Standing to Assert Count II's Notice Claim.**

The same analysis applies to Plaintiffs' notice claim in Count II. Plaintiffs allege notices disclosing the wellness program did not contain a statement that the recommendations of an individual's physician would be accommodated. Just like their retroactive refund claim, however, Plaintiffs gloss over that the alleged harm of not having this single statement in the notice is not traceable to their payment of a surcharge, meaning they lack standing. MTD, pp. 11; *supra* pp. 1-4, 6-7.

And again, Plaintiffs' case law citations are unavailing. Opp., pp. 12-13. In the cited cases, no notice was provided at all, rendering the challenged fee (or, in the FLSA case, the application of the tip credit), unlawful. Plaintiffs do not allege here that they did not receive notice at all. They claim instead the notice lacked one specific detail. Opp., p. 11; Cmplt. ¶ 41. And they do not allege that a lack of detail caused them to forego participation in a cessation program and pay

---

[7] Notwithstanding the "extensive" briefing on *TransUnion* in the *Lipari-Williams* briefing that Plaintiffs make reference to, the opinion in *TransUnion* was brand new and not discussed in the opinion in *Lipari-Williams*. In any event, this Court is not bound to its prior decisions especially where the opinion on class certification was "'tentative,' 'preliminary,' and 'limited.'" *Lipari-Williams v. Mo. Gaming Co.*, 339 F.R.D. 515, 521 (W.D. Mo. 2021).

[8] Plaintiffs' distinction of cases cited in Defendant's Motion suffer from the same fundamental issue. Plaintiffs admit that those cases found a lack of standing where plaintiffs "could not have been injured by policies that do not directly affect them." Opp., p. 9. That is exactly the case here and thus not a distinction at all.

the tobacco surcharge. Thus, their harm is not traceable to the alleged injury, and they lack standing to pursue the claim. *Supra*, pp. 1-4, 6-7.[9]

### III. PLAINTIFFS' CLAIMS FAIL ON THE MERITS.

#### A. *Lipari-Williams*'s Finding That Premium Discounts Must Be Retroactively Refunded Does Not Control.

Citing the regulatory preamble language espoused by Plaintiffs, this Court stated in *Lipari-Williams* that "[t]he full reward [required in the 2013 DOL regulations] requires retroactively reimbursing a participant that completes the alternative standard." *Lipari-Williams*, 339 F.R.D. at 522 (citing 78 Fed. Reg. 33158, at 33162). Plaintiffs incorrectly claim that this binds the Court to deny Defendants' Motion. Again, Plaintiffs are wrong.

In *Lipari-Williams*, the Court did not reach the issue of whether the reward of an "absence of a surcharge" found in PHSA § 2705 is required on a retroactive basis.[10] *Lipari-Williams*, 339 F.R.D at 522. Indeed, *Lipari-Williams* explicitly and exclusively found that retroactive "rebates" are required for "premium discounts." *Id.* at 524. *Lipari-Williams* (and the cited preamble language, *see infra* pp. 11, 13-14) has no application here.

#### B. ERISA Clearly Permits a Premium Surcharge.

Plaintiffs also rely on *Lipari-Williams* to argue erroneously that ERISA does not permit a premium surcharge *at all*. Opp., pp. 16-18. Plaintiffs do not dispute that after *Loper Bright*, the Court's interpretation of the statute controls. MTD, pp. 14-15; Opp., p. 16. Instead, they argue that, even before *Loper Bright*, this Court held that ERISA § 702(b) was "plain" when it found that

---

[9] Plaintiffs also lack statutory and constitutional standing to seek prospective, equitable relief, which is not available to former Plan participants. MTD, p. 12. Plaintiffs do not address the impact of their exit from the Plan on their entitled to prospective relief. Opp., pp. 13-14.

[10] Plaintiffs point out Section 2705 had been incorporated into ERISA well before this Court decided *Lipari-Williams*. But it was not cited or analyzed in the Court's order. The *Lipari*-Williams's parties' briefing only mentions Section 2705 in the reply brief, and even there does not discuss the "absence of the surcharge" reward and how that affected the reading of Section 702(b).

9

premium surcharges are not even permitted by ERISA. Opp., p. 16. Plaintiffs argue now under *Loper Bright*, the Court's prior interpretation controls and the tobacco surcharge is prohibited *in its entirety*. *Id.* at pp. 16-17.

Plaintiffs' argument misleads the Court by omitting any material analysis of PHSA § 2705 and pointing to the Court's prior decision in *Lipari-Williams*, which did not consider PHSA § 2705. *Supra*, note 10 and accompanying text. To recap, and be very clear, ERISA § 702(b)(2) provides that a plan can establish "premium discounts or rebates . . . in return for adherence to programs of health promotion and disease prevention," also known as "wellness programs." Section 702(b)(2) makes no mention of premium surcharges like the surcharge at issue here, and the Court's analysis in *Lipari-Williams* discussed only the plain meaning of the terms "discount" and "rebate" in Section 702(b). *Lipari-Williams*, 339 F.R.D. at 524. As such, *Lipari-Williams* is inapplicable here.

It was not until ERISA was amended in 2010 to incorporate PHSA § 2705 that Congress made reference to the "absence of a surcharge" in connection with an ERISA-approved wellness program. MTD, pp. 5-6. Specifically, PHSA § 2705 introduced a third category of "carrots" for adherence to a wellness program – "rewards" – and then specifically defined "reward": "A reward may be in the form of a discount or rebate of a premium or contribution, a waiver of all or part of a cost-sharing mechanism (such as deductibles, copayments, or coinsurance), *the absence of a surcharge* . . . ." 42 U.S.C. § 300gg-4 (j)(3)(A) (emphasis added).

Plaintiffs ignore the relevant text of PHSA § 2705 in their Opposition, other than to claim in passing that "its provisions are consistent with those of [Section 702(b)(2)] of ERISA." Opp., p. 17. That is a misstatement, full stop. Section 2705 amended ERISA § 702(b)(2) to add the key "absence of a surcharge" as a "reward" language at issue here.

Finally, Plaintiffs' argument that a surcharge cannot apply to a premium or contribution is

10

a nonstarter. Opp., pp. 17-18. Section 2705 provides that "[a] reward may be in the form of [1] a discount or rebate of a premium or contribution, [2] a waiver of all or part of a cost-sharing mechanism (such as deductibles, copayments, or coinsurance), or [3] *the absence of a surcharge* . . . ." 42 U.S.C. § 300gg-4 (j)(3)(A) (emphasis added). The reward of "absence of a surcharge" is its own category, not limited by any restrictions as to what the surcharge can be added to (contrary to the case for "waivers," which only pertain to cost-sharing mechanisms).

### C. The Term "Full Reward" Does Not Mean "Retroactive Refund" Under the Best Read of Sections 2705 and 702(b).

*Loper Bright* requires the Court to interpret the statutes to find the best read of the relevant statutory text. Plaintiffs do not dispute this. Opp., p. 16. The only issue here is what Plaintiffs run from in their Opposition: does the term "full reward" in PHSA § 2705 mean a "retroactive refund" in the context of a tobacco surcharge? The answer is no.

#### 1. The Statutory Text Does Not Require a Retroactive Refund of Premium Surcharges.

To re-orient the Court, together ERISA § 702(b) and PHSA § 2705 allow a group health plan to offer a wellness program "reward" in the form of "the absence of a surcharge" in return for a plan participant's "adherence to programs of health promotion and disease prevention." MTD, p. 13. PHSA § 2705 also states that "the full reward under the wellness program shall be made available to all similarly situated individuals" and then clarifies that "[t]he reward is not available to all similarly situated individuals" unless the wellness program provides "a reasonable alternative standard," which in this case is the cessation program. *Id.*

Plaintiffs claim the statutory text supports their interpretation retroactivity requirement because "the word 'reward' is qualified by the word 'full' in both the [preamble to the] DOL

11

regulation and the statutory text of 2705 of the PHSA."[11] Opp., p. 19. Compass does not dispute that PHSA § 2705 uses the term "full reward." MTD, pp. 5-6. Compass's point is that Plaintiffs have no statutory authority that the term "full reward" means "retroactive refund of a surcharge."[12]

Indeed, the concept of a retroactive refund of tobacco surcharges appears nowhere in PHSA § 2705, a fundamental flaw in Plaintiffs' argument with which they do not meaningfully grapple. MTD, pp. 17-20. Neither term supports Plaintiffs' invented retroactivity requirement because one cannot avoid something in the past, and "adherence" evokes a prospective form of relief.[13] MTD, pp. 17-20. All that matters under the statute is that once adherence is accomplished, the reward be "full"—i.e., the entire surcharge is waived prospectively, as opposed to only a portion of the surcharge being waived.

Had Congress intended for the "absence of a surcharge" reward that it created in 2010 to mean a retroactive return of all surcharges paid, it knew how to use the terms "retroactive" or "return" to do so. Instead, it opted for the phrase "absence of a surcharge" which has no connotation of retroactivity. *Id.* The Court is not permitted to read a retroactive refund requirement into the statute when Congress signaled no such intent in its language choice. *Pub. Water Supply Dist. No. 1 of Greene Cty. v. City of Springfield,* 567 F. Supp 3d 1091, 1095-97 (W.D. Mo. Oct. 14, 2021) (citing *Nat'l Ass'n of Mfrs. v. DOD,* 138 S. Ct. 617, 632 (2018) (a court cannot "override Congress' considered choice by rewriting the words of a statute.")); *Deutsche Bank Nat'l Trust Co. v. Collins*, 2012 U.S. Dist. LEXIS 30135, at *5-8 (W.D. Ark. Mar. 7, 2012).

Not so fast, Plaintiffs say: "[T]here is a word that precisely captures this concept [of

---

[11] As noted above, this is the only other reference to § 2705 in Plaintiffs' Opposition.
[12] Plaintiffs claim that that it was undisputed in *Macy's* that "full reward" meant "retroactive rebate." Opp., p. 19. Another defendant's position in a different preceding is not binding here. In any event, that supposed "concession" pre-dates *Loper Bright* when Macy's was constrained by *Chevron* deference. As Plaintiffs note, Macy's has re-asserted in subsequent, post-*Loper Bright* briefing that full reward does not mean retroactive rebate. Opp., p. 19 n. 10.
[13] Defendant provided other reasons supporting the "best interpretation of the statute" that Plaintiffs do not address in their Opposition. MTD, pp. 13-18.

12

retroactivity]: a refund." Opp. at 21. The term "refund" reconciles the DOL's regulations with the text of PHSA § 2705's "reward" of an "absence of a surcharge" as requiring a retroactive refund because the term "refund" has a common meaning of giving something back. Opp., p. 21.

Like the term retroactivity, though, **the term refund never appears in the statute** (or the regulations for that matter). Plaintiffs simply substituted the term "refund" for "reward" with no basis for doing so. The term in the statute is "reward," and as now stated *ad nauseam*, a reward under 2705 is the "absence of a surcharge" which has no retroactive connotation.

Finally, Plaintiffs' statutory interpretation similarly goes off the rails in requiring a reward for any participant who completes a cessation program. Per the plain language of PHSA § 2705, Compass is not even required to *offer* the cessation program, and therefore the reward for completing a cessation program, to tobacco users unless they have *medical conditions or medical advice that is inadvisable to stop smoking*. 42 U.S.C. § 300gg-4(j)(3)(D)(i).[14] Plaintiffs do not allege in the Complaint or raise in their Opposition that they eschewed the cessation program for those reasons, which is grounds to dismiss Complaint.

### 2. Plaintiffs' Provide No Compelling Reason to Defer to Non-Binding DOL Statements That Conflict With the Statutory Text.

As explained in Defendant's Motion, Plaintiffs' only support for their retroactivity requirement is the non-binding preamble to the 2013 DOL Regulations. MTD, pp. 15-16. Plaintiffs' Opposition does not explain why this Court should overlook the plain statutory language and rely on the preamble.

First, it bears noting that even if the Court is inclined to consider the non-binding preamble language, that language does not evidence an intent by even the DOL to require retroactive refunds

---

[14] Compass generously offers the reward to anyone who completes a cessation program but is not required to do so under plain language of the statute. That the 2013 DOL Regulations write out this statutory requirement is only further proof that the DOL exceeded its authority, as the DOL cannot simply re-write the statute. *Infra* note 16.

13

of *surcharges*. The preamble only refers to premium discounts and rebates, which this Court treated as distinct categories of rewards under ERISA § 702(b). *Lipari-Williams*, 339 F.R.D at 524. The preamble does not address surcharges.

Nevertheless, Plaintiffs suggest the Court should credit the preamble to the 2013 DOL Regulation and the DOL's ever-shifting positions in an unrelated litigation because, under *Auer*, the DOL's interpretation of its own regulations controls. Opp., p. 20. But the DOL's interpretation of its regulations is not at issue; the Court is tasked here with interpreting the statute itself. Indeed, relying on *Auer* in this context is an end-run around *Loper Bright*'s requirement that the Court interpret the statute on its own. Stated differently, where regulations are no longer owed deference, plaintiffs could simply bypass the regulations, as Plaintiffs do here, and jump straight to DOL interpretation of the bypassed regulation to claim it is binding on the Court.[15,16]

Simply put, Plaintiffs failed to justify why this Court should stray from the statutory text.[17]

## IV. PLAINTIFFS' FIDUCIARY BREACH CLAIM DOES NOT CHALLENGE THE USE OF PLAN ASSETS OR FIDICUARY ACTS AS REQUIRED UNDER ERISA §§ 409(a) AND 502(a)(2).

As an initial matter, Plaintiffs do not dispute that, if their statutory claims in Counts I and

---

[15] Plaintiffs are wrong that the DOL's briefing in the *Macy's* litigation is owed deference under *Auer*. Litigation positions are not owed deference. *Mid-America Care Found. v. NLRB*, 148 F.3d 638, 642 (6th Cir. 1998) (even pre-*Loper Bright*, agency deference does not "extend to an interpretation taken solely in connection with an agency's litigating position in a particular case or set of cases."). Moreover, even if *Auer* applied, as the Supreme Court explained in *Kisor v. Wilke,* 588 U.S. 558, 576 (2019), to pass muster under *Auer,* an agency's claimed interpretation of its regulation must be "reasonable." But any agency interpretation that interprets its regulation as contrary to the "best read" of the statute at issue is, by definition, not reasonable. *Cf., Loper Bright,* 144 S. Ct. at 2265-66.

[16] Plaintiffs also argue that Congress delegated to the DOL authority to flesh out the wellness regulations. Opp., p. 21, n. 14. But Congress specified in the 2010 amendments where the DOL should act, and defining the term "full reward" was not part of that delegation. *See*, *e.g*. 42 U.S.C. § 300gg-4(c)(4)(E) (inviting DOL to require additional conditions regarding genetic testing); *id.* § 300gg-4(j)(3)A) (permitting DOL to increase a reward from 30 percent of the cost of employee-only coverage to as much as 50 percent). Even if Congress had delegated authority, Plaintiffs do not rely on the DOL's regulations; they rely on a non-binding preamble that is inapplicable to the issue here. *Supra* pp. 5-6, 13 and note 2.

[17] Plaintiffs' notice claim in Count II fails for similar reasons, primarily that ERISA does not require a retroactive refund, so that a retroactive refund is available to participants need not be disclosed in Plan notice. Similarly, the 2013 regulations statements about including of the statement about physician recommendations conflicts with the statute and should be disregarded. MTD, pp. 20-21. Plaintiffs do not meaningfully address this in the Opposition, instead discussing the placement of certain disclosures within the 2022 Benefits Guide. Opp., pp. 22-23.

14

II fail, Count III fails as well. MTD, p. 21. Nor do they dispute that their prohibited transaction claims should be dismissed. They have thus waived those arguments. *Id*; *Bryant v. Wal-Mart Stores E.*, 2022 U.S. Dist. LEXIS 30423, at *4-5 (W.D. Mo. Feb. 22, 2022).

Plaintiffs further fail to meaningfully address Compass's arguments supporting dismissal of Count III's fiduciary breach claim even if Counts I and II survive. In the Opposition, Plaintiffs argue their claim is based on "the management of funds Compass controlled." Opp., p. 24. Not so. Count III presents a repackaged statutory violation and Plan design issue; the collection and allocation of the surcharges is merely incidental to these issues. MTD, pp. 22-23.

Moreover, to overcome Defendants' argument that there was no loss to the Plan, because the surcharges actually enriched and added to the Plan (MTD, p. 23), Plaintiffs respond that Compass kept the surcharges in general assets to offset their contributions to the Plan. Plaintiffs' response further dooms Count III. If the surcharges were not deposited into the Plan, they are not "Plan assets" that can form the basis of an ERISA § 502(a)(2), as such claims are limited to claims regarding misuse of Plan assets. Opp., p. 24 (§ 502(a)(2) requires fiduciaries to restore to the plan profits made "through the use of assets of the plan"); *see also Chorosevic v. Choices*, 2008 U.S. Dist. LEXIS 143469, at *13-14 (E.D. Mo. Apr. 28, 2008) (holding that an allegation of ill-gotten profits alone is not sufficient to state a § 502(a)(2) claim; the profits must be alleged to have been attained through an abuse of plan assets).

Because Count III does not involve Plan assets or fiduciary acts, it must be dismissed.

## V. CONCLUSION.

For the reasons set forth herein and in Defendant's Motion, the Complaint must be dismissed.

Dated: April 10, 2025                    **JACKSON LEWIS P.C.**

    */s/ Phillip C. Thompson*
Phillip C. Thompson (MO Bar #69915)
7101 College Blvd., Suite 1200
Overland Park, KS 66210
Telephone:   (913) 981-1018
Facsimile:   (913) 981-1019
Phillip.Thompson@jacksonlewis.com

René E. Thorne*
René.Thorne@jacksonlewis.com
Lindsey H. Chopin*
Lindsey.Chopin@jacksonlewis.com
601 Poydras Street, Suite 1400
New Orleans, Louisiana 70130
Telephone:   (504) 208-1755
Facsimile:   (504) 208-1759
*Admitted via *Pro Hac Vice*

ATTORNEYS FOR DEFENDANT

**CERTIFICATE OF SERVICE**

I hereby certify that on April 10, 2025, I filed the foregoing with the Court using the CM/ECF system. This system sends notifications of such filing and service to all counsel of record.

    */s/ Phillip C. Thompson*
Phillip C. Thompson