**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF MISSOURI**
**CENTRAL DIVISION**

| | | |
|---|---|---|
| RICHARD L. MEHLBERG, and ANGELA R. DEIBEL, individually, on behalf of all others similarly situated, and on behalf of the Plan, | ) | |
| Plaintiffs, | ) | |
| v. | ) | Case No. 24-cv-04179-SRB |
| COMPASS GROUP USA, INC., | ) | |
| Defendant. | ) | |

**ORDER**

Before the Court is Plaintiff Richard L. Mehlberg ("Mehlberg") and Angela R. Deibel's ("Deibel") (collectively, "Plaintiffs") Motion for Summary Judgment (Doc. #115) and Defendant Compass Group USA, Inc.'s ("Defendant" or "Compass Group") Motion for Summary Judgment (Doc. #117). For the reasons set forth below, Plaintiffs' motion is GRANTED IN PART and Defendant's motion is DENIED.

## I. FACTUAL BACKGROUND

The following factual discussion includes those facts that are uncontroverted or deemed uncontroverted by the Court. The facts are taken from the parties' briefs and exhibits, without further quotation or attribution unless otherwise noted. Only those facts necessary to resolve the pending motions are discussed below, and those facts are simplified to the extent possible. Additional facts relevant to the parties' arguments are set forth in Section III. All page numbers refer to the pagination automatically generated by CM/ECF.[1]

[1] The parties' briefs on their cross-motions for summary judgment (not including exhibits) span approximately 350 pages. The Court will not and need not address each and every fact, argument, and issue raised by the parties. Despite the voluminous briefs, both parties agree that many facts are not disputed and that their cross-motions primarily raise legal issues that are amenable to resolution at the summary judgment stage. *See* Doc. #121, p. 11 (Plaintiffs'

Defendant is a foodservice company. Since 2016, Defendant has offered health benefits to employees through the Compass Group Medical Plan (the "Plan"). Mehlberg is a former employee of a subsidiary of Defendant and participated in the Plan. Deibel is an employee of a subsidiary of Defendant and participated in the Plan.

Defendant distributes an annual enrollment guide describing the Plan to eligible employees, and open enrollment typically occurs online during the same time period each year. Plan participants elect their medical benefits during annual enrollment, and once made, the elections generally remain in effect for the remainder of the Plan year. Employee premiums are deducted from Plan participants' paychecks and remain in Defendant's general assets. During the relevant time period, the Plan was generally subject to and governed by the Employee Retirement Income Security Act ("ERISA") and other applicable federal laws.

Effective January 1, 2016, Defendant began imposing a "tobacco surcharge" on all Plan participants who use tobacco. (Doc. #121, p. 16; Doc. #122, p. 13.) A participant that identifies as a tobacco user pays the tobacco surcharge for medical coverage, which is deducted from his or her paycheck. The amount of the tobacco surcharge is shown on a line item on Plan participants' paystubs. The tobacco surcharges are placed in Defendant's general assets.

Beginning in Plan year 2016, a participant who identified as a tobacco user and enrolled in the Plan paid an additional $12 per week for medical coverage. Beginning in Plan year 2017 to the present, a participant who identified as a tobacco user and enrolled in the Plan paid an additional $24 per week for medical coverage. Plaintiffs identified as tobacco users and had a tobacco surcharge deducted from their paychecks.

---

opposition brief: "Though the parties may quibble over a few details, the material facts are not seriously in dispute."); Doc. #122, pp. 61, 64, 72, 76 (Defendant's opposition brief: "Count I present a purely legal question;" "Count II [] presents a legal question;" "Counts III and IV [] present a legal question;" "Counts V and VI turn on the meaning of the Plan's terms, not disputed facts.")

Defendant determines which Plan participants are tobacco users and thus subject to the tobacco surcharge through a "self-attestation." (Doc. #122, p. 11.) Plan participants must complete the self-attestation when they enroll for medical benefits each year. The "self-attestation" requires Plan participants to identify whether they have used tobacco products regularly within six months of enrolling in the Plan. It states that "[i]f you have indicated that you have used tobacco products and you choose to enroll in a medical plan, a surcharge will be added to your medical deduction." (Doc. #122, p. 11.)

Also beginning in Plan year 2016, Defendant offered Plan participants a way to avoid the tobacco surcharge by completing an alternative standard to stop using tobacco. One alternative standard was the completion of a free tobacco cessation course that Defendant offered to Plan participants. A participant that completed the alternative standard would have the tobacco surcharge removed prospectively for the rest of the Plan year. However, Defendant did not retroactively refund that participant for tobacco surcharges already paid. For Plan years 2016-2024, the self-attestation did not disclose to Plan participants the existence of an alternative standard that would avoid the tobacco surcharge.

In the middle of Plan year 2024, Defendant revised its tobacco surcharge policy. Under the new policy, Defendant would retroactively reimburse participants for tobacco surcharges already paid in a Plan year upon completion of an alternative standard, regardless of whether the participant actually stopped using tobacco. This change was retroactive to January 1, 2024, which meant that a participant would be reimbursed for the entire Plan year. However, none of the documents regarding the 2024 Plan year that were made available to participants at the time of enrollment mentioned the possibility of a retroactive reimbursement. The first enrollment guide that disclosed the availability of a retroactive reimbursement was for Plan year 2025.

Other than the 2024 change to provide retroactive reimbursements, Defendant has not made any other relevant policy changes from 2016 to the present regarding tobacco surcharges or retroactive reimbursements.

Plaintiffs have identified various documents that Defendant distributed to Plan participants from 2016 through 2026 that describe the tobacco surcharge, that do not disclose a participant will be retroactively reimbursed for a previously paid tobacco surcharge upon completion of an alternative standard, and/or do not state that the recommendations of a participant's physician will be accommodated. Defendant generally does not dispute the existence of or the contents of those documents. (Doc. #122, pp. 17-54.)

On October 9, 2024, Plaintiffs filed this lawsuit on behalf of themselves and on behalf of a putative class of Plan participants who paid the tobacco surcharge. Plaintiffs' First Amended Class and Representative Action Complaint (Doc. #56) asserts six separate counts under ERISA.

Count I is brought as a statutory violation under ERISA by Plaintiffs and the Class. This count alleges that Defendant's tobacco surcharge is a prima facie violation of ERISA's antidiscrimination rule, 29 U.S.C. § 1182(b), because it discriminates against Plan participants based on a health status-related factor. This count further alleges that although ERISA allows a tobacco surcharge when it is imposed pursuant to a wellness program, Defendant's program is not lawful because it failed to retroactively reimburse participants who paid the surcharge.

Count II is brought as a statutory violation under ERISA by Plaintiffs and the Class. This count alleges that Defendant's tobacco surcharge was not part of a lawful wellness program because Defendant's written materials to Plan participants failed to disclose statutorily required information.

Count III alleges breach of fiduciary duty under ERISA and is brought on behalf of the Plan. This count alleges in part that Defendant breached its fiduciary duties by improperly failing to deposit the tobacco surcharges collected into the Plan, and improperly using the tobacco surcharge to offset its own contribution amounts. Count IV is based on the same allegations as Count III but requests individual instead of Plan-wide relief.

Counts V and VI allege that Defendant violated the terms of the Plan under ERISA. In general, Plaintiffs allege that the terms of the Plan required Defendant to comply with all applicable laws but Defendant failed to do so. Count V is brought to recover individual equitable relief under 29 U.S.C. § 1132(a)(3);[2] Count VI is brought under 29 U.S.C. § 1132(a)(1)(B) to recover "benefits" allegedly owed to Plaintiffs based on their right to avoid paying the tobacco surcharge.

On April 9, 2026, the Court granted Plaintiffs' motion for class certification and certified the following classes:

(1) Statutory Violation Class—Counts I and II: All persons within the United States who paid Compass Group's tobacco surcharge from October 9, 2020, through the date of the class certification order.

(2) Plan Terms Violation Class—Counts V and VI: All persons within the United States who paid Compass Group's tobacco surcharge through the date of the class certification order.

(3) Individual Fiduciary Duty Class—Count IV: All persons within the United States who paid Compass Group's tobacco surcharge from October 9, 2018 through the date of the class certification order.

(4) Plan Fiduciary Duty Class—Count III: All persons within the United States who paid Compass Group's tobacco surcharge from October 9, 2018 through the date of the class certification order.

(Doc. #78, p. 25.)

[2] The parties' briefs cite to both 29 U.S.C. § 1132 and 29 U.S.C. § 502, which are the same statute. This Order does the same when citing that statute (and other corresponding statutes).

Plaintiffs and Defendant now move for summary judgment in their favor on all claims. The parties' arguments are addressed below.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of identifying "the basis for its motion, and must identify those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (cleaned up). If the moving party makes this showing, "the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial." *Id.* (quotation marks omitted). If there is a genuine dispute as to certain facts, those facts "must be viewed in the light most favorable to the nonmoving party." *Id.*

## III. DISCUSSION

To provide context to the claims and the parties' arguments, the following is a brief background on the ERISA provisions applicable here. ERISA's so-called nondiscrimination provision prohibits a group health plan from charging a premium based on a participant's health status-related factor. 29 U.S.C. § 1182(b)(1) provides that:

> A group health plan . . . *may not require any individual* (as a condition of enrollment or continued enrollment under the plan) *to pay a premium or contribution which is greater* than such premium or contribution for a similarly situated individual enrolled in the plan *on the basis of any health status-related factor* in relation to the individual[.]

29 U.S.C. § 1182(b)(1) (emphasis supplied). "[T]obacco use is a health status-related factor. Charging higher premiums to tobacco users is therefore facial health-factor discrimination."

*Baker v. 7-Eleven Inc.*, No. 3:25-CV-01609-X, 2026 WL 473252, at *5 (N.D. Tex. Feb. 19, 2026).

However, there is an exception to this antidiscrimination prohibition: a tobacco surcharge may be imposed if a plan shows the surcharge is part of a lawful "program of health promotion and disease prevention," 29 U.S.C. § 1182(b)(2)(B), also known as a wellness program. In particular, § 1182(b)(2)(B) provides that:

> *[n]othing in paragraph [b](1) shall be construed . . . to prevent a group health plan . . . from establishing premium discounts or rebates . . . in return for adherence to programs of health promotion and disease prevention*.

29 U.S.C. § 1182(b)(2)(B) (emphasis supplied).

To be a lawful wellness program, and thus impose a permissible tobacco surcharge, the plan must comply with provisions of the Public Health Service Act ("PHSA"), which are incorporated into ERISA. 42 U.S.C. §§ 300gg-4(1), (3).[3] The wellness program must provide for "[u]niform availability and reasonable alternative standards." 29 C.F.R. § 2590.702(f)(4)(iv). A reasonable alternative standard to avoid a tobacco surcharge may include the completion of a tobacco cessation course. *See* 29 C.F.R. § 2590.702, Examples 6, 7.

However, for an alternative standard to be deemed reasonable, "[t]he *full* reward under the wellness program shall be made available to all similarly situated individuals." 42 U.S.C. §§ 300gg-4(j)(3)(D); 29 C.F.R. § 2590.702(f)(4)(iv) (emphasis supplied). "A compliant wellness program must [also] disclose the availability of a 'reasonable alternative standard to qualify for the reward' in all plan materials. These disclosures must also provide . . . 'a statement that recommendations of an individual's personal physician will be accommodated.'" *Baker*, 2026

[3] These provisions "set forth criteria for an affirmative defense that can be used by plans . . . in response to a claim that the plan or issuer discriminated under the HIPAA nondiscrimination provisions." *Incentives for Nondiscriminatory Wellness Programs in Group Health Plans*, 78 Fed. Reg. 33158 at 33160 (June 3, 2013).

WL 473252, at *5 (citing and quoting 29 C.F.R. § 2590.702(f)(4)(v); 42 U.S.C. § 300gg-4(j)(3)(E)).

For purposes of consistency and clarity, the following discussion generally tracks the order of arguments in Plaintiffs' Suggestions in Support (Doc. #116) and Defendant's Suggestions in Support (Doc. #118.)

### A. Article III Standing

"Federal jurisdiction is limited by Article III of the Constitution to cases or controversies; if a plaintiff lacks standing to sue, the district court has no subject-matter jurisdiction." *Auer v. TransUnion LLC*, 902 F.3d 873, 877 (8th Cir. 2018). To establish standing, "a plaintiff must show [1] that he suffered an injury in fact that is concrete, particularized, and actual or imminent; [2] that the injury was likely caused by the defendant; and [3] that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021).

Defendant argues it is entitled to summary judgment because Plaintiffs lack Article III standing. Defendant argues that Plaintiffs Mehlberg and Deibel "produced no evidence that either of them were eligible for, participated in, or wanted to participate in a reasonable alternative standard." (Doc. #118, p. 25.) Mehlberg testified that he "liked to smoke" and had no desire to quit. (Doc. #118, p. 25.) Defendant states that Deibel was able to quit smoking when needed for medical reasons and chose to start smoking again. Defendant thus argues that Plaintiffs' payment of the tobacco surcharge "is traceable to their choice to continue smoking and to not engage with [Defendant] to obtain an alternative standard—not [Defendant's] design of the program regardless of whether that design was legal or not." (Doc. #118, p. 25.)

Upon review, the Court rejects Defendant's standing arguments. First, and as discussed throughout, Plaintiffs have presented evidence showing that they suffered an injury through an

unlawful tobacco surcharge. This is enough to show that they "suffered an injury in fact that is concrete, particularized, and actual or imminent[.]" *TransUnion*, 594 U.S. at 423. In particular, "[p]aying a fee they should not have been charged [is] a concrete injury, not an abstract one that does not actually exist." *McKeage v. Bass Pro Outdoor World, LLC*, 943 F.3d 1148, 1150 (8th Cir. 2019) (citations and quotations omitted).

Second, and as discussed throughout, Plaintiffs have presented evidence showing that Defendant "caused" their injuries by collecting the tobacco surcharge from their paychecks. *TransUnion*, 594 U.S. at 423. As also discussed below, Defendant has failed to show it operated a lawful wellness program that would allow it to impose the surcharge. Defendant's arguments regarding Plaintiffs' conduct—or lack thereof—do not show a lack of standing. Third, Plaintiffs' injuries can be "redressed by judicial relief" by requiring Defendant to repay the surcharges that it collected. *Id.* The Court finds Plaintiffs have Article III standing to pursue their claims relating to Defendant's tobacco surcharge.[4]

Defendant also argues that Plaintiffs lack standing to pursue their claim that Defendant's Plan materials to participants failed to disclose required information. Defendant argues that "*TransUnion* makes clear that the mere failure to receive required information does not establish

---

[4] Defendant's standing (and other) arguments heavily rely on *Spencer v. Campbell Soup Co.*, No. 24-9882 (RMB/SAK), 2026 WL 2111153 (D.N.J. July 22, 2026). *Spencer* found in part that a plaintiff lacked standing because "he neither allege[d] that he sought to avail himself of" Quit for Life which was the reasonable alternative standard "nor that the Plan's terms deterred him from doing so." *Id.* at *8, n. 2. The Court finds that *Spencer* does not alter the rulings above. First, it is an out-of-circuit district court case. Second, and more importantly, it is contrary to prior rulings of this Court and other courts who have held that an employee has standing to challenge tobacco surcharge fees imposed by the employer. *See Mehlberg v. Compass Grp. USA, Inc.*, No. 24-cv-04179-SRB, 2025 WL 1260700, at * 3-4 (W.D. Mo. Apr. 15, 2025) (finding that Plaintiffs had standing and rejecting Defendant's arguments at the motion to dismiss stage); *Wilson v. Whole Food Mkt., Inc.*, No. 1:25-CV-00085-DAE, 2026 WL 196517, at *6 n.6 (W.D. Tex. Jan. 20, 2026) (holding that plaintiffs had standing in part because "[t]hey paid a tobacco surcharge of $20 per paycheck . . . [t]hat injury is fairly traceable to Defendants' alleged conduct because . . . the surcharge can only be imposed if it is in connection with a *compliant* wellness program. Plaintiffs allege that Defendants are administering a non-compliant program[.]) (citing *Mehlberg* and other cases) (emphasis in original).

concrete injury. Plaintiffs must show that the informational deprivation caused some ‘downstream consequence.’ *TransUnion*, 594 U.S. at 442[.]” (Doc. #118, p. 25.)

Upon review, the Court rejects Defendant’s arguments. In *Bailey v. Sedgwick Claims Mgmt. Servs., Inc.*, No. 2:24-cv-02749-TLP-TMP, 2025 WL 2779899 (W.D. Tenn. Sept. 26, 2026), the court rejected an argument similar to that raised by Defendant. *Bailey* explained that:

> Sedgwick asserts that Plaintiff’s failure to notify claims are ‘informational injuries,’ requiring her to show ‘downstream consequences’ to support standing. Sedwick’s assertion [] arises from a misunderstanding of Plaintiff’s alleged injury. Plaintiff need not assert ‘downstream consequences’ here because Plaintiff is not alleging that the failure to notify injured her. Instead, she alleges that the failure to notify, as explained above, would make the surcharge itself illegal. And so, Plaintiff alleges that, by paying the allegedly unlawful surcharge, she has suffered a direct injury.

*Id.* at * 6 (internal citations omitted).

The Court finds *Bailey* persuasive and adopts its reasoning. The Court therefore agrees with Plaintiffs that “a compliant disclosure is a prerequisite to lawfully levying a tobacco surcharge. Because [Defendant] did not meet this prerequisite, it took money from Plaintiffs in violation of the law. That out-of-pocket loss confers standing.” (Doc. #121, p. 50.) For these reasons, and the additional reasons stated by Plaintiffs, Defendant’s motion for summary judgment for lack of Article III standing is denied. The Court finds the record shows that Plaintiffs have Article III standing.

**B. Statutory Standing**

Defendant argues it is entitled to summary judgment because Plaintiffs lack statutory standing. When, as here, “a plaintiff alleges injury to rights conferred by statute, two separate standing-related inquiries are implicated: whether the plaintiff has Article III standing (constitutional standing) and whether the statute gives that plaintiff authority to sue (statutory standing).” *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 934 (8th Cir. 2012).

"Statutory standing is simply statutory interpretation: the question it asks is whether Congress [] has accorded *this* injured plaintiff the right to sue the defendant to redress his injury." *Id.* (citation and alterations omitted) (emphasis in original).

Defendant contends that Congress allows "health plans to impose a tobacco surcharge when they offer a way to avoid the surcharge to a defined subset of individuals for whom satisfying the otherwise applicable standard (here, tobacco cessation) is 'unreasonably difficult due to a medical condition' or 'medically inadvisable.' 42 U.S.C. § 300gg-4(j)(3)(D)(i)(I)-(II)." (Doc. #118, p. 26.) Defendant argues that Plaintiffs lack statutory standing because neither "claimed that quitting tobacco was medically inadvisable or unreasonably difficult due to a medical condition. As a result, they did not satisfy either statutory condition entitling them to a reasonable alternative standard. . . . [Defendant] owed them no statutory duty to provide the reasonable alternative standard on which their claims depend." (Doc. #118, p. 28.)

Upon review, the Court rejects this argument. Plaintiffs' claims arise under 29 U.S.C. § 1182(b)'s nondiscrimination provision which provides, in relevant part, that "any individual" cannot be required to pay a premium or contribution based on any health status-related factor. Plaintiffs have statutory standing under § 1182.

Defendant's reliance on § 300gg-4(j)(3), which is part of the PHSA, is unavailing.[5] That section explains the required components of a lawful wellness program. In part, it states "[t]he full reward under the wellness program shall be made available to all similarly situated individuals. For such purpose, *among other things* . . . The reward is not available to all similarly situated individuals for a period unless the wellness program allows" consideration of

[5] "In 2010, Congress amended the Public Health Safety Act ('PHSA') to add wellness program requirements and specifically incorporated Section 2705 [§ 300gg] of the PHSA into ERISA." *Bokma v. Performance Food Grp., Inc.*, No. 3:24CV686 (DJN), 2025 WL 1452042, at *1 (E.D. Va. May 20, 2025)

whether it "medically inadvisable" and "unreasonably difficult" to satisfy the alternate standard. 42 U.S.C. § 300gg-4(j)(3)(D)(i)(I)-(II) (emphasis supplied).

However, those requirements "set forth criteria for an affirmative defense that can be used by plans . . . in response to a claim that the plan or issuer discriminated under the HIPAA nondiscrimination provisions." *Incentives for Nondiscriminatory Wellness Programs in Group Health Plans*, 78 Fed. Reg. 33158, 33160 (June 3, 2013). As discussed below, the record shows that Defendant did not provide the "full reward" to participants which is another required component of 42 U.S.C. § 300gg-4(j)(3)(D). In particular, Defendant "maintained a uniform policy that did not offer a reasonable alternative standard to *anyone*. It denied the 'full reward' to all its employees, even if they did in fact have a medical condition that made quitting smoking unreasonably difficult or inadvisable." (Doc. #121, p. 54 n.6) (emphasis in original). Section 300gg-4 does not show that Plaintiffs lack statutory standing under § 1182.

A 2013 regulation further undercuts Defendant's statutory standing argument. Under 29 C.F.R. § 2590, a reasonable alternative standard must be made available to "*any* individual who does not meet the initial standard"—regardless of medical condition. 29 C.F.R. § 2590.702(f)(4)(iv)(A) (emphasis added). Defendant argues this regulation is inconsistent with § 300-gg and is invalid because it "replaces [th]e statutory structure with a wholly different rule: everyone gets an alternative, regardless of whether they are medically unable to comply." (Doc. #118, p. 28.)

Upon review, the Court finds that this regulation is not inconsistent with the statute. The Court agrees with Plaintiffs that the statue provides:

> 'among other things: [t]he full reward is not available [] unless . . .' *See* § 300gg 4(j)(3)(D) (alterations to original). That phrase-"among other things"-clearly denotes that the proceeding definition is partial, not comprehensive. In adopting this open-ended definition, Congress called

> upon the Department of Labor's expertise in fleshing out the requirement. *See McNeil [v. Marriott Int'l, Inc.*, No. 25-2975-TDC], 2026 WL 2406176, at *7 [(D. Md. Aug. 18, 2026)]. The Supreme Court recently confirmed that oftentimes the 'best reading' of a statute is that it 'empower[s] an agency to prescribe rules to 'fill up the details' of a statutory scheme." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 395 (2024). This is one such instance.

(Doc. #121, pp. 53-54) (parenthetical omitted).

The Court agrees with *McNeil* and similar case law, and rejects Defendant's arguments. (Doc. #131, pp. 53-54.) For these reasons, and the additional reasons stated by Plaintiffs, Defendant's motion for summary judgment for lack of statutory standing is denied. The Court finds that Plaintiffs have statutory standing.

### C. Count I—ERISA Statutory Violation

In Count I, Plaintiffs allege that Defendant's surcharge violated the nondiscrimination provision under 29 U.S.C. § 1182(b). (Doc. #56, citing 29 U.S.C. § 1182(b); 29 U.S.C. § 1132(a)(3)). The parties do not dispute the material facts on this claim. The parties agree that since 2016, Defendant has imposed a tobacco surcharge on all Plan participants who use tobacco. The parties agree that "[f]or Plan Years 2016 through 2023 . . . [Defendant] did not [retroactively] reimburse tobacco charges that were already paid by the Plan participant during that Plan Year up until their completion of the tobacco cessation program." (Doc. #122, p. 14.) The parties agree that from 2016 through the end of 2023, Defendant removed the tobacco surcharge prospectively for the remainder of the Plan year once a participant completed a cessation course.

Based on these facts, the parties agree that "Count I presents a purely legal question" because "there are not factual disputes to adjudicate." (Doc. #121, p. 55; Doc. #122, p. 61; Doc. #131, p. 54.) The legal question is whether the "full reward" requirement under 42 U.S.C. § 300gg-4(j)(3)(D) requires a Plan to retroactively reimburse a participant that completes the

alternative standard. Plaintiff argues retroactive reimbursement is required, that Defendant's wellness program was unlawful because it did not provide such reimbursement (the "full reward"), and that Defendant cannot avail itself of the exception to the nondiscrimination provision. Defendant argues that a retroactive reward is not required, that its prospective removal of the surcharge complies with the full reward requirement, and that its wellness program therefore does not violate the nondiscrimination provision.

Upon review of the parties' arguments, the relevant statutes and regulations, and applicable case law, the Court agrees with Plaintiffs. The Court has already ruled—in the motion to dismiss context—that the "full reward" requires retroactively reimbursing a participant that completes the alternative standard during the plan year. *Mehlberg*, 2025 WL 1260700, at * 4.[6] However, because that was an interlocutory ruling, the Court will revisit this issue anew in light of subsequent case law and the parties' renewed arguments as requested by Defendant. (Doc. #118, p. 29 n. 7.)

"ERISA, through the PHSA," requires that the "*full* reward under the wellness program shall be made available to all similarly situated individuals[.]" *Leslie*, 2026 WL 950490, at *8 (quoting 42 U.S.C. § 300gg-4(j)(3)(D) (emphasis in original). "The term 'full award' is not defined" in the statute." *Id.*

The Court finds that the term "full award" under § 300gg-4(j) is not ambiguous. "The word 'full' is defined as 'containing all that possibly can be placed or put within,' Full, Merriam-Webster's Third New International Dictionary (2002), and 'reward' is defined in the PHSA as

[6] According to Plaintiffs, the holding in *Mehlberg* "has since garnered the approval of district courts across the county." (Doc. #116, p. 44) (citing *Leslie v. Rentokil N. Am., Inc.*, No. 5:25-cv-01423-JLS, 2026 WL 950490, at *10 (E.D. Pa. Apr. 8, 2026); *Bokma v. Performance Food Group*, 783 F.Supp.3d 882, 904-05 (E.D. Va. 2025); *Waggoner v. The Carle Found.*, No. 2:24-cv-02217, at *37-46 (C.D. Ill. Sep. 16, 2025); *Wilson v. Whole Food Mkt., Inc.*, No. 1:25-CV-00085-DAE, 2026 WL 196517, at *9-10 (W.D. Tex. Jan. 20, 2026); *McNeil*, 2026 WL 2406176, at *8-10.

including 'the absence of a surcharge.' 42 U.S.C. § 300gg-4(j)(3)(A)." *McNeil*, 2026 WL 2406176, at *9. The Court agrees with Plaintiffs that construing "full reward" to mean prospective reimbursement only would mean "the best a tobacco user could hope for would be a *partial* reward for a given plan year—never the 'full reward'" required by the statute. (Doc. #121, p. 56) (emphasis in original). "Full reward" thus necessarily requires retroactively reimbursing a participant that completes the alternative standard mid-year. *McNeil*, 2026 WL 2406176, at * 9 ("[B]ecause a smoking cessation program necessarily is completed over a period of time, a wellness program that does not stop charging the tobacco surcharge until after the participant completes the smoking cessation program, and does not retroactively reimburse the participant for surcharges paid earlier in the plan year, fails to provide the 'full reward.'").[7]

A contrary construction would also allow the type of discrimination prohibited by 29 U.S.C. § 1182(b)(1). As explained in *Wilson*,

> If the Court were to adopt Defendants' interpretation of 'full reward,' group health plans could, in theory, offer the reasonable alternative standard at the very end of the plan year and participants would not be able to recover their prior payments. This would effectively allow plans to discriminate on the basis of a health factor for most of the plan year. The Court declines to interpret the statute in a way that leads to that result.

2026 WL 196517, at *10. The Court agrees with and adopts the reasoning in *Wilson*.

For these reasons, the Court "does not consider the term 'full reward' to be ambiguous;" it requires retroactive reimbursement under § 300gg-4(j)(3). *Leslie*, 2026 WL 950490, at *8.

The Court's conclusion is supported by additional authority even if "full reward" under the statute was ambiguous or otherwise required additional clarity. In 2013, the Department of

[7] Plaintiffs note that a plan could provide the full reward without retroactively reimbursing surcharge payments by, for example, reducing a participant's premiums after the completion of a cessation program. (Doc. #121, pp. 56-57 n. 8.) That fact pattern is not before the Court. The Court's terminology of retroactively reimbursing surcharge payments corresponds to the facts and law applicable to this case.

Labor along with the Treasury of Health and Human Services issued a preamble to 29 C.F.R. § 2590.702. The preamble states that "[i]f a calendar year plan offers a health-contingent wellness program with a premium discount and *an individual who qualifies for a reasonable alternative standard satisfies that alternative on April 1, the plan or issuer must provide the premium discounts for January, February, and March to that individual*." 78 Fed. Reg. at 33163 (emphasis added). This guidance is entitled to deference and comports with a plain reading of the statute. *Auer v. Robbins*, 519 U.S. 452, 461 (1997) (recognizing that an agency's guidance is controlling unless "plainly erroneous or inconsistent with the regulation"); *Hillsborough Cnty., Fla. v. Automated Med. Lab'ys, Inc.*, 471 U.S. 707, 718 (1985) (recognizing that "agencies normally address problems in a detailed manner and can speak through a variety of means, including . . . preambles[.]")

Defendant's arguments to the contrary are rejected. Among other things, Defendant argues that:

> Congress expressly provided that nothing in the statute should be construed "to prevent a group health plan . . . from establishing premium discounts or rebates . . . for adherence to programs of health promotion and disease prevention." *Id.* at § 300gg-4(b)(2)(A)-(B) (emphasis added). As the *Spencer* court recognized, "adherence" reflects Congress's choice to allow an incentive-based structure. 2026 LX 311841 at *50. Plaintiffs' interpretation would invert that structure by allowing participants to wait until the very end of the year to complete a cessation program and then recover all surcharges paid in the preceding year during the period of non-adherence.

(Doc. #118, p. 30.)

This argument is rejected. As stated above, adopting Defendant's prospectively only arguments could allow a health care plan to discriminate against participants for at least part of a plan year. In addition, this Court and others have previously rejected this argument. *Waggoner* explained that:

> The court in *Mehlberg* found "no conflict between a statutory requirement that plan participants 'adhere' to a wellness program to become eligible for the 'full reward,' and a statutory and regulatory requirement—expressed by the phrase 'full reward'—that they be refunded the full amount of the annual surcharge if they do so." *Mehlberg*, 2025 WL 1260700, at *6 (cleaned up); *see also Bokma*, — F.Supp.3d —, 2025 WL 1452042, at *15-16 ("Lastly, the court [in *Mehlberg*] found 'no conflict' between ERISA's statutory requirement of 'adherence' to a wellness program to become eligible for the full reward and the *separate requirement* that participants 'be refunded the full amount of the annual surcharge if they do so.'" (emphasis added)). As these are, again, separate and distinct requirements, the court sees no reason to depart from the sound holding in *Mehlberg*.

2025 WL 4743424, at * 20.

Defendant's prospective only argument also emphasizes that "Congress provided that a reward may include both 'the absence of a surcharge' and a 'rebate of a premium or contribution.' 42 U.S.C. § 300gg-4(j)(3)(A)." (Doc. #118, p. 30.) According to Defendant:

> Section 300gg-4(j)(3)(D) requires the "full reward" to be available to similarly situated individuals, while § 300gg-4(j)(3)(A) separately identifies an "absence of a surcharge" and a "rebate of a premium or contribution" as two distinct forms of reward. Compass selected the former. Plaintiffs' construction collapses the two distinct forms of rewards in § 300gg-4(j)(3)(A) by converting every prospective absence of a surcharge into a retroactive rebate whenever a participant qualifies midyear.

(Doc. #131, p. 56); *see also* (Doc. #118, p. 30).

This argument is unpersuasive because it focuses on "reward" without giving effect to "full." The "absence of a surcharge" and "a rebate of a premium or contribution" do not speak to whether a "full reward" is prospective or retroactive. The Court agrees with Plaintiffs that these terms "describe[] the *forms* a reward may take." (Doc. #121, p. 58) (emphasis in original). "A separate provision, subsection 42 U.S.C. § 300gg-4(j)(3)(D) imposes a separate requirement about *how much* of that reward must be made available, and to whom. A plan sponsor that elects 'absence of a surcharge' as its reward form must still make the *full* absence of a surcharge

available to a participant who satisfies the alternative standard." (Doc. #121, p. 58) (emphasis in original).

Defendant also argues the "2013 Regulation merely repeats the statute's 'full reward' requirement" and thus does not warrant deference under the "anti-parroting doctrine." (Doc. #118, p. 31; Doc. #131, p. 56.) This doctrine provides that "[a]n agency . . . gets no special authority to interpret its own words when, instead of using its expertise and experience to formulate a regulation, it has elected merely to paraphrase the statutory language." *Kisor v. Wilkie*, 588 U.S. 558, 578 n.5 (2019) (citations and quotation marks omitted). However, as stated above, the Court finds "full reward" under the statute to be unambiguous and the 2013 Regulation does not alter that conclusion.

Even if "full reward" under the statute is ambiguous, the 2013 Regulation is entitled to deference because the anti-parroting doctrine does not apply. The Court agrees with Plaintiffs that:

> Here it was Congress that was copying the agency, not the other way around. In 2006, the agencies promulgated, by way of notice-and-comment rulemaking, regulations for wellness programs, including the five requirements necessary for such programs to be lawful. *See* 29 C.F.R. § 2590.702 (2007); *Nondiscrimination and Wellness Programs in Health Coverage in the Group Market*, 71 Fed. Reg. 75014 (Dec. 13, 2006). In passing the 2010 Patient Protection and Affordable Care Act, "Congress adopted this language almost verbatim", "which had already been developed and issued through formal rulemaking." *Waggoner*, 2025 WL 4743424, at *21. As [Defendant] itself recognized, "Congress ratified the 2006 [r]egulation" in the Affordable Care Act. That ratification of the agencies' handiwork does not undermine the case for *Auer* deference—it bolsters it.

(Doc. #121, p. 60.)

Finally, Defendant relies on a recently posted set of Frequently Asked Questions posted to the Department of Labor's ("DOL") website on August 26, 2026. U.S. Dep't of Labor, FAQs About Affordable Care Act and Health Insurance Portability and Accountability Act

Implementation Part 74 (Aug. 26, 2026) (Question 1). In relevant part, the FAQ stated that the ACA itself "did not specify" whether "full reward" means the reward for the entire plan year or only the portion after a participant satisfies a reasonable alternative standard, and that the text of the 2013 Regulation "does not clearly require retroactive application of the reward." (Doc. #118, p. 24.) The DOL announced that it would not take enforcement action against plans that provide the reward from the time the reasonable alternative standard is satisfied instead of retroactively to the beginning of the plan year.

Upon review, the DOL FAQ does not alter the rulings herein. First, for the reasons discussed above, the Court finds "full reward" under the statute to be unambiguous and requires retroactive reimbursement. Second, the FAQ does not affect or bind private litigants, including Plaintiffs and Defendant. It merely addresses whether federal Departments will seek, or not seek, enforcement actions. In addition, the FAQ is not entitled to deference in this case. The Court agrees with Plaintiffs that:

> Sub-regulatory guidance of this sort is entitled to a court's deference only if it "reflect[s] fair and considered judgment" of the agency and does not "create[] unfair surprise" by abruptly changing positions from an earlier interpretation. *Kisor*, 588 U.S. at 579; *see also Wyeth v. Levine*, 555 U.S. 555, 577 (2009) (agency interpretation "does not merit deference" when it "reverse[d] the FDA's own longstanding position without providing a reasoned explanation"). The Department of Labor has long advanced the position *Secretary of Labor v. Macy's, Inc.* that the regulation requires reimbursement of the surcharge for the entire plan year. . . . To be credited by courts, a "regulatory interpretation must be the agency's authoritative or official position, rather than any more ad hoc statement not reflecting the agency's views." *Kisor*, 588 U.S. at 559.

For all these reasons, and for the additional reasons stated by Plaintiffs, the "full reward" required Defendant to retroactively reimburse participants that completed the alternative standard. Defendant did not comply with that requirement from January 1, 2016, through

December 31, 2023.[8] Therefore, the Court grants summary judgment in favor of Plaintiffs on Count I. Defendant's motion for summary judgment on Count I is denied.

### D. Count II—ERISA Statutory Violation

Count II also asserts an ERISA statutory violation based on Defendant's tobacco surcharge. (Doc. #56, citing 29 U.S.C. §§ 1132(a)(3), 1182(b)). Plaintiffs allege that Defendant's wellness program was unlawful and impermissibly imposed the tobacco surcharge because the plan materials distributed by Defendant to plan participants did not include disclosures required by statute and regulations.

In addition to the "full reward" requirement, a complaint wellness plan must "clearly describe the program and the availability of a reasonable alternative standard" in its "plan materials" to participants. *Baker*, 2026 WL 473252, at *4. In particular, 42 U.S.C. § 300gg-4(j)(3)(E) requires that "the plan . . . *shall* disclose in *all* plan materials describing the terms of the wellness program the availability of a reasonable alternative standard[.]" *Id.* (emphasis supplied). Under the applicable regulations, the "plan or issuer must disclose . . . in any disclosure that an individual did not satisfy an initial outcome-based standard, the availability of a reasonable alternative standard to qualify for the reward." 29 C.F.R. § 2590.702(f)(4)(v).

"[A] plan disclosure that references a premium differential based on tobacco use . . . must include this disclosure." 78 Fed. Reg. 33158 at 33166. Further, all plan materials that "disclos[e] that an individual did not satisfy an initial [] standard" must include "a statement that recommendations of an individual's personal physician will be accommodated." 29 C.F.R. § 2590.702(f)(4)(v). A plan must make these disclosures in order to lawfully impose a tobacco

[8] As stated above, Defendant changed its tobacco policy in 2024 and has provided retroactive reimbursements as of January 1, 2024. Plaintiffs thus acknowledge that "the relevant period for which Plaintiffs seek to recover under this theory ends on December 31, 2023." (Doc. #121, p. 55 n.7.)

surcharge and avail itself of the antidiscrimination exception. 42 U.S.C. § 300gg-4(j)(3)(E). However, there is an exception to these disclosure requirements; "[i]f plan materials disclose that such a program is available, without describing its terms," the foregoing disclosures are not required. 42 U.S.C. § 300gg-4(j)(3)(E); 29 C.F.R. § 2590.702(f)(4)(v).

Plaintiffs argue they are entitled to summary judgment because for every Plan year at issue (2016 to 2026), at least one document distributed by Defendant to participants failed to include a required disclosure.[9] Defendant argues it is entitled to summary judgment because (among other things) the documents Plaintiffs rely upon fall under the exception discussed above (e.g., the documents disclose that a program is available, without disclosing its terms). Defendant also argues in part the Department of Labor lacked authority to issue the regulation requiring the physician accommodation disclosure.

Upon review, the Court finds that Plaintiffs are entitled to summary judgment on Count II. Plaintiffs have presented evidence that from Plan year 2016 through 2026, at least one of Defendant's plan documents did not provide the requisite disclosures. The Court provides illustrative examples for purposes of resolving the pending motions.

First, Defendant's self-attestation form. For Plan years 2016 through 2024, the self-attestation form stated in relevant part:

> Tobacco Statement:
>
> Do you use tobacco products regularly?
>
> You are considered a tobacco user if you use any of these [foregoing] tobacco products regularly (four or more times per week [] within six months of enrollment.
>
> Medical

[9] The time periods applicable to this case are further discussed below. However, the Court notes that Count II is based on documents from 2020 to the present. (Doc. #116, p. 51 n.1.) Documents from 2016 to 2019 are applicable to Counts V and VI. For purposes of simplicity, this section addresses documents from 2016 to the present.

> Tobacco Surcharge
>
> If you have indicated that you have used tobacco products and you choose to enroll in a medical plan, a surcharge will be added to your medical deduction.

(Doc. #116, p. 49.)[10] The parties agree that for Plan years 2016 through 2024, Defendant's tobacco attestation form did not disclose to Plan participants the existence of an alternative standard to avoid the tobacco surcharge. (Doc. #122, p. 18.)

Based on these facts and applicable law, Plaintiffs are entitled to summary judgment on Count II for Plan years 2016 through 2024. This attestation form is a "plan material describing the terms" of Defendant's wellness program. *See* 42 U.S.C. § 300gg-4(j)(3)(E). In particular, the attestation form was a plan material because it was issued by the Plan and determined—at least in part—how much participants paid for medical coverage. The attestation form also described and disclosed the terms of Defendant's wellness program; tobacco users "would be subject to the surcharge." (Doc. #122, p. 18.) This document "reference[d] a premium differential based on tobacco use," yet did not disclose "the availability of a reasonable alternative standard." 29 C.F.R. § 2590.702(f)(4)(v); 42 U.S.C. § 300gg 4(j)(3)(E); 78 Fed. Reg. 33158 at 33166.[11]

Under these circumstances, and contrary to Defendant's arguments, the tobacco attestation form did not qualify for the exception under 42 U.S.C. § 300gg-4(j)(3)(E) (disclosure is not required if a document merely discloses that such a program is available, without describing its terms), or any regulation. The attestation form was thus required—but failed—to

---

[10] The parties do not dispute that "the self-attestation language was substantially similar from 2016 through 2024." (Doc. #122, p. 17.)

[11] The latter citation is a preamble to a regulation and "is an example of materials to which strong deference is due when construing regulations[.]" *Scott v. City of New York*, 592 F. Supp. 2d 386, 399 (S.D.N.Y. 2008).

disclose the existence of an alternative way to avoid the surcharge. It did not. Consequently, Plaintiffs are entitled to summary judgment for Plan years 2016 through 2024.

Plaintiffs are also entitled to summary judgment on Count II because Defendant failed to include at least one required disclosure for Plan years 2025 and 2026. The parties do not dispute that Defendant's 2025 and 2026 Enrollment Guides were made available to all participants, describe the tobacco surcharge, and reference a premium differential based on tobacco use. (Doc. #122, pp. 52-54.) Both Enrollment Guides are thus subject to the disclosure requirements under 42 U.S.C. § 300gg-4(j)(3)(E). However, neither the 2025 nor the 2026 Enrollment Guides include a statement that a participant's individual personal physician will be accommodated as required by 29 C.F.R. § 2590.702(f)(4)(v). Plaintiffs are therefore entitled to summary judgment for Plan Years 2025 and 2026.

Defendant argues that "the DOL lacked authority to add the physician accommodation disclosure requirement via its 2013 Regulation" because the "statute imposes no such disclosure requirement." (Doc. #118, pp. 33-34; Doc. #131, pp. 59-60.) The Court rejects this argument and agrees with Plaintiffs that:

> "ERISA empowers the Secretary of Labor to prescribe such regulations as he finds necessary or appropriate to carry out the statutory provisions securing employee benefit rights." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 831 (2003). And the PHSA confirms that "[n]othing in this section shall be construed as prohibiting the [administrative agencies] from promulgating regulations in connection with this section." 42 U.S.C. 300gg-4(n). Yet [Defendant's] reading would prohibit the agencies from promulgating a regulation in connection with the PHSA's wellness program requirements. It cannot, then, be the "best reading" of the statute. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 395 (2024) (recognizing that the "best reading" of a statute may be that it "empower[s] an agency to prescribe rules to 'fill up the details' of a statutory scheme.") The agencies had ample authority to promulgate the physician accommodation disclosure requirement. Even the recent 2026 FAQ guidance [Defendant] cites extensively confirms that it remains in effect.

(Doc. #130, pp. 21-22) (some citations omitted).

For these reasons, and the additional reasons stated by Plaintiffs, Plaintiffs are entitled to summary judgment on Count II. Defendant's motion for summary judgment on Count II is denied.

**E. Counts III and IV**

Counts III and IV allege that Defendant breached its fiduciary duties to the Plan. (Doc. #56, citing inter alia, 29 U.S.C. § 1109, 502(a)(3)). Count III is asserted on behalf of the Plan; Count IV is asserted for individual relief. Plaintiffs argue they are entitled to summary judgment in part because Defendant improperly commingled the tobacco surcharges with its general assets and failed to transfer the surcharges to the Plan as a separate entity. Defendant argues it is entitled to summary judgment because "Plaintiff cannot establish [Defendant] was acting as a fiduciary with respect to the challenged conduct," and because "Plaintiffs cannot prove a loss to the Plan." (Doc. #118, p. 35.)

To prevail on this claim, a plaintiff must establish "that the defendant acted as a fiduciary, breached its fiduciary duties, and thereby caused a loss to the Plan." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009). ERISA provides that a company is a fiduciary when it "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets." 29 U.S.C. § 1002(21)(A). Under 29 C.F.R. § 2510.3-102(a)(1), "the assets of the plan include amounts . . . that a participant . . . pays to an employer, or amounts that a participant has withheld from his wages by an employer, for contribution . . . to the plan, as of the earliest date on which such contributions . . . can reasonably be segregated from the employer's general assets." The reasonable segregation is subject to a 90-day maximum period.

29 C.F.R. § 2510.3-102(c). Under 29 U.S.C. § 1103, the plan assets "shall be held in trust," "shall never inure to the benefit of any employer," and "shall be held for the exclusive purposes of providing benefits to participants in the plan[.]"

Upon review, the Court finds that Plaintiffs are entitled to summary judgment on Counts III and IV. The parties do not dispute the material facts relevant to these claims. Under those facts and the law discussed above, the Court finds that the tobacco surcharge fees were employee contributions and "plan assets." 29 C.F.R. § 2510.3-102(a)(1). Those funds could have been segregated promptly after the payroll deduction because they were deducted under a unique payroll code titled "Tobacco Surcharge." The record shows that Defendant never segregated those funds and instead placed them into its general assets. Consequently, Defendant had a fiduciary duty with respect to the tobacco surcharge funds because they were plan assets. *See* 29 U.S.C. §§ 1102(21)(A), 1103; 29 C.F.R. § 2510-3-102(a)(1).

Defendant's reliance on the "reasonable segregation" and 90-day maximum period under 29 C.F.R. § 2510.3-102(c) is unavailing under these facts. The Court agrees with Plaintiffs that the "90-day marker is the absolute outer bounds—that '[m]aximum time period'—by which the withheld funds must be placed into trust. 29 C.F.R. § 2510.3-102(c). It does not, contrary to [Defendant's] suggestion, grant employers three months of impunity to commingle the funds at their leisure. Particularly where, as here, the funds were easily segregable from the beginning." (Doc. #121, p. 67.)

Plaintiffs have also shown that Defendant breached its fiduciary duties with respect to the Plan assets and that they suffered damages. For the reasons stated above, Defendant breached its fiduciary duties by failing to place the tobacco surcharge fees in trust and instead commingling them with its own assets. 29 U.S.C. § 1103(a) (stating that "all assets of an employee benefit

plan shall be held in trust"). Defendant argues in part that even if it acted as a fiduciary, Plaintiffs cannot show a breach or a loss to the Plan because "the surcharge amounts were used *solely* to pay participants' medical claims and Plan expenses." (Doc. #122, p. 75) (emphasis in original).

However, when, as here, "the plaintiff shows a breach of duty and a prima facie case of loss to the plan, the trustee then has the burden of persuasion to show that the loss was not caused by the breach." *Roth v. Sawyer-Cleator Lumber Co.*, 16 F.3d 915, 920 (8th Cir. 1994). Defendant has not carried this burden and its arguments are not supported by the record. It is undisputed that Defendant paid medical claims for participants. However, "this says nothing about what became of the *tobacco surcharge funds*." (Doc. #130, p. 29) (emphasis in original). In particular, "[t]here is nothing in the recording indicating that all those funds (or . . . any of them) went toward participants' medical care." (Doc. #130, p. 24.) The Court agrees with Plaintiffs that "it would likely be impossible to untangle those funds once they've been commingled with the company's general assets. That's precisely why the requirement of a separate trust account is a cornerstone of employee benefits law." (Doc. #130, p. 29.)[12]

Finally, Defendant argues in part that "the law is clear that self-funded, unfunded health plans—like the Plan here—are not required to hold employee contributions in trust or any other separate account." (Doc. #122, p. 72.) However, Defendant does not offer applicable authority to support this proposition, and adopting it would run counter to 29 U.S.C. §§ 1002 and 1103.

Under these undisputed facts, Plaintiffs are entitled to summary judgment on Counts III and IV. Defendant's motion for summary judgment on Counts III and IV is denied.

[12] Defendant also argues that "Plaintiffs identify no evidence that [Defendant] deviated from the terms of the wellness program or exercised any discretion in implementing those terms. As such, they cannot establish the threshold requirement of fiduciary status as to the program's implementation." (Doc. #118, p. 36.) However, as discussed below, the Court finds that Defendant did violate the terms of the Plan.

### F. Counts V and VI

In Count V and VI, Plaintiffs assert that Defendant violated the terms of the Plan Document. (Doc. #56, citing 29 U.S.C. §§ 502(a)(3) (Count V); 502(a)(1)(B) (Count VI)). Under ERISA, a participant may file a lawsuit to "enforce [] the terms of the plan." 29 U.S.C. § 1132(a)(3). ERISA also allows a participant "to recover benefits due to him under the terms of his plan." 29 U.S.C. § 1132(a)(1)(B).

Defendant's Medical Plan, which is part of the Plan, contains the following provisions:

> 'notwithstanding any provision to the contrary, the Plan shall be administered in accordance with those provisions of the Affordable Care Act and the Public Health Services Act,' and '[t]he Plan is intended to operate in compliance with [] ERISA and other applicable Federal laws, including, without limitation: [] HIPAA . . . and the Affordable Care Act.'

(Doc. #116, p. 57; Doc. #122, p. 55).[13] Plaintiffs argue they are entitled to summary judgment on Counts V and VI because Defendant's tobacco surcharge policy was not administered lawfully and was not in compliance with federal law. Defendant argues in part that "general statements that the Plan will comply with applicable law do not transform every alleged statutory violation into an independent claim for benefits or equitable relief under the Plan." (Doc. #122, p. 77.) The parties' primary dispute is whether the Plan's provisions "create enforceable contractual rights beyond Plaintiffs' statutory claims." (Doc. #122, p. 76.) The Court finds that they do.

"Courts construe ERISA plans, as they do other contracts, by looking to the terms of the plan as well as to other manifestations of the parties' intent." *US Airways, Inc. v. McCutchen*, 569 U.S. 88, 102 (2013) (citation and quotation marks omitted). When "the terms of a statute are

[13] The foregoing terms were consistent from January 1, 2013, through December 31, 2024. The current version contains similar language, including that the "Plan must be construed" to comply with applicable laws. (Doc. #122, p. 55.)

incorporated into a contract, they [generally] become subject to principles of contract law." *Raetsch v. Lucent Techs., Inc.*, No. 05–cv–5134(PGS), 2006 WL 3068648, at *4 (D.N.J. Oct. 27, 2006). Courts have held that if a federal law is adopted by and incorporated into an ERISA plan, plan participants may sue to enforce compliance with that law. *Id.* at *4-5 ("[T]he Court finds that by adoption of IRC § 420 language and its incorporation into the Plan, it became a substantive term of the Plan and enforceable as any other provision of the Plan . . . IRC § 420 as incorporated becomes enforceable by the plan participants, as any other contract term."); *see also Dierkes v. Blue Cross & Blue Shield*, 991 S.W.2d 662, 667 (Mo. 1999) (recognizing that if an insurer "represents that its insurance meets 'all state and federal guidelines' applicable to such policies," that is a "contractual provision requir[ing] compliance[.]").

Based on this case law and the Plan language, the Court finds that Plaintiffs are entitled to summary judgment. The Plan unambiguously states that it "shall be administered in accordance with" and "is intended to operate in compliance" with ERISA, the PHSA, ACA, HIPPA, and "other applicable Federal laws." (Doc. #116, p. 57.) Through these terms, Defendant promised to comply with federal law. For the reasons discussed above, Defendant did not comply with federal law and breached that promise. Plaintiffs are entitled to enforce that promise. *Raetsch*, 2006 WL 3068648, at *4-5; *see also A.F. ex rel. Legaard v. Providence Health Plan*, 35 F. Supp. 3d 1298, 1304-05 (D. Or. 2014) ("ERISA provides courts with the power to enjoin violations of state law regulating insurance that have become part of the terms of the plan"). Under these circumstances, Plaintiffs are entitled to summary judgment on Counts V and VI.

Defendant's arguments to the contrary are not persuasive. Defendant argues in part that "generic representations of legal compliance do not create a substantive right to benefits separate

from Count I and II." (Doc. #131, pp. 66-67.) The Court disagrees. Defendant's Plan must be construed by looking at "the parties' intent." *US Airways, Inc.*, 569 U.S. at 102. Defendant expressly stated its intent to comply with federal law. This is a substantive and enforceable promise. Defendant also argues the representations it made in the Plan are merely "interpretative," "generic," or administrative. (Doc. #131, pp. 66-67.) But as stated above, the Court finds that Defendant made unambiguous promises that are enforceable by Plaintiffs.

For these reasons, and the additional reasons stated by Plaintiffs, Plaintiffs are entitled to summary judgment on Counts V and VI. Defendant's motion for summary judgment on Counts V and VI is denied.

**G. Remedies**

Because Plaintiffs are entitled to summary judgment on liability on Counts I-VI, the Court next turns to remedies and related issues. Plaintiffs argue that "every dollar [Defendant] collected in tobacco surcharge fees" must be "returned to the victims." (Doc. #116, p. 59.) The parties agree that the total amount of tobacco surcharge fees collected from January 1, 2016 (when the surcharge policy went into effect) to May 20, 2026, (when the Court denied Defendant's motion for reconsideration and granted class certification) is $47,960,937.87.

Counts I, II, IV, and V are brought on behalf of Plaintiffs and the class. For these claims, Plaintiffs request monetary relief under 29 U.S.C. § 1132(a)(3) which is discussed below. (Doc. #56, pp. 16, 18, 23.) Count VI requests monetary relief under 29 U.S.C. § 1132(a)(1)(B). Section 1132(a)(1)(B) authorizes a civil lawsuit by a participant or beneficiary "to recover benefits due to him under the terms of his plan [and] to enforce his rights under the terms of the plan." For these claims, Plaintiffs request an award of $47,808,402.09 to them and the class.

Plaintiffs' reply brief reduced the total amount of surcharges collected by $153,535.78 to account for 73 individuals who have opted out of the class.[14]

Count III is brought by Plaintiffs and the class on behalf of the Plan under 29 U.S.C. § 1132(a)(2). Section 1132(a)(2) provides that a civil action may be brought by a participant, beneficiary or fiduciary for relief under § 1109. Section 1109 provides that "a fiduciary . . . who breaches any of [his] duties . . . shall be personally liable to make good to such plan any losses to the plan resulting from each such breach and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate[.]" 29 U.S.C. § 1109. Plaintiffs request that the Court award $37,647,290.50 to the Plan.

Defendant disputes both the availability of monetary damages and the amounts requested. The parties' arguments are addressed below.

**1. Counts I, II, IV, V and Equitable Surcharge**

Counts I, II, IV, and V seek relief under 29 U.S.C. § 1132(a)(3). Under § 1132(a)(3), a "participant, beneficiary, or fiduciary" may bring a civil lawsuit for "appropriate equitable relief" to redress "any act or practice [that] violations any provision of" ERISA. "[T]he Eighth Circuit has clarified that ERISA plaintiffs may seek make-whole, monetary relief under § 1132(a)(3)" based on the "loss of a right protected by ERISA[.]" *Krebsbach v. Travelers Pension Plan*, No. 24-257 (DWF/TNL), 2024 WL 4792310, at *5 (D. Minn. Nov. 14, 2024) (citation and quotation marks omitted).

Here, Plaintiffs have prevailed on their claims that Defendant violated the nondiscrimination statute, 29 U.S.C. § 1182, and thus lost a right protected by ERISA. Plaintiffs

[14] Plaintiffs' computation does not add up. $47,960,937.87 minus $153,535.78 equals $47,807,402.09. As stated below, the parties are ordered to submit briefs on damages. The parties shall address this discrepancy.

request monetary funds under an equitable surcharge theory. In general, an equitable surcharge remedy requires a defendant to compensate a plaintiff for alleged losses or for an amount that should have been paid to a plaintiff. *See Aldridge v. Regions Bank*, 144 F.4th 828, 847 (6th Cir. 2025).

Defendant moves for summary judgment on Counts I, II, IV, and V and argues that Plaintiffs cannot recover on an equitable surcharge theory. Defendant argues that "Plaintiffs seek a personal monetary judgment equal to all surcharges paid, without identifying traceable funds . . . [t]hat is legal compensatory relief . . . not 'appropriate equitable relief' under § 502(a)(3)." (Doc. #118, p. 41.) However, § 1132(a)(3) is not limited by its terms to the recovery of specific traceable funds. In addition, equitable surcharge is "a monetary remedy" that provides an "award of make-whole relief." *CIGNA Corp. v. Amara*, 563 U.S. 421, 442 (2011). The Court rejects Defendant's argument that equitable surcharge is unavailable due to untraceability. *See DeRogatis v. Bd. of Trs. of Welfare Fund*, 385 F. Supp. 3d 308, 319 (S.D.N.Y. 2019) ("Nor does 'surcharge' . . . require [a plaintiff's] injury to be traceable to any particular . . . assets.").

Defendant argues equitable surcharge is limited to harms caused by a breach of fiduciary duty and "provides no basis for awarding surcharges on Plaintiffs' nonfiduciary duty claims in Counts I, II, and V." (Doc. #118, p. 44) (citing *Silva v. Metro. Life Ins. Co.*, 762 F.3d 711, 722 (8th Cir. 2014)). *Silva* did, in fact, state that "[t]o obtain relief under the surcharge theory, a plan participant is required to show harm resulting from the plan administrator's breach of a fiduciary duty." *Id.* at 722. However, *Silva* also stated that "§ 1132(a)(3) [is] a catchall that provide[s] '*appropriate equitable relief*' for *any* statutory violation." *Id.* at 725 (citation and quotation

marks omitted) (emphasis supplied).[15] The Court finds that the equitable surcharge remedy is available in this case under § 1132(a)(3) irrespective of a fiduciary duty.

Even if a fiduciary duty and breach are required, the Court has entered summary judgment in favor of Plaintiffs on their fiduciary duty claims and statutory claims. As such, the Court agrees with Plaintiffs that:

> [Defendant] did in fact breach fiduciary duties concurrent with its violations of statutory ones. ERISA's fiduciary duty provisions obligate the company to act 'in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of [ERISA].' 29 U.S.C. § 1104(a)(1)(D). Here, the document governing the Plan does not authorize the collection of a tobacco surcharge. And indeed, for the reasons discussed . . . it expressly prohibits it. The company thus breached fiduciary duties by levying the surcharge.

(Doc. #121, p. 73 n.23.)

For these reasons, and the additional reasons stated by Plaintiffs, Plaintiffs are entitled to equitable surcharge relief under 29 U.S.C. § 1132(a)(3).[16] The Court denies Defendant's motion for summary judgment on Counts I, II, IV, and V with respect to such relief.

#### 2. Count III

Defendant argues that Plaintiffs "do not identify any loss to the Plan caused by the alleged fiduciary breach as required by 29 U.S.C. § 1109." (Doc. #131, p. 65.) In particular, Defendant contends that the tobacco surcharge was used to fund Plan claims and expenses. This argument is rejected for the reasons stated above. The Court further agrees with Plaintiffs that "the only way additional funds could benefit the Plan would be if they were actually transferred

---

[15] *Amara* similarly stated "[t]he surcharge remedy extended to a breach of trust committed by a fiduciary encompassing any violation of a duty imposed upon that fiduciary." *Amara*, 563 U.S. at 442.

[16] Defendant also argues that equitable surcharge is not available on Count IV because "there is no evidence that Plaintiffs or any Plan participant suffered harm caused by the flow of money to general assets." (Doc. #118, p. 44.) This argument is rejected for the reasons stated above and by Plaintiffs.

to the Plan, rather than kept in the company's account. That didn't happen here. And the law is clear that 'losses to the plan [] include withheld Plan contributions that were not remitted to the Plan.'" (Doc. #121, pp. 68-69) (citing and quoting *Perez v. Harris*, No. 12-CV-3136 (SRN/FLN), 2015 WL 6872453, at *12 (D. Minn. Nov. 9, 2015) (cleaned up); *Solis v. Blackford*, 759 F. Supp. 2d 1121, 1124–25 (D. Minn. 2011)).

Defendant argues that "Plaintiffs cannot recover the same $37,647,290.50 twice—once for the Plan under Count III and again for the participants on their individual claims." (Doc. #122, p. 81.) Defendant explains that "ERISA bars duplicative remedies. Though alternative theories may be pled initially, at this stage, the Court must determine if the requested relief overlaps and dismiss duplicative claims." (Doc. #122, p. 82) (citations omitted). Upon review, the Court rejects this argument but agrees with the general principle that Plaintiffs cannot receive duplicate damages.

**3. Limitations Period**

The parties' briefs also address the applicable limitations period for the claims at issue. The parties dispute whether the recovery for certain claims should be temporally limited. The Court addresses the limitations periods below.

**a. Counts I and II**

The parties agree that for the statutory claims in Counts I and II, the applicable limitations period is four years. 28 U.S.C. § 1658. Plaintiffs filed this lawsuit on October 9, 2024. Therefore, Plaintiffs and the class can only recover surcharges collected from October 9, 2020, to the present. To the extent Defendant argues that Plaintiffs and class members are barred from recovery simply because they paid a surcharge prior to October 9, 2020, that argument is rejected. *Chirinian v. Travelers Companies, Inc.*, No. 24-cv-3956 (LMP/DTS), 2025 WL

2147271, at *5 (D. Minn. July 29, 2025) ("[T]he Court agrees that each time Chirinian was required by Travelers to pay a tobacco surcharge constituted an 'act' that gave rise to a claim against Travelers under the Plan's limitations period.").

**b. Counts III and IV**

Counts III and IV are governed by the limitations period set forth under 29 U.S.C.A. § 1113. In relevant part, § 1113 provides that:

> No action may be commenced . . . with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of—
>
> (1) six years after [] the date of the last action which constituted a part of the breach or violation, . . . or
>
> (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation[.]

The three-year limitation applies only to actual knowledge; "constructive knowledge" is not enough to trigger the shorter limitations period. *Intel Corp. Inv. Pol'y Comm. v. Sulyma*, 589 U.S. 178, 180, 186 (2020). "[A] plaintiff must have actual knowledge of all material facts necessary to understand that some claim exists." *Brown v. American Life Holdings, Inc.*, 190 F.3d 856, 859 (8th Cir. 1999) (citation and quotation marks omitted). "[I]f a plaintiff is not aware of a fact, he does not have 'actual knowledge' of that fact however close at hand the fact might be." *Intel Corp.*, 589 U.S. at 186. "Bar by a statute of limitations is typically an affirmative defense, which the defendant must plead and prove." *Walker v. Barrett*, 650 F.3d 1198, 1203 (8th Cir. 2011) (citation and quotation marks omitted).

Defendant argues that the three-year period is applicable. Defendant contends that the "class members' claims [] accrued upon actual knowledge of the withholding of the surcharge

[from their paycheck], and claims by anyone with knowledge of the paying the surcharge prior to October 9, 2021 are time-barred." (Doc. #118, p. 46.)

Upon review, the Court rejects Defendant's arguments and finds that the six-year limitations period is applicable. As discussed above, the fiduciary duty claims primarily focus on Defendant's transferring the tobacco surcharges to its general assets instead of depositing them into the Plan. The Court agrees with Plaintiffs that Defendant "has proffered no evidence to suggest that any class member had actual knowledge of this internal accounting practice." (Doc. #116, p. 62.) The Court further finds that knowledge of the imposition of the surcharge, by itself, (Doc. #131, p. 64 n. 14), is not enough to trigger the statute of limitations for these claims. Under these circumstances, the six-year limitation period applies to Counts III and IV and the period of recovery runs from October 9, 2018, to the present.

**c. Counts V and VI**

Finally, the parties dispute the applicable limitations period for Counts V and VI. These counts are not governed by an ERISA limitations period. When that occurs, a court "borrow[s] the most analogous state statute of limitations." *Duchek v. Blue Cross & Blue Shield*, 153 F.3d 648, 649 (8th Cir.1998)

Defendant argues that a three-year limitations period applies. In support, Defendant emphasizes that the Plan provides that it will be "construed, enforced, and administered" in accordance with North Carolina law. (Doc. #118, p. 46.) And, under North Carolina law, a "three-year statute of limitations applies to actions upon a contract, obligation, or liability to claims challenging ERISA plan terms. N.C. Gen. Stat. § 1-52(1). *See Gasper v. EIDP, Inc.*, No. 3:23-CV-00512, 2024 LX 240040, at *17-19 (W.D.N.C. Aug. 27, 2024)." (Doc. #118, p. 46.)

Upon review, the Court finds that North Carolina's statute of limitations does not apply to this case. "While parties are generally free to contract choice of law, such provisions in contracts are generally understood, however, to incorporate only substantive law, not procedural law such as statutes of limitations." *Liberty Life Assur. v. Est. of Barnett*, No. 1:04CV0001 TCM, 2005 WL 1662257, at *5 (E.D. Mo. July 8, 2005); *see also Sharp-Richardson v. Boyds Collection, Ltd.*, No. C 96–0344 MJM, 1999 WL 33656875, at *8 (N.D. Iowa Sept. 30, 1999) ("The choice of law provision in the December Copyright Agreement did not expressly state that the Pennsylvania statute of limitations applied. In the absence of an express statement in the choice of law clause, this Court is bound to apply Iowa's statute of limitations."). "Missouri considers statutes of limitations as procedural only and not as substantive law [.]" *Hemar Ins. Corp. of Am. v. Ryerson*, 108 S.W.3d 90, 95 (Mo. Ct. App. 2003); *see also Huebert v. City of Kansas City*, 666 S.W.3d 289, 292 (Mo. Ct. App. 2023). Because the Plan did not expressly adopt North Carolina's statute of limitations, the Court finds that it does not apply here.[17]

The Court thus finds that the forum state's statute of limitations is applicable. Under Missouri law, "[a]n action upon any writing, whether sealed or unsealed, for the payment of money or property," has a 10-year statute of limitations. Mo. Rev. Stat. § 516.110(1). This 10-year limitations period applies to Counts V and VI. *Johnson v. State Mut. Life Assur. Co. of Am.*, 942 F.2d 1260, 1263-66 (8th Cir. 1991) (finding that § 516.110(1) applied to claim for ERISA

[17] Defendant relies on *Hill v. XPO, Inc.*, No. 24-CV-1697 (SFR), 2026 WL 884149 (D. Conn. Mar. 31, 2026). In that case, the District of Connecticut applied the Delaware statute of limitations to an ERISA claim because the Plan stated in part that it would be construed in accordance with "the laws of the state of Delaware." *Id.* at *8. The Court declines to follow *Hill* because it is an out-of-circuit district court case that did not apply Eighth Circuit, Missouri, or North Carolina law. *Liberty Life Assur.* and *Sharp-Richardson* are district courts within this circuit, and the Court finds they are more persuasive on this issue. *Liberty Life*, 2005 WL 1662257, at *5; *Sharp-Richardson*, 1999 WL 33656875, at *8.

benefits). Because Defendant began assessing and collecting the tobacco surcharge in 2016, and this suit was filed in 2024, all claims for recovery in Count V and VI are timely.[18]

**H. Damages**

At this time, the Court declines to enter a specific award of damages to Plaintiffs and the class. First, Plaintiffs' reply brief reduced their requested monetary damages based on 73 individuals who opted out of the class. Defendants should be afforded an opportunity to either agree, or disagree, with the amount of that reduction. In addition, and as noted above, Plaintiffs' calculation regarding the reduction appears to be incorrect.

Second, in an Order dated July 16, 2026, the Court stated that "Defendant's request to depose absent class member is denied without prejudice. Defendant may renew its request at the final pretrial conference." (Doc. #105.) The rulings herein do not preclude Defendant from renewing that request should it wish to do so. Third, the parties should have an opportunity to submit final proposed damages amounts based on the rulings herein.

The parties are therefore directed to file briefs relating to the specific amount of damages that should be awarded to Plaintiffs based on the rulings herein. The briefs shall also address whether additional discovery is necessary before a final damages award is entered. The parties' briefs shall also address Defendant's argument that Counts V and VI request duplicative relief. (Doc. #118, p. 41 n.14); *see also* (Doc. #116, p. 64) (Plaintiffs' Suggestions in Support stating in part that "Counts I, II, IV, V, and VI . . . all seek monetary relief to remedy the cost of the tobacco surcharge borne by individual class members, they run concurrently and give rise to a

[18] Even if a three-year limitation applied, the Court finds Defendant has failed to show that Plaintiffs and the class members' claims accrued outside that limitations period. *Mehlberg v. Compass Grp. USA, Inc.*, 830 F. Supp. 3d 887, 900 (W.D. Mo. 2026) (recognizing that statute of limitations "could not have started running until Plaintiffs knew or should have known that the Plan Document did not authorize the company's tobacco surcharge"); (Doc. #116, p. 63); (Doc. #130, p. 31).

single recovery.") The briefs should also address whether a judge tried hearing is needed to determine the amount of damages. Finally, the parties should brief the issue of duplicative damages on competing claims. The parties' briefs shall not attempt to relitigate the rulings in this Order.

**IV. CONCLUSION**

Accordingly, it is hereby ORDERED that Plaintiffs' Motion for Summary Judgment (Doc. #115) is GRANTED IN PART. The motion is GRANTED insofar as Plaintiffs are entitled to summary judgment on Counts I, II, III, IV, V, and VI. Defendant's Motion for Summary Judgment (Doc. #117) is DENIED. It is further ORDERED that the Courts DEFERS awarding Plaintiffs a specific amount of monetary damages.

It is further ORDERED that within fourteen (14) days from the date of this Order, the parties shall file briefs regarding the issues discussed above, including the specific amount of damages to be awarded and whether additional discovery is necessary. The parties' briefs shall further state whether the final pretrial conference and/or bench trial should be maintained or vacated.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
STEPHEN R. BOUGH
UNITED STATES DISTRICT JUDGE

Dated: October 16, 2026